FILED
IN CLERK'S OFFICE
US DISTRICT COURT
E.D.N.Y.
* NOVEMBER 05, 2025 *
BROOKLYN OFFICE

RCH:EWS/SMS
F. #2025R00435

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

EMMANUEL CLASE DE LA CRUZ and
LUIS LEANDRO ORTIZ RIBERA,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____ 25-CR-346 _____
(T. 18, U.S.C., §§ 224, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1349, 1956(h) and
3551 et seq.; T. 21, U.S.C., § 853(p); T.
28, U.S.C., § 2461(c))

Judge Kiyo A. Matsumoto
Magistrate Judge Clay H. Kaminsky

THE GRAND JURY CHARGES:

    At all times relevant to this Indictment, unless otherwise stated:

### INTRODUCTION

    1.    The defendants—two Major League Baseball pitchers playing for the Cleveland Guardians—conspired with bettors to rig pitches in professional baseball games so that the bettors would profit from illegal wagers made based on that inside information. The defendants agreed in advance with their co-conspirators to throw specific types and speeds of pitches, and their co-conspirators used that inside information to place wagers on those pitches. In some instances, the defendants received bribes and kickback payments—funneled through third parties—in exchange for rigging pitches. Through this scheme, the defendants defrauded betting platforms, deprived Major League Baseball and the Cleveland Guardians of their honest services, illegally enriched themselves and their co-conspirators, misled the public, and betrayed America's pastime.

<u>RELEVANT INDIVIDUALS AND ENTITIES</u>

I.    <u>Major League Baseball and the Defendants</u>

2.    Major League Baseball ("MLB") was a professional baseball league in North America composed of 30 teams, including the Cleveland Guardians, the New York Mets, the Minnesota Twins, the Boston Red Sox, the Cincinnati Reds, the Los Angeles Dodgers, the Seattle Mariners, and the St. Louis Cardinals.

3.    The defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA were MLB players and pitchers on the Cleveland Guardians. CLASE was a relief pitcher and ORTIZ was a starting pitcher. They were both citizens of the Dominican Republic.

4.    MLB rules prohibited MLB players from gambling on MLB games in which they were involved. Specifically, MLB Rule 21 provided, in relevant part, that "any player . . . who shall bet any sum whatsoever upon any baseball game in connection with which the bettor has a duty to perform, shall be declared permanently ineligible" to play professional baseball. MLB's sports betting policy further provided that, "Major League Players may not ask others to place bets on their behalf, knowingly benefit financially from, or knowingly assist with bets placed by others." With limited exceptions for personal use—such as a time sensitive text message to a spouse—MLB rules also prohibited MLB players from utilizing cellular telephones during MLB games.

5.    Under the terms of their contracts with the Cleveland Guardians, the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA agreed to accept and abide by all MLB rules, including the prohibition on betting on baseball games and the in-game use of cellular telephones. Their contracts with the Cleveland Guardians

2

further provided that each player owed a duty of loyalty to the Cleveland Guardians and "pledge[d] himself to the American public and to the [Cleveland Guardians] to conform to high standards of personal conduct, fair play and good sportsmanship."

II.      The Betting Platforms and the Bettor Co-Conspirators

6.      Betting Platform-1 and Betting Platform-2 (collectively, the "Betting Platforms"), entities the identities of which are known to the Grand Jury, were sportsbooks that operated online platforms and physical sportsbooks, usually located at casinos, that offered sports betting relating to, among other things, MLB games and individual players' performances in MLB games.

7.      Bets placed on an individual player's performance during a game, rather than on the final outcome of the game, were a type of bet referred to as a "proposition bet" or "prop bet."  For example, the Betting Platforms offered wagers that a specific pitch would be either a ball or a batter hit by pitch, as opposed to a strike ("Ball/HBP").   In addition, the Betting Platforms also offered users the ability to place wagers on the speed of a given pitch, such as whether the pitch would be above 94.95 miles per hour ("Pitch Speed").

8.      In addition, sportsbooks like the Betting Platforms offered "parlay bets," which were wagers comprised of two or more individual bets.   For a bettor to win a parlay bet, each wager, or "leg," within the parlay bet needed to win; if either leg lost, the entire parlay bet would lose.   Because parlay bets required the bettor to win multiple bets, the payouts for winning parlay bets generally were higher than the payouts for winning single bets.

