

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EWS/SMS                                      *271 Cadman Plaza East*
F. #2025R00435                               *Brooklyn, New York 11201*

December 23, 2025

<u>By ECF and E-Mail</u>

The Honorable Laura K. Eshkenazi
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Emmanuel Clase
              <u>Criminal Case No. 25-346 (KAM)</u>

Dear Judge Eshkenazi:

        The government writes in opposition to defendant Emmanuel Clase's motion to modify his conditions of release to permit him to travel to the Dominican Republic. At the outset, the government acknowledges that the defendant voluntarily surrendered to the United States while residing overseas and has complied with the terms of his supervision since his arrest last month. But his request to travel internationally, even for a limited period, poses an obvious and unreasonable risk of flight based on the facts of this case, for the reasons set forth below. The Court should deny the motion.

        As an initial matter, courts routinely bar defendants from traveling internationally while on pretrial release based on "the simple fact that once the defendant leaves the United States, the District Court, the Pretrial Services Agency, and U.S. law enforcement lose jurisdiction over him." <u>United States v. Irizarry</u>, No. 22-3028, 2022 WL 2284298, at *2 (D.C. Cir. June 24, 2022) (Wilkins, J., dissenting). Domestically, when a defendant "removes his GPS bracelet or travels beyond his permitted boundaries, the Pretrial Services Agency can send its officers, U.S. marshals, or local law-enforcement to search for and detain him." <u>Id.</u> But in a foreign jurisdiction, these options are unavailable.

        The risk of flight posed by the defendant is magnified by the incentives the defendant would have to flee. The defendant—a citizen of the Dominican Republic and a Major League Baseball pitcher for the Cleveland Guardians—is charged in a four-count indictment with orchestrating a fraud scheme in which he is alleged to have rigged pitches in professional baseball games. As detailed in the indictment, the evidence against the defendant is overwhelming and includes text messages with co-conspirators, financial transfers, and witness testimony. If convicted at trial, the defendant faces the prospect of serving several years in

prison.[1]  While the risk of imprisonment existed when the defendant initially surrendered to law enforcement, that risk has come into sharper focus now that the defendant has had the benefit of reviewing the significant evidence of his guilt via Rule 16 discovery, and the Court has scheduled a trial date for May 4, 2026.  See, e.g., United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022); United States v. Sabhnani, 493 F.3d 63, 76 (2d Cir. 2007) (finding detention appropriate because, in part, "the evidence of [the defendants'] guilt, both direct and circumstantial, appears strong"); United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee.").

The defendant also has substantial means to flee.  Public reporting indicates that in 2022, the defendant signed a five-year $20 million contract with the Cleveland Guardians. According to the Pretrial Services report, a substantial portion of that money appears to have been transferred overseas.  To the government's knowledge, all of the defendant's familial ties, including his girlfriend and daughter, lie in the Dominican Republic.  In fact, apart from his desire to pitch again in the United States, as the government understands, he has no ties to the United States aside from an apartment that he had planned to sell even before his arrest.  Were the defendant to refuse to return to the United States, he would have a substantial familial support network to aid him as a fugitive.

Finally, if the defendant were to refuse to return to the United States from abroad, there is no guarantee that he would be successfully apprehended in the Dominican Republic and extradited to the United States.  Although the United States has entered into an extradition treaty with the Dominican Republic, extradition under the treaty is never guaranteed and would inevitably involve protracted litigation.  What's more, the defendant's travel would not necessarily be limited to the Dominican Republic since, once his passport is returned, he will be virtually unfettered in his ability to travel elsewhere throughout the world after landing in the Dominican Republic, including to countries without extradition treaties with the United States. See United States v. Pina-Nieves, 535 F. Supp. 3d 86, 90 (D.P.R. 2021) ("Moreover, travel to the

---

[1]     The government estimates that if convicted at trial, the defendant would face a range of imprisonment under the United States Sentencing Guidelines of between 87 and 108 months of incarceration.

Dominican Republic requires the USPO to return Pina's passport, permitting him to move freely among foreign jurisdictions, not just the Dominican Republic.").[2]

Because allowing the defendant to obtain his passport and travel to a foreign country in advance of his pending criminal trial would pose an unacceptable risk of flight, the government respectfully requests that the Court deny the defendant's motion.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    ____/s/_____
Eric Silverberg
Sean M. Sherman
Assistant U.S. Attorneys
(718) 254-7000

CC:    Clerk of Court (LKE) (E-mail)
Counsel to Defendant (by E-mail)

---

[2]    The government appreciates that the defendant seeks to travel in part to facilitate the receipt of visas for his family so that they can reunite with him in the United States. Since the defendant's arrest, the government—though it has no control over the visa process—has repeatedly engaged with defense counsel in good faith to facilitate getting his family visa appointments. Though the parties have engaged on the visa issue for several weeks, including on a telephone call with counsel on December 16, 2025, it did not become clear to the undersigned that the defendant's request to travel abroad was linked to a request to spend Christmas with his family until Friday, December 19, 2025. Accordingly, the government relayed its opposition to the defendant's bail modification request on Monday, December 22, 2025.