**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

           Plaintiff,

      v.

EMMANUEL CLASE DE LA CRUZ, and
LUIS LEANDRO ORTIZ RIBERA

           Defendants.

Case No. 25-CR-346 (KAM)

**MOTION TO COMPEL THE DISCLOSURE OF
<u>EXCULPATORY MATERIALS</u>**

# TABLE OF CONTENTS

I.  Preliminary Statement ........................................................................................ 1

II.  Factual and Procedural Background .................................................................. 3

  A.  The only alleged Bettor known to Mr. Clase provided sworn testimony denying the existence of a criminal conspiracy involving Messrs. Clase or Ortiz ... 3

  B.  The government has knowingly withheld exculpatory information necessary for the preparation of Messrs. Clase's and Ortiz's defenses. .................................... 5

  C.  The government mischaracterizes *Brady* material as *Giglio* or 3500 and refuses to produce it. ................................................................................................ 9

III.  Law and Argument ........................................................................................ 10

  A.  *Brady* requires the government to disclose favorable evidence, material to guilt or punishment, in time to make effective use of such material at trial. ....... 10

  B.  *Brady* requires the government to produce reports and notes documenting Declarant Witnesses' inconsistent statements because they are exculpatory ....... 14

    1.  Reports and notes documenting the Declarant Witnesses' inconsistent statements are *Brady* information because they are material to Messrs. Clase's and Ortiz's guilt or punishment. .......................................................................... 15

    2.  *Brady* further requires the government disclose the Declarant Witnesses' inconsistent statements because its produced discovery is in a foreign language and does not identify *Brady* material among voluminous non-*Brady* material. 16

  C.  *Brady* also requires that the government promptly disclose additional exculpatory information to Messrs. Clase and Ortiz. .............................................. 19

    1.  The government must disclose any witness statement reflecting that Messrs. Clase and Ortiz did not participate in a baseball gambling conspiracy, including those statements supporting the bona fides of their communications. 19

    2.  The government must disclose all gambling analyses showing a possibility that the Bettors won their wagers legitimately. .................................................... 20

    3.  The government must disclose all statements, documents, or data from witnesses or third parties, i.e., representatives of MLB, betting app providers, and data analytics consultants who provided monitoring services for betting app providers, inconsistent with the charged scheme. ................................................ 21

  D.  The additional exculpatory information is also critical to allow Mr. Ortiz to file his Motion to Suppress. .................................................................................. 21

IV.  Conclusion ...................................................................................................... 25

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................. 10, 23

*DiSimone v. Phillips*, 461 F.3d 181 (2d Cir. 2006) ...................................................... 20

*Giglio v. United States*, 405 U.S. 150 (1972) ............................................................... 10

*Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001) ........................................................... 12

*Lewis v. Connecticut Comm'r of Correction*, 790 F.3d 109 (2d Cir. 2015) ................. 14

*Smith v. Black*, 904 F.2d 950 (5th Cir. 1990) .............................................................. 27

*Smith v. Cain*, 565 U.S. 73 (2012) .............................................................. 9, 10, 16, 17

*Strickler v. Green*, 527 U.S. 263 (1999) ....................................................................... 12

*United States v. Agurs*, 427 U.S. 97 (1976) ................................................................. 22

*United States v. Bagley*, 473 U.S. 667 (1985) ............................................................. 10

*United States v. Barret*, 824 F. Supp. 2d 419 (E.D.N.Y. 2011) (Matsumoto, J.) ....... 18

*United States v. Barton*, 995 F.2d 931 (9th Cir. 1993) ................................................ 26

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2002) ...................................... 12, 23, 24

*United States v. Djibo*, 730 F. App'x 52 (2d Cir. 2018) .................................. 12, 18, 20

*United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) .................................................. 12, 14

*United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998) ............................................ 15

*United States v. Jackson*, 345 F.3d 59 (2d Cir. 2003) ........................................... passim

*United States v. Mahaffy*, 693 F.3d 113 (2d Cir. 2012) ........................................ passim

*United States v. Mohamed*, 148 F. Supp. 3d 232 (E.D.N.Y. 2015) (Kuntz, J.) .......... 18

*United States v. Nejad*, 436 F. Supp. 3d 707 (S.D.N.Y. 2020) ................................... 24

*United States v. Nelson*, 193 Fed. App'x 47 (2d Cir. 2006) ........................................ 27

*United States v. Nixon*, 418 U.S. 683 (1974) ............................................................... 13

*United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013) ........................................ 25

*United States v. Rivas*, 377 F.3d 195 (2d Cir. 2004) ............................................. passim

*United States v. Rodriguez*, 496 F.3d 221 (2d Cir. 2007) ........................................... 11

*United States v. Thomas*, 981 F. Supp. 2d 229 (S.D.N.Y. 2013) .................... 14, 19, 20

*United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998) ............................................... 11

*United States v. White*, 489 F. Supp. 3d 274 (S.D.N.Y. 2020) ............................. 26, 27

**Other Authorities**

Justice Manual § 9-5.001 .......................................................................................... 9, 17

**Rules**

Fed. R. Crim. P. 16 ................................................................................................ 24, 26

Defendants Emmanuel Clase and Luis Ortiz respectfully submit this memorandum of law in support of their Motion to Compel the Disclosure of Exculpatory Materials. Defendants respectfully request oral argument on this motion.[1]

## I.     Preliminary Statement

Messrs. Clase and Ortiz move for the immediate production of exculpatory materials the government is withholding based on its impermissibly narrow interpretation of its *Brady* obligations. The requested information is currently in the government's possession, is easily produceable, and the government lacks any legitimate basis for delay. The government's refusal to produce this evidence can only be viewed as an attempt to create an unfair trial advantage at the expense of the interests of justice and defendants' right to a fair trial.

