FTB:EWS/SMS/SME
F. #2025R00435

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -              Docket No. 25-CR-346 (S-1) (KAM)

LUIS LEANDRO ORTIZ RIBERA,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X


## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ORTIZ'S MOTION TO SEVER


                         JOSEPH NOCELLA, JR.
                         UNITED STATES ATTORNEY
                         Eastern District of New York
                         271 Cadman Plaza East
                         Brooklyn, New York 11201


Eric Silverberg
Sean M. Sherman
Sarah M. Evans
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................ 1

I.      Overview of the Charged Conduct .................................................................... 1

II.     Defendant Clase's Lawyers' Interviews of Relevant Subjects ........................ 4

III.    Defendant Ortiz's Lawyers' Representations to the Government .................... 6

IV.     Procedural History ........................................................................................... 8

THE MOTION FOR SEVERANCE SHOULD BE DENIED ........................................ 9

I.      Applicable Legal Standards for Severance ....................................................... 9

II.     Severance Is Unwarranted in This Case ......................................................... 11

    A.  The Potential Conflict Is Not a Basis for Severance Because Testimony
        by the Clase Attorneys is Inadmissible Extrinsic Evidence ......................... 11

    B.  Ortiz's New Defense is Not Mutually Antagonistic with Clase's ................. 15

    C.  Ortiz's Claim of "Spillover" Prejudice Does Not Warrant Severance ........... 19

    D.  Speedy Trial Does Not Warrant Severance ................................................... 22

CONCLUSION .............................................................................................................. 24

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to defendant Luis Leandro Ortiz Ribera's ("Ortiz") motion for severance.  See ECF Nos. 76–77 ("Mot.").  The charges against Ortiz, Emmanuel Clase de la Cruz ("Clase"), and Robinson Vasquez Germosen ("Vasquez") arise from their participation in the same criminal scheme and will be proved at trial with substantially the same evidence.[1]  Ortiz's argument raises the specter of a potential conflict as a justification for his own individualized trial, at enormous and unwarranted cost in time and resources, inconvenience to witnesses, and prejudice to the government.  The same is true of Ortiz's claims of mutual antagonism and spillover prejudice, neither of which is present here.  The law strongly favors joint trials of defendants who are indicted together as coconspirators to avoid just the sort of inefficiency invited by the defendant's motion.  Accordingly, and for the reasons set forth in greater detail below, the defendant's motion should be denied.

BACKGROUND

I.    Overview of the Charged Conduct[2]

On November 5, 2025, the Grand Jury returned a four-count indictment charging Ortiz and his co-defendant and teammate, Clase, with (1) conspiracy to commit wire fraud, in

---

[1]    As detailed below, after Ortiz filed this motion for severance the Grand Jury returned a superseding indictment that added two additional defendants, one of whom remains at large outside of the United States.  See ECF No. 80.  The government primarily addresses the severance motion as filed as to Clase because Ortiz's primary argument—a potential conflict posed by pre-indictment interviews of witnesses conducted by Clase's attorneys—is only an issue with respect to a trial held jointly with Clase.  Nevertheless, for the reasons described below, the government opposes severance of Ortiz from a trial that would now also include Vasquez (as well as Clase).  All of the arguments against severance based on the conservation of judicial resources set forth below apply with the same or greater force after the return of the superseding indictment.

[2]    This proffer of facts is not a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial.  Unless otherwise indicated, all statements are provided in sum and substance and in part.

violation of Title 18, United States Code, Section 1349; (2) conspiracy to commit honest services wire fraud, in violation of Title 18, United States Code, Section 1349; (3) conspiracy to influence sporting contests by bribery, in violation of Title 18, United States Code, Section 224; and (4) money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h). See Indictment, ECF No. 1.

On February 12, 2026, the Grand Jury returned a five-count superseding indictment which added two additional defendants, Vasquez and another individual whose identity is under seal ("Defendant-4"), to the conspiracy to commit wire fraud. See Superseding Indictment, ECF No. 80. The superseding indictment also charged Vasquez with making materially false statements to law enforcement agents, in violation of Title 18, United States Code, Section 1001(a)(2). The superseding indictment did not contain additional charges against Clase or Ortiz.

As alleged in the superseding indictment, beginning in approximately May 2023, Clase agreed to share advance information about pitches he would throw in upcoming Major League Baseball ("MLB") games with Vasquez, Defendant-4, and Bettor-1 so that they and other individuals (the "Bettors") could use the information to win wagers on those pitches. From May 2023 through June 2025, the Bettors used advance, inside information from Clase to win over $400,000 in fraudulent wagers on fixed pitches he threw.[3] Typically, Clase agreed to throw slower "slider" pitches that were "balls" (meaning outside of the strike zone) on the first pitches of at-bats

---

[3]     To emphasize his relative culpability, Ortiz claims that the government has identified "████████████" in which the Bettors won wagers based on advance information from Clase, whereas Ortiz was only involved in throwing fixed pitches in two games. The government has identified for the defendants a list of specific pitches from ████████ that may feature at trial as pitches in furtherance of the conspiracy. While the government will argue at trial that Clase's participation in the conspiracy spans numerous games over the course of multiple years, and the government anticipates that betting records admitted at trial will demonstrate multiple significant wins on Clase's pitches, the government anticipates that the "fixed pitches" that feature in its case-in-chief will be fewer.

when Clase was brought into the game as a relief pitcher, and the Bettors wagered accordingly. Vasquez and Defendant-4 were intermediaries between Clase and the Bettors and received a portion of the proceeds from the fraudulent wagers on the fixed pitches. In addition, Vasquez placed bets on fixed pitches through an account he opened in the name of another individual, referred to as Individual-2.