9.      All bettors wagering on the Betting Platforms were required to agree to their terms of use (the "Terms of Use"), which provided, in sum, substance and in relevant part, that users were prohibited from (i) wagering in connection with sports contests or individual

3

players' statistical performances if the users had access to any pre-release, confidential information or other information that was not available to all other wagerers, including any information provided by a professional athlete, such as non-public injury information; and (ii) placing wagers as an agent or proxy for any individual other than the account holder.

10.    Bettor-1, an individual whose identity is known to the Grand Jury, was a citizen of the Dominican Republic.   Bettor-1 maintained accounts with both Betting Platforms and used the accounts to place wagers on the outcome of pitches thrown by the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA.

11.    Bettor-2, an individual whose identity is known to the Grand Jury, was a citizen of the Dominican Republic.   Bettor-2 maintained accounts in his name with both Betting Platforms.   In addition, Bettor-2 directed Individual-1, an individual whose identity is known to the Grand Jury and who resided in the Eastern District of New York, to open a second account on Betting Platform-1 on Bettor-2's behalf.   Bettor-2 used all three of the accounts on the Betting Platforms to place wagers on the outcome of pitches thrown by the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA.

12.    Bettor-1 and Bettor-2 were also associated with other individuals who had accounts on the Betting Platforms and who used those accounts to place wagers on the outcome of pitches thrown by the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA (collectively, the "Bettors").

<u>THE FRAUDULENT SCHEME</u>

13.    From in or around May 2023 through June 2025, the defendant EMMANUEL CLASE DE LA CRUZ agreed with Bettor-1 and others to throw specific pitches in certain MLB games so that the Bettors (and at times, CLASE) would profit from illegal

4

wagers made based on that inside information.   In or around June 2025, the defendant LUIS

LEANDRO ORTIZ RIBERA joined the criminal scheme with CLASE and agreed to throw

specific pitches in certain MLB games in exchange for money.   Overall, the Bettors won at least

$450,000 from the Betting Platforms on pitches thrown by CLASE and ORTIZ.

I.    Fraudulent Wagers Associated with Defendant CLASE's Pitches

14.    Beginning in or around May 2023, the defendant EMMANUEL CLASE

DE LA CRUZ agreed in advance with Bettor-1 on specific pitches that CLASE would throw in

certain MLB games.   Usually, they agreed that CLASE would throw balls (instead of strikes)

and slower "slider" pitches (rather than faster cut fastball "cutter" pitches)—and often on the first

pitches of an at-bat when CLASE was brought into a game as a relief pitcher.   With CLASE's

knowledge and approval, Bettor-1, Bettor-2, and other Bettors used this information to place

over a hundred fraudulent Pitch Speed and Ball/HBP straight bets and parlays on CLASE's

pitches on the Betting Platforms.

15.    For example, on or about May 19, 2023, the Cleveland Guardians played

an MLB game against the New York Mets.   The game took place in the Eastern District of New

York.   After receiving advance information from the defendant EMMANUEL CLASE DE LA

CRUZ about a specific pitch that CLASE intended to throw, Bettor-1 and several of the Bettors

won approximately $27,000 on Betting Platform-2 by wagering that a pitch thrown by CLASE

would be faster than 94.95 mph.

16.    Similarly, on or about June 3, 2023, the Cleveland Guardians played an

MLB game against the Minnesota Twins.   After receiving advance information from the

defendant EMMANUEL CLASE DE LA CRUZ about a specific pitch that CLASE intended to

throw, Bettor-1 and several of the Bettors won approximately $38,000 on Betting Platform-2 by

placing multiple bets that a pitch thrown by CLASE would both be a Ball/HBP and would be slower than 94.95 mph.   A screenshot of video footage of the pitch (with the ball highlighted in a red box)—which CLASE threw slower than 94.95 mph and into the dirt well before home plate—is included below:



17.     In another instance, on or about June 7, 2023, the Cleveland Guardians played an MLB game against the Boston Red Sox.   After receiving advance information from the defendant EMMANUEL CLASE DE LA CRUZ about a specific pitch that CLASE intended to throw, Bettor-1 and several of the Bettors won approximately $58,000 on Betting Platform-2 by placing multiple bets that a pitch thrown by CLASE would both be a Ball/HBP and would be slower than 94.95 mph.   A screenshot of video footage of the pitch (with the ball highlighted in a red box)—which CLASE threw slower than 94.95 mph and low into the dirt—is included below:



18.     Beginning in or around April 2025, on several occasions, the defendant EMMANUEL CLASE DE LA CRUZ requested and received bribe and kickback payments in exchange for agreeing to throw specific pitches.   For example, on or about April 12, 2025, after receiving advance information from CLASE about a specific pitch that CLASE intended to throw, Bettor-1 and several of the Bettors won approximately $15,000 on Betting Platform-2 by placing multiple bets that a pitch thrown by CLASE would both be a Ball/HBP and would be slower than 98.45 mph.   A screenshot of video footage of the pitch (with the ball highlighted in a red box)—which CLASE threw into the grass well before home plate—is included below:

19.     The following day, on or about April 13, 2025, the defendant EMMANUEL CLASE DE LA CRUZ asked Bettor-1 by text message[1] whether Bettor-1 had been able to "wager anything."   After Bettor-1 responded, in sum and substance, that Bettor-1 had bet and won money, CLASE directed Bettor-1 to "send some of it to DR," referring to the Dominican Republic.   CLASE provided Bettor-1 with contact information for a recipient for the money and directed Bettor-1 to "[s]end it as if it were someone else."   CLASE also told Bettor-1 that the money was "for repairs at the country house."

20.     As part of the scheme, the defendant EMMANUEL CLASE DE LA CRUZ used his cellular telephone in the middle of MLB games involving the Cleveland Guardians—contrary to MLB rules—to coordinate with Bettor-1.   For example, on or about May 17, 2025, the Cleveland Guardians played an MLB game against the Cincinnati Reds.   The

---

[1]     Throughout this Indictment, quotations from text messages originally in Spanish have been translated from Spanish to English.

game began at approximately 6:40 p.m.   At approximately 8:24 p.m., CLASE sent a text message to Bettor-1 asking if Bettor-1 was "ready."   Bettor-1 responded, "[b]ut of course." Approximately ten minutes later, Bettor-1, Bettor-2, and several other Bettors won approximately $10,000 on Betting Platform-2 by placing multiple bets that a pitch thrown by CLASE would both be a Ball/HBP and would be slower than 97.95 mph.   A screenshot of video footage of the pitch (with the ball highlighted in a red box)—which CLASE threw slower than 97.95 mph and low into the dirt—is included below:



21.    A few days later, on or about May 20, 2025, the defendant EMMANUEL CLASE DE LA CRUZ sent Bettor-1 a text message with bank account information and told Bettor-1 to "[l]et me know when you send the thing," to which Bettor-1 responded, "I will start with 2,000."   Thereafter, Bettor-1 corresponded with an associate of CLASE in the Dominican Republic ("CLASE Associate-1"), an individual whose identity is known to the Grand Jury.

CLASE Associate-1 directed Bettor-1 to send approximately $2,000 to an individual in the Dominican Republic for CLASE's benefit.

22.     It was also part of the scheme that the defendant EMMANUEL CLASE DE LA CRUZ coordinated rigging pitches in-person with Bettor-1 at CLASE's residence in Ohio.   For example, on or about April 25, 2025, Bettor-1 traveled to Ohio and visited CLASE at his residence.   CLASE obtained tickets for Bettor-1 to attend the Cleveland Guardians' MLB game the following day, April 26, 2025, against the Boston Red Sox.   The game began at approximately 1:10 p.m.   At approximately 3:16 p.m., in the middle of the game, CLASE sent a text message initiating a conversation with Bettor-1.   A few seconds later, CLASE and Bettor-1 had a phone call that lasted approximately two minutes.   Four minutes later, Bettor-1 and several of the Bettors won approximately $11,000 on Betting Platform-2 by wagering that a pitch thrown by CLASE would be slower than 97.95 mph.   After the game on April 26, 2025, Bettor-1 visited CLASE at his residence.