To meet its burden at trial, the government will need to prove beyond a reasonable doubt that two professional baseball players with tens, if not hundreds, of millions of dollars in past and future earnings knowingly and intentionally entered into a criminal conspiracy to provide information to co-conspirator bettors to help them win bets, all in exchange for a total of approximately $12,000 each.

---

[1] Pursuant to the Court's Chambers Practices, a separate letter requesting oral argument will be filed once this matter is fully briefed. In addition, counsel for Messrs. Clase and Ortiz stand ready to address and respond to any questions the Court may have during the status conferenced scheduled for January 15, 2026. Consistent with the Court's scheduling order, Messrs. Clase and Ortiz met and conferred with the government on January 2, 2026 and January 6, 2026 to resolve this discovery issue without burdening the Court. These efforts were unsuccessful as the government refused to provide all the requested information.

However, all witnesses identified by the defense, including the witnesses at the heart of the government's allegations, have previously denied any knowledge of a crime and the existence of a conspiracy. The government has made two skeletal *Brady* disclosures (the "*Brady* Disclosures") identifying **nine** witnesses who exculpated Messrs. Clase and Ortiz. But in conflict with the letter and spirit of the law, the government is inexplicably taking the position that inculpatory allegations made at a different time transform the exculpatory information provided by those witnesses from *Brady* to *Giglio* for the impermissible purpose of delaying required disclosures.[2] Inconsistent information attributed to these witnesses does not go simply to the witnesses' credibility; rather, it goes to the core of the government's allegations because those inconsistencies are material to the charged crimes. Therefore, it is *Brady*, not *Giglio* evidence, and the government must immediately make a fulsome production of it.

Moreover, a prompt and fulsome production of exculpatory information is required to provide Messrs. Clase and Ortiz with the opportunity to identify additional exculpatory evidence buried within tens of thousands of Spanish-language communications – both written and oral – produced by the government. This process must be accomplished manually and cannot be performed effectively if the exculpatory information is not provided until the *Giglio* or 3500 disclosure deadlines.

---

[2] Under the Court's Orders, *Brady* material must be disclosed "promptly after its existence becomes known to the Government" (Rule 5(f) Orders, ECF Entry Nos. 15, 21), whereas *Giglio* material must be tendered on or before March 27, 2026 (Pre-Trial Scheduling Order, ECF Entry No. 57).

As more fully described below, we request that the Court order the government to immediately disclose all exculpatory information in its possession, including: (1) all reports and handwritten notes documenting witness statements inconsistent with exculpatory information provided by the witnesses listed in the Brady Disclosures; (2) all reports and handwritten notes documenting witness statements exculpating the defendants (even if they later allegedly inculpated either or both Messrs. Clase or Ortiz); (3) all reports and handwritten notes documenting witness statements denying any knowledge that the defendants engaged in the charged crimes; and (4) any other information in the government's possession from third parties inconsistent with the government's theory of prosecution, including the conclusions (and the methodology used to form conclusions) from betting application providers, or third-party monitoring companies, which failed to flag any allegedly anomalous gambling activity until June 2025, two years after the alleged betting-related conspiracies purportedly began. To the extent that any of these materials do not exist, we request that the government make such representations in writing or on the record.

## II.    Factual and Procedural Background

### A.    The only alleged Bettor known to Mr. Clase provided sworn testimony denying the existence of a criminal conspiracy involving Messrs. Clase or Ortiz.

Messrs. Clase and Ortiz are Major League Baseball ("MLB") pitchers for the Cleveland Guardians in the prime of their careers. Mr. Clase is a closer and one of MLB's most dominant players. Mr. Clase is a three-time All Star, a two-time reliever of the year, a Cy Young award finalist, and one of two qualifying pitchers in the last

100 years to post a career earned run average ("ERA") under 2.00. Mr. Ortiz is a starting pitcher who has experienced significant success with both the Pittsburgh Pirates and Cleveland Guardians.

As alleged in the indictment, the government contends that Messrs. Clase and Ortiz entered into a conspiracy with certain persons, anonymized as "Bettors" in the indictment, to provide material, non-public information to allow the Bettors to win wagers placed through legal online gambling outlets.[3] However, weeks before the filing of the indictment, in or about September 2025, Messrs. Clase and Ortiz provided the government with sworn testimony from potential witnesses who knew Mr. Clase, including "Bettor 1," the only Bettor with whom Mr. Clase had substantive contact during the dates of the alleged conspiracies (collectively, the "Declarant Witnesses").[4] In their sworn testimony, the Declarant Witnesses universally denied the existence of any criminal conspiracy and expressly testified that they never received any form of information or assistance from Messrs. Clase or Ortiz, directly or indirectly, to assist them in winning a bet.[5]

---

[3] Messrs. Ortiz and Clase are innocent, deny all the government's allegations regarding their participation in criminal conspiracies, and look forward to clearing their names at the trial scheduled for May 4, 2026.