In or about June 2025, Ortiz joined the scheme and agreed to throw pitches in exchange for money. At trial, the government anticipates that the evidence will show that Bettor-1 and Clase—who were engaged in the ongoing scheme described above—agreed that Clase would facilitate Ortiz's entrance into the conspiracy. Before a game on June 15, 2025 (the "June 15 Game"), Ortiz agreed with Clase that in exchange for $5,000, he would throw a ball for his first pitch in the second inning ("Subject Pitch-1"), the same type of wager that the Bettors typically agreed upon with Clase. Clase also agreed with Bettor-1 that Clase would receive $5,000 for securing Ortiz's agreement to throw Subject Pitch-1.

The June 15 Game was scheduled to start at approximately 4:10 p.m. Beginning at approximately 1:40 p.m., Bettor-1 sent a text message to Clase asking "how are we doing?" and "everything under control there?" Bettor-1 and Clase then had a brief telephone call. Shortly thereafter, before the June 15 Game had begun, and thus before they knew which batter would hit first in the second inning, Bettor-1 and Bettor-2—two of the Bettors who had been engaged in an ongoing scheme with Clase—began wagering that Subject Pitch-1 would be a ball.[4] The wagers won, resulting in a payout of approximately $26,000. In the days after the June 15 Game, Clase facilitated the transfer of the bribe payment from Bettor-1 to Ortiz. To do so, Clase enlisted the

_____

[4]     Bettor-2's wager was placed through an individual referred to in the superseding indictment as Individual-1.

assistance of an individual referred to in the superseding indictment as "Clase Associate-1," whom Clase had also previously used as an intermediary to receive a kickback payment from Bettor-1.

A few days later, Ortiz agreed with Clase to throw another pitch for money ("Subject Pitch-2"). This time, Ortiz agreed to throw a ball for his first pitch in the third inning during a game held on June 27, 2025 (the "June 27 Game") in exchange for $7,000. Clase also agreed with Bettor-1 that Clase would receive $7,000 for obtaining Ortiz's agreement to throw Subject Pitch-2.

Before the June 27 Game began, Clase went to the bank and withdrew $50,000 in cash. He provided $15,000 to Bettor-1 to use to wager that day. Before the June 27 Game began—and thus before anyone knew which batter would hit first in the third inning—Bettor-1, Bettor-2, and additional Bettors wagered that Ortiz's first pitch in the bottom of the third inning would be a ball. The wagers won, resulting in a payout of approximately $37,000.

Shortly after the June 27 Game, the scheme was detected. By July 2, 2025, Major League Baseball had already launched investigations and submitted information requests to both Clase and Ortiz. By July 3, 2025, Ortiz was placed on leave. Clase was placed on leave weeks later.

## II.    Defendant Clase's Lawyers' Interviews of Relevant Subjects

Beginning in August 2025, three lawyers on Clase's current defense team (collectively, the "Clase Attorneys") engaged in interviews with four subjects of the government's investigation, including Bettor-1 and two of Clase's now charged co-defendants, Vasquez, and Defendant-4 (collectively, the "Subjects"). The Subjects primarily spoke Spanish. One of the Clase Attorneys ("Clase Attorney-1"), who is also a certified Spanish translator, served as the translator. The other two Clase Attorneys primarily communicated with the Subjects through Clase Attorney-1.

4

On August 6, 2025, in the presence of the Clase Attorneys, Bettor-1 executed a sworn declaration (the "Bettor-1 Declaration") denying that Bettor-1 engaged in the above-described scheme with Clase and Ortiz. Clase Attorney-1 executed his own sworn declaration (the "Attorney-1 Declaration"), which reported in substance, among other things, that Bettor-1 spoke with the Clase Attorneys for several hours; that Bettor-1 was not represented by counsel during their meetings; and that Bettor-1 executed the Bettor-1 Declaration voluntarily after having an opportunity to review and revise it.

If called as a witness at trial, the government would expect Bettor-1 to testify that he made the statements in the Bettor-1 Declaration voluntarily in the manner described in the Attorney-1 Declaration; that the content of the Bettor-1 Declaration relating to his participation in the scheme is false; and that Bettor-1 knowingly signed a false declaration and made false statements to the Clase Attorneys to conceal his and Clase's criminal conduct. Though the government's visibility into Bettor-1's meeting with the Clase Attorneys is limited, the government does not expect Bettor-1 to deny making false exculpatory statements to the Clase Attorneys, even if those statements are not reflected in the Bettor-1 Declaration. Nor does the government expect Bettor-1 to dispute that he made false statements to the Clase Attorneys knowingly and voluntarily.

On August 14, 2025, the Clase Attorneys interviewed Vasquez. According to the Attorney-1 Declaration, Vasquez told the Clase Attorneys, in sum and substance, that he did not participate in or know about a criminal scheme to wager on fixed pitches thrown by Clase. The Attorney-1 Declaration further provides that the Clase Attorneys prepared a declaration with Vasquez's input, that Vasquez orally told the attorneys that the draft declaration was true and accurate, but that Vasquez ultimately declined to sign the draft declaration. Among other things,

the draft declaration affirmed that Vasquez had never wagered on Clase's pitches at all (either legitimately or using inside information). The draft declaration also provides in substance that Vasquez had never heard another person tell him that they had received advance information from Clase about his pitches. Both of those statements attributed to Vasquez in the draft declaration were false. As described in the superseding indictment, Vasquez placed bets on Clase's pitches, including fixed pitches, using an account he opened in the name of Individual-2.