23.     Similarly, on or about May 11, 2025, Bettor-1 traveled to Ohio and visited the defendant EMMANUEL CLASE DE LA CRUZ at his residence.   CLASE obtained tickets for Bettor-1 to attend an MLB game on May 11, 2025.   The same day, after receiving advance information from CLASE, Bettor-1, Bettor-2, and several of the Bettors won approximately $11,000 on Betting Platform-2 by wagering that a pitch thrown by CLASE would be a Ball/HBP. After the game on May 11, 2025, Bettor-1 again visited CLASE at his residence.   A screenshot

of video footage of the pitch (with the ball highlighted in a red box)—which CLASE threw low—is included below:



24.     It was also part of the scheme that, on some occasions, the defendant EMMANUEL CLASE DE LA CRUZ provided money to Bettor-1 to wager on CLASE's behalf on pitches thrown by CLASE. For example, on or about May 13, 2025, Bettor-1 sent CLASE a text message with a phone number and told CLASE to "[s]end it there if you can," but also noted that "[i]f not, we can work with what we have. No problem." CLASE responded, "[o]kay" and asked, "[h]ow much do I send?" Bettor-1 replied, "[h]owever much you can, 2,500 and under." CLASE wrote back, "[o]kay," and also asked for the name of the individual "on the account." Bettor-1 advised CLASE of the individual's first name. Later that day, CLASE electronically transferred approximately $2,500 to an individual with the same first name, who subsequently transferred $2,500 to Bettor-1.

25.     The same day, May 13, 2025, after receiving advance information from the defendant EMMANUEL CLASE DE LA CRUZ about a specific pitch that CLASE intended to throw, Bettor-1, Bettor-2, and several of the Bettors won approximately $3,500 on Betting Platform-2 by placing multiple bets that a pitch thrown by CLASE would both be a Ball/HBP and would be slower than 99.45 mph.   After the game, Bettor-1 again visited CLASE at his residence.   A screenshot of video footage of the pitch (with the ball highlighted in a red box)— which CLASE threw slower than 99.45 mph and low into the dirt—is included below:



26.     To generate larger returns on the fraudulent pitches, Bettor-1 and the other Bettors often placed parlay bets on the Betting Platforms in which one leg of the parlay bets were fraudulent pitches thrown by the defendant EMMANUEL CLASE DE LA CRUZ.   For example, between 2023 and 2025, Bettor-1 placed approximately 16 parlay bets in which one leg of each parlay was that eight specific pitches by CLASE would be a Ball/HBP.   Bettor-1 was successful betting on approximately seven of the eight pitches—and on the eighth, Bettor-1 was

only unsuccessful because the batter swung at a pitch thrown by CLASE that was outside the strike zone.

27.    Specifically, on or about May 28, 2025, the Cleveland Guardians played an MLB game against the Los Angeles Dodgers.    The game began at approximately 1:10 p.m. Before the game, at approximately 1:00 p.m., Bettor-1 sent a text message to the defendant EMMANUEL CLASE DE LA CRUZ confirming whether CLASE was, "[a]ll set."    CLASE responded, "[y]es."    At approximately 3:36 p.m., in the middle of the game, Bettor-1 and Bettor-2 each placed wagers totaling approximately $4,000 (including a parlay bet) that a pitch thrown by CLASE would be a Ball/HBP.    CLASE threw a pitch that appeared to be a ball, but the batter swung, resulting in a strike and leading Bettor-1 and Bettor-2 to lose their wagers.

28.    Approximately 20 minutes after Bettor-1 lost the wager on May 28, 2025, Bettor-1 sent a text message to the defendant EMMANUEL CLASE DE LA CRUZ—a .gif image of a man hanging himself with toilet paper.    Even though the Cleveland Guardians won the game, approximately 10 minutes later, CLASE responded to Bettor-1 with a .gif image of a sad puppy dog face.

29.    Overall, between 2023 and 2025, the Bettors won at least $400,000 from the Betting Platforms on pitches thrown by the defendant EMMANUEL CLASE DE LA CRUZ.