[4] Mr. Ortiz did not know any of the Bettors during the relevant period.

[5] The government reproduced in discovery the exculpatory declarations of the Declarant Witnesses originally provided by Messrs. Clase and Ortiz. As explained in further detail below, after repeated requests for *Brady* information, the government produced bare bones summaries of other exculpatory statements made by witnesses. While the defense possesses this exculpatory information, the government has failed to produce other exculpatory statements, including facially inculpatory statements that are nonetheless exculpatory because they are inconsistent with prior exculpatory testimony from the same witnesses regarding the core allegations in this case.

In particular, Bettor 1 testified that "Emmanuel never provided me with any form of information on the pitches he intended to throw in a game to allow me to win a bet . . . never gave me any form of information regarding pitches that any of his teammates [including Mr. Ortiz] intended to throw . . . [and] never gave me any information regarding any component of a Major League Baseball game that related to gambling or would assist me in winning a bet." *See* Bettor 1 Affidavit, attached as Exhibit 1.[6] While completely denying any communications or discussions with Mr. Clase regarding gambling on baseball, Bettor 1 testified that he did have communications with Mr. Clase regarding gambling on rooster fights in the Dominican Republic.[7] In additional testimony provided to the government by counsel for Mr. Clase, multiple witnesses explained that Messrs. Clase and Ortiz are both horse enthusiasts who buy and maintain horses and other livestock on farms located in the Dominican Republic.

### B. The government has knowingly withheld exculpatory information necessary for the preparation of Messrs. Clase's and Ortiz's defenses.

At the status conference on December 2, 2025, the government represented to the Court that discovery in this matter is "substantially complete" and that the

---

[6] A redacted copy of this affidavit is being filed given that the government did not publicly identify Bettor 1 in the indictment.

[7] Rooster fighting and gambling on rooster fighting are legal in the Dominican Republic and sanctioned by the Dominican government. Mr. Clase is a well-publicized breeder and participant in rooster fighting activities in the Dominican Republic.

government is prepared to go to trial immediately.[8] In response to the Court's admonition that the government's "*Brady* obligations [require] that you turn that over promptly," the government further claimed, "[y]es Your Honor[,] [w]e understand our obligations."[9] While Messrs. Clase and Ortiz acknowledge the receipt of voluminous discovery as measured by the file sizes of electronically stored information ("ESI") – primarily tens of thousands of written and oral Spanish-language communications extracted from phones obtained by the government – they do not agree that discovery is remotely near completion, as they have not received meaningful discovery outside of the ESI.[10]

Indeed, the government did not disclose *any Brady* information until December 30, 2025, well after they claimed discovery was "substantially complete" and only after the defense expressly requested disclosure of *Brady* material in letters dated December 23, 2025 (together, the "*Brady* Demand Letters").[11] After further defense requests, none of which should have been required, the government disclosed more

---

[8] Specifically, the government stated: "With respect to additional discovery, we do have a handful of additional electronic devices that were recently obtained and are undergoing review, and that may lead to some additional responsive reports. And we're also doing a review of our files to scrub to make sure there's nothing else as well that we need to turn over. And then this is an ongoing investigation, and as we get new materials, discovery will continue to roll out, but otherwise, Your Honor, discovery is, from the government's perspective, other than what I have just described, substantially complete." Tr. December 2, 2025 Status Conference at 5-6, 10.

[9] *Id.*

[10] Moreover, on December 30, 2025, the government produced an additional 1 gigabyte of third-party subpoena returns. Based on the dates of those returns, the government clearly had these documents in its possession substantially before the initial status conference when it represented to the Court that discovery was "substantially complete."

[11] Messrs. Clase and Ortiz joined each other in the requests made in the *Brady* Demand Letters.

*Brady* information on January 6, 2025.[12] Rather than investigative reports, transcripts, or other traditional means of disclosure, the government provided thin summaries of certain witness statements in their *Brady* Disclosures.[13] The summaries do not include any information regarding the timing or circumstances under which the statements were made, how many times the witnesses made the exculpatory statements, or what prompted changes in the statements. One of the government's *Brady* Disclosures, *see* Exhibit 3b, also makes vague reference to the existence of other inconsistent statements from the same witnesses, yet these statements were not produced to the defense. Inexplicably, the government refuses to concede that fully exculpatory statements it provided constitute discoverable information under *Brady*, calling into question whether the government truly does "understand their obligations" as represented to the Court. *Id.* Indeed, the government told the defense, in substance, "to the extent any prospective witnesses have made inconsistent statements ***about the defendants' culpability (or about any other material facts), those inconsistencies will be disclosed in accordance with the Court's deadline for the disclosure of***

---

[12] Pursuant to the Protective Order, *see* ECF Entry No. 37, Messrs. Clase's and Ortiz's December 23, 2025 *Brady* Demand letters, identified as Exhibits 2a and 2b, respectively, and the government's two *Brady* Disclosure letters, dated December 30, 2025 and January 5, 2026, and identified as Exhibits 3a and 3b, respectively, are being submitted to the Court under separate cover and under seal. In addition, certain information has been redacted from this motion in an abundance of caution to comply with the Protective Order.