On January 9, 2026, during a voluntary interview at the United States Attorney's Office for the Eastern District of New York ("USAO-EDNY"), Vasquez told investigators in the presence of his attorney that he did not sign the draft declaration prepared by the Clase Attorneys because he felt that he would be lying if he did so. Vasquez also acknowledged that he was aware of one instance in which another individual told him that Clase had provided advance information about a pitch. But apart from that one instance (which was described in a criminal complaint that led to his arrest weeks earlier), Vasquez denied having any other information about fixed pitches thrown by Clase, even though he exchanged messages with Clase and others about betting on fixed pitches. The government anticipates proving at trial that Vasquez's statement to the government that he was only aware of a single instance in which Clase provided advance information about a pitch was false.

III. Defendant Ortiz's Lawyers' Representations to the Government

On September 12, 2025, before the Grand Jury returned the indictment, three lawyers on Ortiz's current defense team (collectively, the "Ortiz Attorneys"), together with an investigator, met with the government at the USAO-EDNY to persuade prosecutors to decline to bring charges against Ortiz. The Ortiz Attorneys represented that based on their discussions with their client, Ortiz did not share advance information about Subject Pitch-1 or Subject Pitch-2 with Clase or anyone else because (1) Ortiz received gameday scouting reports on the days of the June

15 Game and the June 27 Game, which were "reviewed with coaches and catchers only;" (2) Ortiz had "[n]o communication with Clase during [either] game"; and (3) Ortiz had "[n]o communication outside of [the] dugout [during either game]."[5]  In fact, the Ortiz Attorneys specifically told the government that, per strict MLB policy, Ortiz could not communicate with other pitchers during games, including relief pitchers like Clase, so Ortiz could not have communicated with Clase about the fixed pitches Ortiz is accused of throwing.  These representations stand in stark contrast with the defense theory that Ortiz now proffers as a basis for severance: that Clase misappropriated advance pitch information that Ortiz relayed to him and then shared the information with Bettors without Ortiz's knowledge.[6]

---

[5]    The quoted items above come from a PowerPoint presentation that the Ortiz Attorneys used during the meeting and later shared with the government.

[6]    The defendant's new defense theory raises distinct concerns beyond the scope of this motion.  First, if the defendant advances this new theory at trial, the government may seek to admit portions of the PowerPoint presentation provided by his defense team that are inconsistent with his trial defense.  That, in turn, raises Curcio issues.  Second, that Ortiz changed his defense theory pre- and post-indictment—after his lawyers met with the government trying to persuade it not to bring charges—raises concerns about the defendant's efforts to impede a Grand Jury investigation.  See, e.g., Superseding Indictment ¶ 116, United States v. Menendez, 23-CR-490 (S.D.N.Y.), ECF No. 238 (charging client with obstruction of justice based on misrepresentations made by defense attorneys to United States Attorney's Office during defense attorney presentation); id. ECF No. 473 (order admitting attorney presentation as evidence of client obstruction because the information in the presentation "in all probability had to have been confirmed" by the client).

Setting aside the implications of this shifting defense, as a factual matter, it is unclear what information Clase could have misappropriated when the Bettors placed at least some of the wagers about the first pitches thrown in the second and third innings *before the games*, with no foreknowledge of who the batters would be or the in-game situation (e.g., the score at the start of the inning).  Moreover, Ortiz claims that Clase "had access to scouting reports and other information from which he could have reasonably predicted how Mr. Ortiz would throw," Mot. at 12, but to the extent such materials are in Ortiz's possession, he has failed to produce any to the government pursuant to his reciprocal discovery obligations.  See Fed R. Crim. P. 16(b).

IV.     Procedural History

        The Grand Jury returned the indictment against the defendants on November 5, 2025.  After the defendants were arraigned, an initial status conference was held on December 2, 2025, at which time the Court set the case down for jury selection on May 4, 2026.

        On January 15, 2026, the Court held a status conference and a Curcio hearing regarding the potential of the Clase Attorneys to be unsworn witnesses in relation to Bettor-1 and the Bettor-1 Declaration.  During the hearing, counsel for defendant Clase indicated that, as the government noted previously, they too understood that Bettor-1 would "admit that those statements were made."  See Curcio Hr'g Tr. 16:11–12.  They assessed the risk that a potential conflict would ripen at trial was limited but nonetheless acknowledged that they would have to "be very careful" and would "not ask any questions that would make the trial attorneys unsworn witnesses in the case."  See id. 16:8, 16:12–14.  Clase knowingly and voluntarily waived any potential conflict regarding his current representation.  See id. 20–22.

        After the Curcio colloquy was completed, the parties discussed scheduling for purposes of pretrial motions and trial.  Clase sought to keep the May 4 trial date, but Ortiz sought additional time to prepare for trial.  See id. at 51.  Counsel for Ortiz represented to the Court that Ortiz might seek to call the Clase Attorneys as witnesses at trial and move to sever on that ground.  See id. at 51-52.  The Court delayed pretrial motions and motions in limine, but kept the May 4 trial date intact.  See id. at 52:23–25.

        Ortiz filed his motion for severance on February 5, 2026.  In the motion for severance, Ortiz set forth his new defense theory: contrary to his counsel's pre-indictment representation to the government that Ortiz had not shared information with Clase or anyone else— and that it was not possible for him to do so—Ortiz now claimed that he might instead argue at

trial that he was duped by Clase and was an unwitting victim of Clase's criminal conspiracy. See note 6, supra.