II.    Fraudulent Wagers Associated with Defendant ORTIZ's Pitches

30.    In or around June 2025, the defendant LUIS LEANDRO ORTIZ RIBERA joined the criminal scheme with the defendant EMMANUEL CLASE DE LA CRUZ and the Bettors.    ORTIZ agreed to throw balls (instead of strikes) on certain pitches in exchange for bribes or kickbacks.    CLASE coordinated between ORTIZ and Bettor-1, who in turn

13

coordinated with the other Bettors. For his role in coordinating between ORTIZ and Bettor-1, CLASE requested and received money.

31.    On or about June 15, 2025, the defendant LUIS LEANDRO ORTIZ RIBERA was scheduled to be the starting pitcher in an MLB game between the Cleveland Guardians and the Seattle Mariners (the "June 15 Game"). Before the June 15 Game, ORTIZ agreed with the defendant EMMANUEL CLASE DE LA CRUZ that in exchange for approximately $5,000, ORTIZ would throw a ball for his first pitch in the second inning of the June 15 Game ("Subject Pitch-1"). CLASE further agreed with Bettor-1 that CLASE would receive approximately $5,000 ($10,000 in total for both ORTIZ and CLASE) for arranging Subject Pitch-1 with ORTIZ.

32.    The June 15 Game was scheduled to start at approximately 4:10 p.m. Beginning at approximately 1:40 p.m., Bettor-1 sent text messages to the defendant EMMANUEL CLASE DE LA CRUZ asking CLASE, "[h]ow are we doing?" and "[e]verything under control there?" Bettor-1 and CLASE then had a brief telephone call.

33.    Shortly thereafter, beginning at approximately 3:30 p.m., Bettor-1 and Bettor-2 placed several wagers totaling approximately $13,000 on the Betting Platforms that Subject Pitch-1 would be a ball. Subject Pitch-1 was a ball, leading to a payout of approximately $26,000 for Bettor-1 and Bettor-2. A screenshot of video footage of Subject

14

Pitch-1 (with the ball highlighted in a red box)—which the defendant LUIS LEANDRO ORTIZ

RIBERA threw low and to the left of home plate—is included below:



34.    On or about June 16, 2025, Bettor-1 corresponded with CLASE Associate-

1, who directed Bettor-1 to electronically transfer approximately $10,000 in smaller increments

to multiple individuals in the Dominican Republic.   Shortly thereafter, the defendant

EMMANUEL CLASE DE LA CRUZ sent a text message to Bettor-1 noting that Bettor-1 "said

you were going to do it today, but you didn't tell me anything," referring to the transfer of the

$10,000 in bribe payments for CLASE and the defendant LUIS LEANDRO ORTIZ RIBERA.

Bettor-1 responded, "[e]verything is there already."   Later the same day, ORTIZ sent a text

message to CLASE asking him to "tell me what the guy from the thing told you."   CLASE

responded, "[t]hey receive it tomorrow and I'll place it over there," referring to the initial receipt

of the $10,000 in bribe payments by multiple individuals in the Dominican Republic and his

intent to subsequently transfer those funds into the ultimate custody of CLASE and ORTIZ.

35.    On or about June 18, 2025, the defendant LUIS LEANDRO ORTIZ RIBERA sent text messages to the defendant EMMANUEL CLASE DE LA CRUZ regarding ORTIZ's receipt of money for throwing Subject Pitch-1.   ORTIZ sent CLASE a photograph of an identification card for an individual in the Dominican Republic ("ORTIZ Associate-1"), an individual whose identity is known to the Grand Jury, and told CLASE, "Clase, tell them to put the 90 thousand pesos there are and to keep the other ones[.] Keep the 200 and the 90 to that person today please[.]"

36.    On or about June 19, 2025, the defendant EMMANUEL CLASE DE LA CRUZ sent the defendant LUIS LEANDRO ORTIZ RIBERA a photograph of a receipt for a wire transfer of approximately 90,000 pesos from CLASE Associate-1 to ORTIZ Associate-1, as well as an audio message directing ORTIZ to cause his associates in the Dominican Republic to lie about the purpose of the funds ORTIZ was receiving if asked: "They're going to ask him what is that payment for over there.   Tell him that this is payment for a horse.   Payment for a horse.   You got that?"   ORTIZ responded, "Okay, perfect."