[13] Despite producing to Mr. Ortiz a complete FBI 302 of Mr. Clase's interactions with the FBI, which included numerous exculpatory statements, the government did *not* produce FBI 302s for the witnesses identified in its *Brady* Disclosures.

*__Giglio information__*." *Id.* (emphasis added). The government's understanding of its *Brady* obligations is confounding at best.

To make effective use of exculpatory information at trial, Messrs. Clase and Ortiz must immediately receive the requested inconsistent and exculpatory witness statements so that they are afforded the opportunity to screen the voluminous Spanish-language ESI for additional communications inconsistent with the government's theory of prosecution and proffered witness testimony and/or consistent with the defense's theory. Such a review must be conducted largely manually and will take several months.[14]

As representative examples, the ESI discovery produced to date consists of partial extracts of Bettors' phones and includes countless communications involving rooster fighting or maintaining horses and livestock. Following requests from the defense, the government further stated its intention to provide up to two terabytes of additional ESI extracted from phones, which will undoubtedly include thousands more Spanish-language communications. While not confirmed by meaningful discovery, the government, in the indictment, seems to contend that certain, but not all, references to roosters or horses are coded messages meant to disguise the discussion of baseball-gambling related activities. Without disclosures from the government regarding allegations from prospective witnesses clarifying which messages are conspiratorial code and which are benign, or which of the thousands of

---

[14] Immediate disclosure is also necessary to allow time to translate English-language disclosures to Messrs. Clase and Ortiz, who only speak Spanish, so that they are afforded the opportunity to meaningfully participate in their own defense.

combined pitches thrown by Messrs. Clase and Ortiz were something less than legitimate baseball pitches, Messrs. Clase and Ortiz are deprived of the meaningful opportunity to comb through the thousands of Spanish-language messages to identify information inconsistent with the government's allegations.

### C. The government mischaracterizes *Brady* material as *Giglio* or 3500 and refuses to produce it.

In the *Brady* Demand Letters, Messrs. Clase and Ortiz requested all outstanding exculpatory materials currently in the government's possession, custody, or control, including all information inconsistent with the government's theory of prosecution and the exculpatory testimony of the Declarant Witnesses. As fully explained in the *Brady* Demand Letters, all information in the government's possession inconsistent with the Declarant Witnesses' sworn testimony denying a criminal conspiracy is exculpatory because it "casts a substantial doubt upon the accuracy of any evidence"—including but not limited to alleged inculpatory statements made to the government by the Declarant Witnesses—"the prosecutor intends to rely on to prove an element of any crime charged" and therefore must be disclosed "reasonably promptly after it is discovered . . . in sufficient time to permit the defendant to make effective use of that information at trial . . . regardless of whether it is likely to make the difference between conviction and acquittal." Exhibit 2a at 2, citing Justice Manual § 9-5.001; *see also Smith v. Cain*, 565 U.S. 73, 76 (2012) (granting habeas relief for *Brady* violation where prosecution did not reveal sole eyewitness's inconsistent identification). The same is true for any information in the government's possession inconsistent with the exculpatory information provided by

the witnesses identified in the *Brady* Disclosures. The government must produce it immediately to satisfy its *Brady* obligations.

The government does not contest the existence or ready availability of the requested materials. Instead, and in contradiction to its representations to the Court, the government intends to withhold these materials for as long it can by mischaracterizing them as *Giglio* or 3500, rather than *Brady*. The government's narrow view of *Brady* law here is wrong and violates Messrs. Clase's and Ortiz's due process rights.

## III.  Law and Argument

### A.  *Brady* requires the government to disclose favorable evidence, material to guilt or punishment, in time to make effective use of such material at trial.

*Brady* requires the prosecution to disclose evidence favorable to the accused and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This includes exculpatory information, *id.*, information which could impeach significant prosecution witnesses, *Giglio v. United States*, 405 U.S. 150, 153-55 (1972), information that reflects bias or incentive to lie, *United States v. Bagley*, 473 U.S. 667, 683-84 (1985), and government witnesses' prior inconsistent statements material to the defendant's guilt, *Cain*, 565 U.S. at 76. The government's *Brady* obligation "is designed to serve the objectives of both fairness and accuracy in criminal prosecutions . . . [and] recognizes the possibility that the evidence on which the prosecution relies to prove the defendant's guilt is not necessarily truthful, accurate, or complete, especially when the prosecution's investigations have made it

aware of evidence or information that might be favorable to the defense in controverting the Government's proofs." *United States v. Rodriguez*, 496 F.3d 221, 224-26 (2d Cir. 2007) (internal citations and quotations omitted). "[I]f a witness initially indicates that the defendant did not engage in criminal activity but then changes her position to state that he did . . . the report of the first interview would be quintessential *Brady* material." *United States v. Trie*, 21 F. Supp. 2d 7, 26 (D.D.C. 1998).

The *Brady* obligation attaches to information known by prosecutors, regardless of whether notes were taken, *see, e.g.*, *Rodriguez*, 496 F.3d at 225-26 (2d Cir. 2007); regardless of whether the declarant is testifying or whether the statement is hearsay, *see, e.g.*, *United States v. Jackson*, 345 F.3d 59, 70-71 (2d Cir. 2003); and regardless of whether the information is admissible, as it could lead to additional discovery or could be used for impeachment, *see, e.g.*, *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002).