On February 12, 2026, the Grand Jury returned the superseding indictment. On February 13, 2026, defendant Ortiz moved to continue the trial. See ECF No. 79.

THE MOTION FOR SEVERANCE SHOULD BE DENIED

A joint trial is constitutionally permissible and appropriate in this case. Ortiz moves for severance under Federal Rule of Criminal Procedure 14(a) on the basis that his plan to call the Clase Attorneys as impeachment witnesses will cause a mistrial; that he intends to advance a "mutually antagonistic defense" with Clase (who has not moved to sever or joined Ortiz's motion); and that he will supposedly endure prejudicial spillover if forced to try his case together with defendant Clase. His arguments are meritless and should be rejected.

I.    Applicable Legal Standards for Severance

A properly joined defendant seeking severance under Federal Rule of Criminal Procedure 14 has the "extremely difficult burden of proving not merely that he would be prejudiced by a joint trial, but that the prejudice would be so great as to deprive him of his right to a fair trial." United States v. Bellomo, 954 F. Supp. 630, 649 (S.D.N.Y. 1997) (quoting United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989)) (internal quotation marks omitted); see also United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) ("We have held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried.").

The Supreme Court has consistently reaffirmed a "preference in the federal system for joint trials of defendants who are indicted together" because such trials promote efficiency and prevent the injustice of inconsistent verdicts. Zafiro v. United States, 506 U.S. 534, 537 (1993); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 131 (2d Cir. 2008); United States v. Cardascia, 951 F.2d 474, 482-83 (2d Cir. 1991); see also Ventura, 724 F.2d at 312

9

(where "defendants . . . are jointly indicted [they] should be jointly tried").  That preference is particularly strong where, as here, "defendants are charged with participating in the same criminal conspiracy."  United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003).

Given the preference in the federal system for joint trials of defendants who are indicted together, severance should be granted only if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 537–39; see also United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011) ("[T]he defendant [must] demonstrate[] that the failure to sever [would] cause[] him substantial prejudice in the form of a miscarriage of justice.")); Cardascia, 951 F.2d at 482 ("The defendant must establish prejudice so great as to deny him a fair trial").

Even if such a showing is made, it must be balanced against other interests: the defendant must show that "the prejudice . . . from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Lanza, 790 F.2d 1015, 1019 (2d Cir. 1986) (internal quotation marks omitted).  Such a showing is difficult because the "risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits." United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).   In those rare instances when a defendant establishes a high risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539.  In other words, a defendant must do far more than simply show some possibility of prejudice.  Rather, a defendant must show "prejudice so substantial as to amount to a miscarriage of justice." United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988) (internal quotation marks omitted).

The decision whether to grant a motion for severance is committed to the sound discretion of the trial judge and will not be disturbed on appeal absent a showing that a defendant was substantially prejudiced by a joint trial. United States v. Cacace, 796 F.3d 176, 192 (2d Cir. 2015); see also United States v. Feyrer, 333 F.3d 110, 114-15 (2d Cir. 2003) ("We rarely overturn the denial of a motion to sever.").

## II.     Severance Is Unwarranted in This Case

Ortiz argues that he is entitled to severance under Rule 14 because he will seek to call the Clase Attorneys as impeachment witnesses; he will likely blame Clase at trial; he will be prejudiced by adverse evidence admitted against Clase that he claims would not be admissible against him; and Clase wants a trial on May 4, 2026, while Ortiz has requested trial on a later date. None of these arguments is availing.

### A.     The Potential Conflict Is Not a Basis for Severance Because Testimony by the Clase Attorneys is Inadmissible Extrinsic Evidence

Defendant Ortiz claims that at trial, he will seek to call the Clase Attorneys as "critical impeachment witnesses" to "complete the impeachment" of Bettor-1,[7] thus creating an attorney-as-witness conflict that requires severance to avoid a mistrial. See Mot. at 4, 9, 7–10.[8]

---

[7]     While the Clase Attorneys also interviewed Ortiz's co-defendants—namely, Vasquez and Defendant-4—for obvious reasons, the government does not presently anticipate calling them as witnesses at trial. Thus, although Ortiz refers generally to impeaching multiple witnesses via the Clase Attorneys, the government's opposition is restricted to the potential government witness, Bettor-1.

[8]     The new defense theory powering the rest of the motion to sever—that Clase and Bettor-1 stole advance inside information from an unwitting Ortiz—seems fundamentally inconsistent with Ortiz's proposed impeachment of Bettor-1 in this potential conflict argument. Based on this new theory, it is unclear to the government whether Ortiz intends to argue at trial that (a) Bettor-1 was telling the truth in the Bettor-1 Declaration and to the Clase Attorneys and any subsequent statements inculpating Clase and Ortiz were lies; or (b) Bettor-1 was lying in the Bettor-1 Declaration and to the Clase Attorneys—except about Ortiz's lack of involvement—and Clase and Bettor-1 conspired to misappropriate advance inside information from Ortiz and share it with the Bettors. Obviously, if the defense theory is the latter (as it appears to now be), then

Ortiz has not cited a single case in which a court has severed a trial on these grounds. At bottom, because the government anticipates that Bettor-1 will admit that he made the statements in the Bettor-1 Declaration in the circumstances described in the Attorney-1 Declaration, there will be no "prior inconsistent statements" for Ortiz to elicit from the Clase Attorneys and thus no basis for them to testify at trial to complete the impeachment of Bettor-1 (either at a joint trial or at an Ortiz-only trial). If the Court believes there is an aspect of the potential conflict that was not previously addressed, the remedy is another <u>Curcio</u> hearing, not severance.