37.    On or about June 27, 2025, the defendant LUIS LEANDRO ORTIZ RIBERA was scheduled to be the starting pitcher in an MLB game between the Cleveland Guardians and the St. Louis Cardinals (the "June 27 Game").   Before the June 27 Game, ORTIZ agreed with the defendant EMMANUEL CLASE DE LA CRUZ that in exchange for approximately $7,000, ORTIZ would throw a ball for his first pitch in the third inning of the June 27 Game ("Subject Pitch-2").   CLASE further agreed with Bettor-1 that CLASE would receive approximately $7,000 ($14,000 in total for both ORTIZ and CLASE) for arranging for Subject Pitch-2 with ORTIZ.   CLASE also obtained tickets for Bettor-1 to attend the June 27 Game.

16

38.     As part of the scheme, on or about June 27, 2025, before the June 27 Game, as captured by bank security camera footage, the defendant EMMANUEL CLASE DE LA CRUZ withdrew approximately $50,000 in cash.   CLASE provided approximately $15,000 of the cash he withdrew from the bank to Bettor-1 to use to wager on Subject Pitch-2.   Approximately one hour later, as captured by bank security camera footage, Bettor-1 deposited the $15,000 at the same bank branch from which CLASE withdrew the $50,000.

39.     In advance of the start of the June 27 Game, Bettor-1, Bettor-2, and several other Bettors wagered approximately $18,000 on the Betting Platforms that Subject Pitch-2 would be a ball.   Subject Pitch-2 was a ball, leading to a payout for the Bettors of approximately $37,000.   Screenshots of video footage of Subject Pitch-2 (with the ball highlighted in a red box)—which the defendant LUIS LEANDRO ORTIZ RIBERA threw into the ground far from the strike zone, and which the catcher failed to retrieve because of its distance from the strike zone—are included below:







40.    Overall, in June 2025, the Bettors won at least $60,000 from the Betting Platforms on pitches thrown by the defendant LUIS LEANDRO ORTIZ RIBERA.

COUNT ONE
(Wire Fraud Conspiracy)

41.    The allegations contained in paragraphs one through 40 are realleged and incorporated as if fully set forth in this paragraph.

42.    In or about and between May 2023 and June 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA,

together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Betting Platforms, and to obtain money and property from the Betting Platforms by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Honest Services Wire Fraud Conspiracy)

43.     The allegations contained in paragraphs one through 40 are realleged and incorporated as if fully set forth in this paragraph.

44.     In or about and between April 2025 and June 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Cleveland Guardians and the MLB of their intangible rights to the honest services of CLASE and ORTIZ through bribery and kickbacks, to wit: one or more payments to CLASE and ORTIZ, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Influence Sporting Contests by Bribery)

45.    The allegations contained in paragraphs one through 40 are realleged and incorporated as if fully set forth in this paragraph.

46.    In or about and between April 2025 and June 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA, together with others, did knowingly and willfully carry into effect, attempt to carry into effect and conspire to carry into effect, a scheme in commerce to influence by bribery sporting contests with knowledge that the purpose of this scheme was to influence by bribery those contests, to wit: MLB games involving the Cleveland Guardians, in violation of Title 18, United States Code, Section 224.

(Title 18, United States Code, Sections 224 and 3551 et seq.)

## COUNT FOUR
(Money Laundering Conspiracy)

47.    The allegations contained in paragraphs one through 40 are realleged and incorporated as if fully set forth in this paragraph.

48.    In or about and between April 2025 and June 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EMMANUEL CLASE DE LA CRUZ and LUIS LEANDRO ORTIZ RIBERA, together with others, did knowingly and intentionally conspire to conduct and attempt to conduct one or more financial transactions, to wit: transactions in and affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions involved the

20

proceeds of one or more specified unlawful activities, to wit: (i) sports bribery conspiracy, in violation of Title 18, United States Code, Section 224; and (ii) wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH THREE

49.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

50.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

21

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FOUR

51.     The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

52.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)     cannot be located upon the exercise of due diligence;

    (b)     has been transferred or sold to, or deposited with, a third party;

    (c)     has been placed beyond the jurisdiction of the court;

    (d)     has been substantially diminished in value; or

    (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

22

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

s/
FOREPERSON

*By David Pitluck, Assistant U.S. Attorney*
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

23