Once the *Brady* obligation arises, the government has a "broad duty" to disclose *Brady* information to the defense in a timely manner. *Strickler v. Green*, 527 U.S. 263, 281 (1999). Information is disclosed in a timely manner only if the defendant possesses the "*Brady* evidence in time for its effective use." *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2002). This is the "opportunity for a responsible lawyer to use the information with some degree of calculation and forethought." *Leka v. Portuondo*, 257 F.3d 89, 103 (2d Cir. 2001). A responsible lawyer's effective use includes sufficient time to conduct reasonable investigation, since "[a] responsible

11

lawyer could not put [the witness] on the stand without essential groundwork." *See id.* When *Brady* materials are in a foreign language, the prosecution must disclose such information in time for the defendant to translate and thoroughly review such records. *See United States v. Djibo*, 730 F. App'x 52, 56 (2d Cir. 2018).

Contrary to the government's position in this case, both the witnesses' prior exculpatory and inconsistent statements are quintessential *Brady* material.[15] *See United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (holding the "late-disclosed statement" had an "exculpatory effect" because it "might well have been viewed by the jury as a critical piece of evidence supporting the defense theory"); *United States v. Mahaffy*, 693 F.3d 113, 127-31 (2d Cir. 2012) (holding that undisclosed transcripts contained "substantial *Brady* material" where the transcripts' exculpatory nature matched the defense's theory). This is true even where the statements are also inculpatory. *Mahaffy*, 693 F.3d at 130. And it is true even if the statements may also have a second use as impeachment material. *See id.* at 131 (holding that the undisclosed transcript could also have been used to impeach a witness, which would have allowed the defense to call that witness at trial); *see also United States v. Nixon*, 418 U.S. 683, 701-02 (1974) (recognizing the general rule that "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial" but holding the trial court did not err in issuing a subpoena for the Watergate tapes because of "other valid potential evidentiary uses for the same material" and the time necessary for "analysis and possible transcription of the tapes"). In short, while pure

---

[15] The government's positions are contrary to DOJ policy. *See* Justice Manual 9-5.001(D).

*Giglio* material that relates solely to a witness's general credibility can at times be delayed until closer to trial, *Brady* material exculpating Messrs. Clase and Ortiz, including by supporting its theory of the case, must be disclosed sooner.[16]

Applying these principles, the Second Circuit upheld a district court's grant of habeas relief where state prosecutors failed to disclose initial exculpatory statements by a witness who originally exculpated a defendant and inculpated him only after his interrogator "provided critical details about the case," told him "that it was in his best interest to tell what happened [and] give a detailed statement as to his participation and also the other two," and "promised to 'let [him] go' if he did so." *Lewis v. Connecticut Comm'r of Correction*, 790 F.3d 109, 123-24 (2d Cir. 2015). The circuit court explained the information "was clearly exculpatory under *Brady* or impeachment material under *Giglio, if not both." Id.* at 24 (emphasis added).

Finally, the government "cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials." *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013). At some point, such evidence is effectively unavailable to the defense, even if it has technically been produced. *See Gil*, 297 F.3d at 106 (finding *Brady* evidence unavailable when made as part of a large production on the eve of trial); *see also United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) ("The [g]overnment cannot meet its *Brady* obligations by providing . . . 600,000 documents

---

[16] It is logical that some information requiring a *Giglio* disclosure may not become known to the government until closer to trial, such as an adverse credibility finding in an unrelated matter. That is not what is at issue here.

13

and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack.").[17]

### B. *Brady* requires the government to produce reports and notes documenting Declarant Witnesses' inconsistent statements because they are exculpatory.

The government must produce the Declarant Witnesses' inconsistent statements because they are exculpatory under *Brady* and its progeny. Over three months ago, Messrs. Clase and Ortiz produced to the government sworn declarations from multiple Declarant Witnesses squarely denying the government's alleged conspiracy and confirming that Mr. Clase communicated with his associates about gambling on rooster fighting in the Dominican Republic, where it is legal, and that Messrs. Clase and Ortiz directed the dispersal of legitimate earnings, not criminal proceeds, to the Dominican Republic to obtain and care for livestock, including a horse purchased in 2025.[18] The government now claims it is somehow ready for trial immediately, but Messrs. Clase and Ortiz cannot prepare their defense because the

---

[17] As the government is aware from the *Brady* Demand Letters and meet and confer on the subjects bearing on this motion, Messrs. Clase and Ortiz expressly request that the government identify with specificity: (1) which pitches were allegedly not baseball plays but criminal events; and (2) which communications buried within the thousands of Spanish-language materials represent alleged coded statements in furtherance of a conspiracy. The government refuses to do so. Only once the government has disclosed the acts and statements it alleges to be inculpatory can Messrs. Clase and Ortiz meaningfully search for information inconsistent with the government's theory of prosecution. Accordingly, the requested disclosures are a necessary part of the government's *Brady* obligations.