"[T]he general rule is that 'extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.'" <u>United States v. Forney</u>, No. 24-CR-146 (KAM), 2025 WL 3677273, at *12 (E.D.N.Y. Dec. 18, 2025) (citing Fed. R. Evid. 608). "The exception under Federal Rules of Evidence 613(b) allows 'extrinsic evidence of a witness's prior statement' to be 'offered to impeach that witness's credibility only if, <u>inter alia</u>, the statement is inconsistent with [the witness's] trial testimony." <u>Id.</u> (quoting <u>United States v. Arena</u>, 180 F.3d 380, 400 (2d Cir. 1999), <u>abrogated on other grounds by</u> <u>Scheidler v. Nat'l Org. for Women, Inc.</u>, 537 U.S. 393 (2003), and citing <u>United States v. Hale</u>, 422 U.S. 171, 176 (1975) (Although "prior inconsistent statements may be used to impeach the credibility of a witness . . . the court must be persuaded that the statements are indeed inconsistent.")).

---

defense counsel would almost certainly not seek to impeach Bettor-1 using prior statements denying the existence of a conspiracy, because the theory relies on Bettor-1's telling the truth concerning his participating in the conspiracy with Clase (albeit without Ortiz). In deciding the severance motion, the Court should require Ortiz to clarify the defense theory that would in fact result in the potential consequences he claims justify severance. Absent clarification, and should the Court grant Ortiz's motion, it is possible that the Court will have ordered severance only to see the defendant abandon the very line of argument that he claimed justified a separate trial in the first place.

Here, as noted previously, the government anticipates that, at trial, Bettor-1 would admit that he "denied participation in or knowledge of the alleged gambling conspiracy" when he met with the Clase Attorneys, Mot. at 8, and would admit that he made the statements in the Bettor-1 Declaration voluntarily, as described in the Attorney-1 Declaration. Thus, to the extent that Ortiz claims that Bettor-1's prior statements are crucial evidence because they are "highly exculpatory for Mr. Ortiz," Mot. at 5, those statements will be in front of the jury and elicited on direct examination.

While Ortiz's counsel will be able to cross-examine Bettor-1 about those prior statements,[9] Bettor-1 cannot be impeached through the extrinsic evidence of the testimony of the Clase Attorneys at trial because counsel has pointed to no statements "inconsistent" with Bettor-1's anticipated trial testimony. See, e.g., United States v. Howard, 639 F. App'x 686, 688 (2d Cir. 2016) (rejecting argument that defendant ought to have been allowed to call a police officer to highlight a recantation by a cooperator where the cooperator admitted to lying on direct examination and noting that the defendant "provides no legal support that he was entitled to have this evidence introduced by one means rather than another"). Indeed, Ortiz seems to concede as much, noting that the conflict will only arise if "[1] the witnesses deny prior sworn statements inconsistent with their testimony at trial, or [2] if they mischaracterize the circumstances of the

---

[9]      In the event of such cross-examination, the Court may, however, limit the manner of the questioning to prevent the jury from learning that the Clase Attorneys are current counsel for defendant Clase. This Court and others have undertaken the same process regularly in the Bruton context; it does not require severance. See, e.g., United States v. Barret, 824 F. Supp. 2d 419, 437 (E.D.N.Y. 2011) ("Instead of severing a trial due to issues arising under Bruton, however, the court may redact the co-defendant's statement, substituting neutral pronouns or the phrase "another person" in place of the allegedly implicated defendant's name.").

13

declarations." Mot. at 9.[10]  The government does not anticipate that either eventuality will come

to pass.[11]  At the end of the day, because there is no reason to believe Ortiz would be permitted to

call the Clase Attorneys for impeachment purposes regardless of whether he were tried alone or

jointly with Clase and Vasquez, his desire to call them as witnesses is not a basis to sever his case

from them.  Cf. Zafiro, 506 U.S. at 539 (noting that severance may be appropriate when evidence

"would be available to a defendant tried alone" but "unavailable in a joint trial").

        Finally, to the extent that the potential conflict needs further examination, that

should be resolved through another Curcio hearing, not severance.  As Ortiz himself notes, "[w]hen

faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the

---

[10]    Apart from the Bettor-1 Declaration, Ortiz's counsel implies that Bettor-1 may have
made additional statements to the Clase Attorneys that may be "inconsistent" with Bettor-1's trial
testimony.  See Mot. at 5–6.  But as the government noted during the Curcio hearing, it is not clear
that any such statements exist.  The Court should not sever Ortiz based purely on his
unsubstantiated speculation that both (1) there will be additional inconsistencies between Bettor-
1's statements to the Clase Attorneys and his trial testimony and (2) that Bettor-1 will deny making
his alleged prior statements.  That is particularly the case when the Court and the parties can easily
ascertain in advance of trial whether there is any merit to Ortiz's contention.  To determine whether
there is a potential conflict that needs to be addressed, defense counsel can proffer to the
government and the Court what statements were elicited from Bettor-1 during the pre-indictment
interview conducted by the Clase Attorneys; the government can then advise the Court whether
Bettor-1 will deny those statements or, as with the Bettor-1 Declaration, affirm that he made them.
Cf. Fed. R. Evid. 613(a) ("When examining a witness about the witness's prior statement . . . the
party must, on request, show it or disclose its contents to an adverse party's attorney.");
see also Fed. R. Evid. 104(a) ("The court must decide any preliminary question whether . . .
evidence is admissible.").  The Court is well within its discretion to address this issue in advance
of trial.  Rule 104 requires district courts to decide issues of admissibility and allows courts to
"conduct any hearing on a preliminary question so that the jury cannot hear it if ... justice so
requires." Fed. R. Evid. 104(c).  That is particularly the case here, when resolution of this issue
implicates a potential conflict with Clase's counsel.