[18] ██████████████████████████ ██████████████████████████. *Compare* Ex. 1 with Ex. 3b. ████████████████████████ ██████████████████████████████████████████. Messrs. Clase and Ortiz anticipate that █████ will be a critical witness in the case, and the government has produced thousands of Spanish-language communications involving ███████. Only through the prompt receipt of all inconsistent statements made by ███████, including facially inculpatory statements, will Messrs. Clase and Ortiz be able to adequately identify materials buried within the ESI to make effective use of the information at trial.

government has not fulfilled its *Brady* obligations by providing them with the Declarant Witnesses' inconsistent statements and related exculpatory information.

The Declarant Witnesses' inconsistent statements are exculpatory, and some are (in whole or in part) in a foreign language. Once produced, the defendants and their counsel will need to undertake significant analysis and investigation to identify information favorable to the defense interspersed among tens of thousands of other foreign language written and audio text messages. *Brady* requires the government to disclose inconsistent witness statements to Messrs. Clase and Ortiz or confirm that such witness statements do not exist.

> **1.** *Reports and notes documenting the Declarant Witnesses' inconsistent statements are* Brady *information because they are material to Messrs. Clase's and Ortiz's guilt or punishment.*

Government witnesses' inconsistent statements, material to the defendant's guilt, are *Brady* information. *See Cain*, 565 U.S. at 76. This is so because when the prosecution's case relies on a witness's testimony to prove an element of the crime, that witness's inconsistent testimony exculpates the defendant. *See Rivas*, 377 F.3d at 199-200 (vacating and remanding for new trial when the prosecution did not disclose inconsistent testimony it viewed as inculpatory because the statements were *Brady* in that they aligned with the defendant's theory of the case and were therefore exculpatory); *Cain*, 565 U.S. at 76 (granting habeas relief where prosecution did not disclose sole eyewitness's inconsistent identification). Indeed, the government's position here is in direct contravention of the Department of Justice's own policy, referring to "information that is inconsistent with any element of any crime charged

against the defendant" as "[a]dditional exculpatory information that must be disclosed . . . promptly after its existence becomes known to the government." *See* Justice Manual § 9-5.001.

Reports and notes documenting the Declarant Witnesses' inconsistent statements are classic, exculpatory *Brady* material. The government alleges Mr. Clase, at times, used code to speak with the Declarant Witnesses about the alleged conspiracy. *See, e.g.*, Indictment ¶¶ 19, 36. But the Declarant Witnesses have sworn they were not speaking in code; rather, they used their words to mean exactly what those words said. *See, e.g.,* Exhibit 1, ¶¶ 13-21. Since at least September 2025, when the government received copies of the Declarant Witnesses' denials, it has known of the exculpatory nature of *all* inconsistent evidence in its possession. The government has no legitimate basis to withhold these inconsistent, exculpatory statements, *see Mahaffy*, 693 F.3d at 127-31, and must disclose them under *Brady*.

> 2. Brady *further requires the government disclose the Declarant Witnesses' inconsistent statements because its produced discovery is in a foreign language and does not identify* Brady *material among voluminous non-*Brady *material.*

*Brady* additionally requires the government disclose the Declarant Witnesses' inconsistent statements because its produced discovery is in Spanish and does not identify *Brady* material among the tens of thousands of messages of non-*Brady* material buried within multiple terabytes of produced and forthcoming ESI.

While a defendant is expected to engage in a reasonable review of produced material, without the disclosure of alleged inculpatory witness statements (which are necessarily inconsistent with the Declarant Witnesses' pre-indictment testimony), it

is not possible for Messrs. Clase and Ortiz to identify which of the tens of thousands of produced and forthcoming Spanish-language text and audio messages may rebut the government's allegations in time to prepare for trial. The Second Circuit recognizes that a defendant's effective use requires time to translate such material. *See Djibo*, 730 F. App'x at 56 (vacating and remanding defendant's conviction when he received thousands of potential *Brady* or *Giglio* messages in Swahili near trial). Indeed, maintaining a fair, orderly trial is exactly why trial courts have discretion over case management. *See United States v. Barret*, 824 F. Supp. 2d 419, 456 (E.D.N.Y. 2011) (Matsumoto, J.). The government must disclose the Declarant Witnesses' inconsistent statements so that Messrs. Clase and Ortiz can make effective use of the exculpatory statements in a fundamentally fair trial. *See United States v. Mohamed*, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) (Kuntz, J.) ("Early disclosures . . . may be appropriate where the Defense would require significant time to investigate and make effective use of the disclosure.")

This is especially true when the government has potentially included *Brady* materials within tens of thousands of untranslated written and oral statements, without any indication as to which messages may be relevant. *See Thomas*, 981 F. Supp. 2d at 239 ("[T]he Government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials."). Requiring Messrs. Clase and Ortiz to manually search for exculpatory statements among tens of thousands of innocuous messages about rooster fighting, livestock, and home repairs, and be left to essentially

17

guess which ones the government will spring on the defense and claim are coded, comes up far short of *Brady*'s guarantees.