[11]    For the same reason, this case is nothing like United States v. Peng, 766 F.2d 82
(2d Cir. 1985)—the only case cited in the defendant's substantive argument—because there, the
witness and the questioning attorney had a fundamental disagreement about a prior interaction
between them.

attorney, not to exclude the testimony."  Mot. at 9-10 (citing United States v. Klitti, 156 F.3d 150, 156 (2d Cir. 1998)).  Indeed, while courts have taken different approaches, here, where the Clase Attorneys are potential witnesses both with respect to the Bettor-1 Declaration as well as the false exculpatory statements attributed to Vasquez in his unsigned declaration—which the government may well seek to introduce at trial—the proper approach may be disqualification.  See, e.g., United States v. Cannistraro, 794 F. Supp. 1313, 1314 (D.N.J. 1992) (disqualifying attorney who was a potential witness in a multi-defendant conspiracy, rather than accepting client's waiver and severance).[12]

B.    Ortiz's New Defense is Not Mutually Antagonistic with Clase's

Ortiz claims that severance is required because he plans to point the finger at his co-defendant and tell the jury, "it was him, not me."  He may argue at trial that he is a victim of Clase, Bettor-1, and other members of the charged conspiracy who, he claims, took strategic inside information from him and used it without his knowledge.  See Mot. at 1, 10, 12-13.  This defense is fundamentally at odds with the defense previously presented by his attorneys to the government.  And given that many of the Bettors' wagers on Ortiz's pitches were placed without knowing the specific batters or in-game situation Ortiz would be facing, the defense is facially implausible.  In short, it is no basis for severance.

The Second Circuit has recognized that in unusual circumstances, joined defendants may present defenses that are so mutually inconsistent that they infringe the other defendant's right to a fair trial.  See United States v. Harwood, 998 F.2d 91, 95–96 (2d Cir. 1993).

---

[12]    The government believes that an additional Curcio hearing is required to address the conflict of interest posed by the preparation of a draft declaration by the Clase Attorneys that, according to Clase Attorney-1, reflects pre-indictment statements made by Vasquez.  The government is presently assessing the extent of the conflict implicated by Vasquez's statements to determine whether disqualification is warranted.

Such a situation arises where one defendant's asserted defense necessarily inculpates the other defendant because it requires the jury to conclude that the other defendant committed the charged crime. See United States v. Copeland, 336 F. Supp. 2d 223, 224–25 (E.D.N.Y. 2004); see also Zafiro, 506 U.S. at 542, 113 S. Ct. 933 (Stevens, J., concurring) (describing "mutually antagonistic" defenses as those as to which "acceptance of one ... necessarily preclude[s] acceptance of the other and acquittal of the codefendant"). "It is not the mere existence of antagonistic defenses that prompts a required severance. Instead, the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive before [the court] will find such prejudice as denies defendants a fair trial." Cardascia, 951 F.2d at 484 (citing United States v. Villegas, 899 F.2d 1324, 1346 (2d Cir. 1990) and United States v. Carpentier, 689 F.2d 21, 28 (2d Cir. 1982)).

        Finger-pointing—whether it goes in one direction or both—is not a basis for severance. See Zafiro, 506 U.S. at 540-41 (rejecting petitioners' theory that "when two defendants both claim they are innocent and each accuses the other of the crime," the jury will assume at least one is guilty); Cardascia, 951 F.2d at 484-85 ("[A]n adversarial stance by a co[-]defendant clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses."); United States v. Hameedi, No. 17-CR-137 (JGK), 2017 WL 5152991, at *4 (S.D.N.Y. Nov. 3, 2017) (observing that the Second Circuit has repeatedly rejected "finger[-]pointing" arguments, whereby each defendant blames the other for his culpability, "as a basis for severance."). Instead, severance based on a "mutually antagonistic defense" requires "a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal of [the]

16

other." United States v. Salameh, 152 F.3d 88, 116 (2d Cir. 1998) (internal quotation marks omitted).

Ortiz has not made that showing here. As an initial matter, there has been no "factual demonstration" whatsoever. Ortiz's argument is consistently couched in noncommittal and vague language about the defense he "may" assert at trial, not facts.[13] By contrast, in the cases relied on by the defendant, the defendants seeking severance proffered the factual basis for the antagonistic defenses. In United States v. Copeland, for instance, the defendant proffered that a neutral third party—a percipient witness—would testify at trial in a manner that would be exculpatory for the defendant and inculpatory for a co-defendant. 336 F. Supp. 2d at 225. Similarly, in United States v. Shkreli, defense counsel submitted a sworn declaration detailing the factual predicate for the defense's trial theory that caused the Court to sever the case. See Declaration of Reed Brodsky, United States v. Shkreli, Crim. No. 15-637 (KAM) (E.D.N.Y.