In sum, *Brady* requires the government to disclose the Declarant Witnesses' inconsistent statements and related information which undermine the prosecution and support the defense's theory. *See Rivas*, 377 F.3d at 199-200 (vacating defendant's conviction in an "unusual case where a late-disclosed statement can be viewed as having both an inculpatory and an exculpatory effect"). As in *Rivas*, this is the rare case in which even facially inculpatory statements are exculpatory because the inconsistencies serve to impeach the credibility of government witnesses and undermine the core allegation that Messrs. Clase and Ortiz conspired with the Bettors. If the government cannot identify whether information is exculpatory under *Brady*, the government should err on the side of disclosure and allow Messrs. Clase and Ortiz to review such materials. *Cf. DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) ("[I]f there were questions about the reliability of the exculpatory information, it was the prerogative of the defendant and his counsel – and not of the prosecution – to exercise judgment in determining whether the defendant should make use of it."). Further, to the extent the government has already produced *Brady* information among the voluminous ESI from Bettors' phones, the government must identify which material falls under *Brady*; Messrs. Clase and Ortiz cannot manually translate the entirety of the productions to identify exculpatory evidence for its effective use at trial. *See Djibo*, 730 F. App'x at 56; *Thomas*, 981 F. Supp. 2d at 239.

### C. *Brady* also requires that the government promptly disclose additional exculpatory information to Messrs. Clase and Ortiz.

The government's *Brady* obligation also requires it to disclose all additional evidence inconsistent with its theory or consistent with the defense's theory. This includes any witness statement reflecting that Messrs. Clase and Ortiz did not participate in a baseball gambling conspiracy. This evidence would include, *inter alia*, statements supporting the proposition that the defendants engaged in no coded communication, gambling analyses showing a possibility that Bettors won relevant wagers legitimately,[19] and statements, documents, or data from witnesses or third parties, including representatives of MLB, inconsistent with the charged scheme.[20]

> 1. *The government must disclose any witness statement reflecting that Messrs. Clase and Ortiz did not participate in a baseball gambling conspiracy, including those statements supporting the bona fides of their communications.*

The government must also disclose any witness statement reflecting that Messrs. Clase and Ortiz did not participate in a baseball gambling conspiracy, including those statements supporting the *bona fides* of their communications. *See Rivas*, 377 F.3d at 199-200. For example, if the government is in possession of

---

[19]  The pertinent analyses would include the conclusions and methodology used by gambling app providers and third-party monitors, which appear to have failed to flag any bets as suspicious or anomalous until June 2025, all in a case involving an alleged conspiracy beginning in May 2023.

[20] The government claims it never interviewed members of the Guardians' team. The defense strains to believe government prosecutors would leave such a gaping hole in any investigation, much less this one, involving two MLB players. What is more likely, the government had reason to believe that Guardians' players and staff possessed no incriminating information and, for that reason, elected not to pursue interviews. However, if the government possesses even such tacit information it would be *Brady* that must be disclosed. The defense cannot accept the feigned ignorance by the government. *See Mahaffy,* 693 F.3d at 131 n.11 (holding the government must disclose both a witness's identity and the essential facts allowing the defense to use such witness's exculpatory evidence).

information that Guardians personnel never observed Messrs. Clase or Ortiz throwing a pitch for a non-competitive reason, even if only orally shared from a MLB representative to an FBI agent, prosecutor, or other government personnel, it must be produced. Further, in the indictment, the government alleges that messages related to benign activities, like house repairs or selling a horse, were code words evincing a gambling conspiracy.[21] Indictment ¶¶ 19, 36. Statements undermining this theory are not just *Giglio* impeachment material but are exculpatory since they undercut the prosecution's theory of the case. *See Mahaffy*, 693 F.3d at 127-31. The government must disclose these *Brady* materials to Messrs. Clase and Ortiz regardless of whether the same witness later made an inculpatory allegation against Messrs. Clase or Ortiz.

> 2. *The government must disclose all gambling analyses showing a possibility that the Bettors won their wagers legitimately.*

The government further must disclose all gambling analyses, and methodologies supporting those analyses, showing a possibility that the Bettors won their wagers legitimately, including evidence that monitoring algorithms failed to flag any bets placed on pitches thrown by Messrs. Clase or Ortiz as anomalous until June 2025. Evidence showing the Bettors legitimately won their wagers on Messrs. Clase's and Ortiz's pitches undercuts the government's theory of a baseball gambling conspiracy. This evidence is classic *Brady* material which must be disclosed to the

---

[21] Once more, the most straightforward way for the government to disclose exculpatory communications regarding the absence of coded language is to first identify which statements are alleged to be code. The government's refusal to provide this information makes it impossible for Messrs. Clase and Ortiz to identify information inconsistent with the government's allegations that coded statements are evidence of acts in furtherance of the charged conspiracies.

defense in time for its effective use at trial. *See Rivas*, 377 F.3d at 199–200; *Coppa*, 267 F.3d at 142. Resultantly, *Brady* requires the government disclose all gambling analyses showing a possibility the Bettors won their wagers legitimately.