---

[13]    See, e.g., Mot. at 10 ("Mr. Ortiz may argue that to the extent Mr. Clase told any of the Bettors that Mr. Ortiz could be expected to throw certain pitches or had joined the conspiracy, he did so falsely and without Mr. Ortiz's knowledge or consent."), id. at 12 ("Mr. Ortiz may argue that Mr. Clase (falsely) described Mr. Ortiz to the Bettors as a willing and knowing participant in the conspiracy, without actually involving Mr. Ortiz or making him aware of the conspiracy."), id. at 12 ("Mr. Clase may have abused his relationship with Mr. Ortiz as friends and teammates by convincing Mr. Ortiz to throw certain pitches at certain times—ostensibly for baseball reasons as far as Mr. Ortiz was aware. Mr. Clase may have then relayed this advance information to the Bettors in furtherance of their conspiracy, without ever informing or involving Mr. Ortiz.") (emphases added).

Feb. 17, 2017), ECF No. 159.[14]  Notably, Clase, who would arguably be the one prejudiced by Ortiz's new defense theory, has not moved to sever his case from Ortiz's.[15]

Ortiz's one-sided finger-pointing falls far short of the mutual antagonism needed to justify the extraordinary remedy of severance.  See Zafiro, 506 U.S. at 539 (severance not required even though both defendants contended at trial that each had been the innocent dupe of the other); United States v. Diaz, 176 F.3d 52, 103-04 (2d. Cir. 1999) (severance not required even though both defendants claimed they knew nothing of drugs hidden in van and each accused the other of placing them there).  Critically, Ortiz is incorrect that a determination that Ortiz did not participate in the conspiracy mandates a finding that Clase did.  See Mot. at 12.  For example, if the jury accepted Clase's anticipated defense that Clase did not share inside information about fixed pitches with the Bettors, both defendants would be acquitted.  And significantly, even a jury's acceptance of Ortiz's defense would not require a guilty verdict against Clase.  For example, if Ortiz argued that Clase had access to information about what pitches Ortiz would throw and shared such information with the Bettors, see Mot. at 12, a jury is not simultaneously required to find that Clase

---

[14]     As the Court is well-aware, even in Shkreli, where the tension between the two defenses was far sharper than here, the Court concluded that the defenses were not mutually antagonistic, but granted severance based on a risk that Shkreli would not receive a constitutionally fair trial.  260 F. Supp. 3d at 256.

[15]     While Clase has not moved to sever his trial from Ortiz, he has indicated that he will move to sever his case from that of co-defendant Vasquez pursuant to United States v. Bruton, 391 U.S. 123 (1968), "given the allegation in the superseding indictment that Mr. Vasquez informed the FBI he was 'aware of one instance of [Mr. Clase] telling someone what pitch he was going to throw ahead of time.'" ECF No. 84 at 3.  The government will address that argument should the motion be filed, but in general, Bruton does not necessitate severance.  See Samia v. United States, 143 S. Ct. 2004 (2023) (Confrontation Clause not violated by admission of nontestifying codefendant's confession, where confession was altered to not name the defendant, coupled with a limiting instruction); United States v. Rivera, 89 F. Supp. 3d 376, 399 (E.D.N.Y. 2015) (rejecting Bruton argument for severance), aff'd sub nom. United States v. Garrett, No. 17-59, 2022 WL 2979588 (2d Cir. July 28, 2022).

shared such information with the Bettors *for the purpose of placing fraudulent wagers*, i.e., in furtherance of a conspiracy to defraud.  Moreover, if Clase shared the information without Ortiz's knowledge and without paying Ortiz a kickback, a jury could conclude that Clase was not involved in a conspiracy to influence sporting contests by bribery, because the pitcher (Ortiz) was not bribed.  In short, Ortiz's proffered defenses do not constitute "mutual" antagonism.  See United States v. Haynes, 16 F.3d 29, 31-32 (2d Cir. 1994) (severance not required even though defendant was implicated by his co-defendant's testimony).

Finally, even assuming defendant Ortiz could show any sort of prejudice from a joint trial (and he cannot), he has not demonstrated a "serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence."  United States v. Schlegel, 687 Fed. App'x 27, 28 (2d Cir. 2017) (quoting Zafiro, 506 U.S. at 539); see also Zafiro, 506 U.S. at 538-39 (holding that "mutually antagonistic defenses are not prejudicial per se," and that severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown").  Ortiz's descriptions of the supposedly inconsistent defenses fail to establish the level of prejudice needed to warrant severance.

C.     Ortiz's Claim of "Spillover" Prejudice Does Not Warrant Severance

Ortiz claims he is entitled to severance because he will be subject to "spillover prejudice" because, while Clase was involved in the scheme for two years, Ortiz was only a co-conspirator for a month.  See Mot. at 14–16.  There is no "spillover prejudice" here that would require severance.  At the outset, a defendant seeking severance based on "spillover prejudice" "bears an extremely heavy burden" and needs "to show prejudice so substantial as to amount to a miscarriage of justice."  United States v. Reichberg, 5 F.4th 233, 243 (2d Cir. 2021) (internal citation and quotation marks omitted).  In fact, the Second Circuit has repeatedly permitted joint

trials even when they involve "defendants who are only marginally involved alongside those heavily involved." Spinelli, 352 F.3d at 55 (quoting United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993)).

Even though Ortiz points to Clase as facing more evidence, primarily through the evidence of additional "fixed" pitches, he fails to acknowledge that both defendants are alleged to have joined the same conspiracy and are charged in precisely the same counts. Indeed, Clase facilitated the payment of Ortiz's bribe for throwing a fixed pitch during the June 15 Game.