> 3.    *The government must disclose all statements, documents, or data from witnesses or third parties, i.e., representatives of MLB, betting app providers, and data analytics consultants who provided monitoring services for betting app providers, inconsistent with the charged scheme.*

Finally, the government must disclose all statements, documents, or data from witnesses or third parties, including representatives of MLB, the betting app providers, and data analytic consultants retained by the betting app providers to screen for alleged suspicious or anomalous betting activity, inconsistent with the charged scheme. The *Brady* obligation extends to all evidence within the prosecution team's possession. *See Brady,* 373 U.S. at 87. Evidence from witnesses or third parties inconsistent with the alleged baseball gambling conspiracy, including evidence that the online gambling providers and their third-party consultants failed to flag any bets as allegedly suspicious or anomalous until June 2025 when the charged betting conspiracies allegedly began in May 2023, supports Messrs. Clase's and Ortiz's defense, rendering it *Brady* material. *See Mahaffy*, 693 F.3d at 127-31; *Rivas*, 377 F.3d at 199-200. The government must disclose this evidence promptly to allow the defense to make effective use of it at trial. *See Coppa*, 267 F.3d at 142.

**D.    The additional exculpatory information is also critical to allow Mr. Ortiz to file his Motion to Suppress.**

Reports documenting the exculpatory witness statements are also discoverable under both *Brady* and Rule 16 as items "material to preparing the defense" to allow

21

Mr. Ortiz to file a pretrial motion, namely a motion to suppress any evidence recovered from the searches of Mr. Ortiz's phones based on the government's reckless omission of material information from the affidavit supporting a search warrant.[22] *See United States v. Nejad*, 436 F. Supp. 3d 707, 718-19 (S.D.N.Y. 2020) ("To obtain a *Franks* hearing on a motion to suppress on the basis of alleged misstatements or omissions in a warrant affidavit, a defendant must make a substantial preliminary showing that (1) there were intentional misrepresentations or omissions in the warrant affidavit, or, in other words the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) those misrepresentations or omissions were material, or necessary to the issuing judge's probable cause finding.") (citing *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013)) (internal quotations omitted).

For example, following the arrest of Mr. Ortiz on November 9, 2025, agents seized his phone and subsequently sought a search warrant for its content. In the supporting affidavit, the government stated: ███████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[22] To date, the government has refused to disclose whether it was in possession of the exculpatory information it disclosed in the *Brady* Disclosures at the time of the search warrant, but it appears that it was.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████ But the affidavit
egregiously failed to include the voluminous additional exculpatory material
(including the statements referenced in the *Brady* Disclosures) that, upon
information and belief, was then in the government's possession and materially
undermined the government's theory.

To enable Mr. Ortiz to make the requisite substantial preliminary showing for
a *Franks* hearing, Mr. Ortiz is entitled to copies of the reports documenting the
omitted exculpatory information. The reports are necessary because there was no
reference to their contents in the search warrant and they materially undermine the
government's alleged probable cause in a very weak affidavit.

In a recent case, in response to a court's question as to whether the government
was obligated to disclose certain material relevant to the defense's ability to file a
motion to suppress fruits of the poisonous tree, the government conceded that
material relevant to filing a search warrant that was not obvious to the defense from
Rule 16 discovery could be considered information that is material to preparing the
defense under Rule 16. *See United States v. White*, 489 F. Supp. 3d 274, 280 (S.D.N.Y.
2020) (the government conceded that "[i]dentifying fruits of a search that are not
obvious to the defense from Rule 16 discovery and the production of search warrants

could be considered information that is 'material to preparing the defense' under Rule 16[.]").

Other circuit courts have also held that under *Brady*, the government must produce material that would lead to suppression of evidence. *See United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) ("[W]e hold that the due process principles announced in *Brady* and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant"); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990) (applying *Brady* to a motion to suppress items seized without warrant from defendant's home and vehicle). Although the Second Circuit has not yet ruled on the application of *Brady* to the suppression context, *see United States v. Nelson*, 193 Fed. App'x 47, 53 (2d Cir. 2006), the logic of *Barton* and *Black* is compelling as the due process principles announced in *Brady* and its progeny logically apply to suppression proceedings. *See White*, 489 F. Supp. 3d at 281 (S.D.N.Y. 2020) (holding that due process required that the government promptly identify any evidence that it may offer at trial that was located or identified using information obtained from a search that was suppressed so that a defendant could make additional pretrial suppression motions).

## IV.    Conclusion

For the foregoing reasons, Messrs. Clase and Ortiz respectfully request that the Court enter an Order compelling the immediate production of *Brady* materials.

Respectfully submitted,

/s/ *Michael Ferrara*
Michael Ferrara (*pro hac vice*)
Lindsay Gerdes (NY Bar No. 4581690)
Michael Bronson (*pro hac vice*)
Riley Able (*pro hac vice*)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd., Suite 200
Columbus, OH 4325
(614) 628-6975
michael.ferarra@dinsmore.com

**Counsel for Emmanuel Clase**

/s/ *Paul M. Flannery*
Paul M. Flannery (*pro hac vice*)
Chris N. Georgalis (*pro hac vice*)
Flannery Georgalis, LLC
1621 Euclid Ave, Floor 20
Cleveland, OH 44115
(614) 367-2120
paul@flannerygeorgalis.com

Elizabeth Geddes (NY Bar No. 4348470)
Corva Law LLP
110 West 40th St., Suite 1003
New York, NY 10018
(646) 974-1143
liz@corvalaw.com

**Counsel for Luis Ortiz**

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed electronically on January 9, 2026, and that service of the same on all counsel of record will be made by the Court's CM/ECF system.

/s/ <u>*Michael Ferrara*</u>

Michael Ferrara