Whether Ortiz is tried alone or together with Clase, evidence of conduct in furtherance of the conspiracy is admissible against each of the defendants. See United States v. Sterritt, 678 F. Supp. 3d 317, 334 (E.D.N.Y. 2023) ("[e]vidence adduced against one alleged co-conspirator is 'neither spillover nor prejudicial' if it would be admissible at a separate trial against the movant as an act of a co-conspirator in furtherance of a conspiracy due to the nature of conspiratorial illegal activity.") (quoting United States v. Barret, 824 F. Supp.2d 419, 433 (E.D.N.Y. 2011)); United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993) ("A defendant's right to a fair trial does not include the right to exclude relevant and competent evidence. Thus, the fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately."). Ortiz's contention that certain evidence would be inadmissible against him if tried individually is thus incorrect as a matter of law here, where he and Clase are charged in the same conspiracy.[16] And it is factually incorrect

---

[16]    In an attempt to carve a line between evidence that would be admissible against him and evidence admissible against Clase, Ortiz mischaracterizes the Bettors' wagers on Clase's pitches as 404(b) evidence (see Mot. at 15), rather than as acts by Ortiz and Clase's co-conspirators in furtherance of the conspiracy. Further, if the new defense theory is that this conspiracy existed but that Ortiz was an unwitting and indirect participant, it is unclear how the evidence of the conspiracy prejudices Ortiz.

to suggest that at a trial against him with Clase absent, the government would not introduce evidence predating Ortiz's entrance to the conspiracy. Indeed, the government must prove the existence of the conspiracy that Ortiz joined in order to prove the allegations against him.

Likewise, to the extent that Ortiz argues that the evidence is stronger or more voluminous against his co-defendant, that too is no reason to sever. As the Second Circuit observed in <u>Cardascia</u>, a "disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance." 951 F.2d at 484. In any event, here, judicial efficiency and fairness strongly favor a joint trial, which would prevent the repeated presentation of the same evidence. The government presently estimates calling roughly 15-20 witnesses, including, but not limited to: Bettors, straw account-holders, representatives of victim betting platforms, MLB representatives, and experts. The vast majority, if not all, of these witnesses would likewise be called at a trial against Ortiz alone. As the Supreme Court has stated:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

<u>Richardson</u>, 481 U.S. at 210; <u>see also</u> <u>Bruton</u>, 391 U.S. at 134 (joint trials conserve state funds, diminish inconvenience to witnesses and avoid delays); <u>United States v. Lyles</u>, 593 F.2d 182, 191 (2d Cir. 1979) (joint trials conserve resources, lessen the burden on jurors and avoid repetitive testimony).

The defendant's motion falls well short of the high bar set for severance.  It should be denied.

D.     Speedy Trial Does Not Warrant Severance

Without any authority, Ortiz also claims that the Court should sever his case on Speedy Trial grounds.  But as this Court has explained, "speedy trial concerns generally will not suffice as a standalone basis for severance."  United States v. Curanovic, No. 17-CR-404 (KAM), 2017 WL 4402452, at *2 (E.D.N.Y. Oct. 2, 2017).  The same is true here.

"The Speedy Trial Act ('the Act') provides that a criminal defendant must be tried within seventy days of the filing of the information or indictment, or of his initial appearance in the district where the charges are pending, whichever occurs later."  Id. (citing 18 U.S.C. § 3161(c)(1); United States v. Holley, 813 F.3d 117, 120 (2d Cir. 2016)).  "The Act sets forth certain periods of delay that 'shall be excluded' from the seventy-day speedy trial clock, including, in cases involving multiple defendants, a 'reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.'"  Id. (quoting 18 U.S.C. § 3161(h)(6)).  "The only inquiry made in such multiple defendant cases is whether the delay is reasonable."  United States v. Taylor, 720 F. Supp. 3d 131, 137 (D. Conn. 2024) (citation omitted) (denying severance on Speedy Trial grounds where delay was reasonable).

"In applying § 3161(h)(6), courts in this circuit have repeatedly held that in the absence of severance, any excludable delay as to one defendant applies to all co-defendants, such that the case is governed by a unitary speedy trial clock."  Id. (citations omitted).  Moreover, "[a] speedy trial delay attributable to co-defendants under § 3161(h)(6) is considered in light of the congressional intent 'to make sure that [the Act] does not alter the present rules on severance of

codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under Section 3161.'" Id. (citations omitted).

       Here, Ortiz and Clase were arraigned in November, both defendants have excluded time under the Speedy Trial Act through March 6, 2026, and Vasquez is scheduled to be arraigned on February 18, 2026.  See United States v. Schlegel, No. 06-CR-550, 2009 WL 706173, at *5 (E.D.N.Y. Mar. 16, 2009) (denying severance on Speedy Trial grounds and noting that an adjournment of the trial date was granted to allow a newly added defendant with the opportunity to prepare for trial).  The Court should not grant severance simply because the defendants have a disagreement over the appropriate trial date in a case that is hardly three months old.[17]  Such a decision would have precisely the opposite effect than the Act intended in authorizing one defendant to make an application for an excludable delay that would apply to all co-defendants.

---

[17]     The government cannot help but point out the contradiction between two of Ortiz's bases for severance—that Ortiz will be prejudiced by a joint trial because more evidence will implicate Clase, but Ortiz needs more time to prepare for trial by May 4, a date on which Clase has indicated he wishes to proceed.

CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendant's motion for severance is without merit and should be denied.

Dated:      Brooklyn, New York
            February 17, 2026

                                        Respectfully submitted,

                                        JOSEPH NOCELLA, JR.
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


                          By:     /s/_____
                                  Eric Silverberg
                                  Sean M. Sherman
                                  Sarah M. Evans
                                  Assistant United States Attorneys
                                  (718) 254-7000