UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

UNITED STATES OF AMERICA,                    Case No. 1:25-cr-00346-KAM

       Plaintiff,

  v.

LUIS LEANDRO ORTIZ RIBERA,

       Defendant.

-------------------------------------------------------- X

## DEFENDANT LUIS ORTIZ'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SEVERANCE

# **TABLE OF AUTHORITIES**

**Cases**

*Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, (2d Cir. 1989) ................................................... 4

*Lugosch v. Congel*, 219 F.R.D. 220 (N.D.N.Y. 2003) ..................................................................... 4

*United States v. Bellomo*, 954 F. Supp. 630 (S.D.N.Y. 1997) ........................................................ 1

*United States v. Curanovic*, No. 17-CR-404 (KAM), 2017 WL 4402452
   (E.D.N.Y. Oct. 2, 2017) ............................................................................................................. 8

*United States v. Griffith*, 284 F.3d 338 (2d Cir. 2002) .................................................................... 7

*United States v. Hicks*, 5 F.4th 270 (2d Cir. 2021) .......................................................................... 4

*United States v. Howard*, 639 F. App'x 686 (2d Cir. 2016) ............................................................ 3

*United States v. Nobles*, 422 U.S. 225 (1975) ................................................................................. 4

*United States v. Reichberg*, 5 F.4th 233 (2d Cir. 2021) .................................................................. 7

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) .................................................................... 6

*United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017) ................................................. 1, 7

*United States v. Strother*, 49 F.3d 869 (2d Cir. 1995) .................................................................... 3

*United States v. Volpe*, 42 F. Supp. 2d 204 (E.D.N.Y. 1999) ......................................................... 7

**Rules**

Federal Rule of Criminal Procedure 16 ............................................................................................ 5

Federal Rule of Evidence 613 ........................................................................................................... 3

## I.     INTRODUCTION

Mr. Ortiz has more than met the requirement to show he will face severe unfair prejudice in a joint trial with Mr. Clase. The Government's response fails to argue otherwise. Instead, the Government steers this Court towards almost certain reversible error with red herrings and serious misstatements of fact and law. Setting aside these improper arguments, the Government simply cannot rebut Mr. Ortiz's argument that, absent a severance, a joint trial will inevitably result in either a mistrial or severe unfair prejudice to Mr. Ortiz because Mr. Ortiz will need to call Mr. Clase's attorneys as exculpatory witnesses. A severance is further warranted because without one, Mr. Ortiz would face severe unfair prejudice when he ███████████████ while Mr. Clase vigorously asserts his innocence and due to the amount of spillover evidence solely relating to Mr. Clase's alleged guilt. This Court has said, "[i]n circumstances like these where judicial economy is butting up against a defendant's right to a fair trial, judicial economy must give way to fairness." *United States v. Shkreli*, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017). But here, because a joint trial will inevitably result in a mistrial, *both* judicial economy *and* Mr. Ortiz's right to a fair trial are aligned in supporting a severance.

## II.     LAW AND ARGUMENT

Mr. Ortiz will suffer substantial prejudice in a joint trial from the combination of his need to call Mr. Clase's attorneys as witnesses, his inability to avoid mutually antagonistic defenses, and prejudice due to excessive spillover evidence. This substantial prejudice "would be so great as to deprive [Mr. Ortiz] of his right to a fair trial." *United States v. Bellomo*, 954 F. Supp. 630, 649 (S.D.N.Y. 1997). In these unique circumstances, severance is warranted.

### A.   Mr. Ortiz must be allowed to call Mr. Clase's attorneys as witnesses at trial, which would inevitably result in a mistrial absent a severance.

As an initial matter, it is telling how the Government has flip-flopped on material representations on this issue to the Court. The Government's statements in response to Mr. Ortiz's motion to sever directly contradict their prior statements to this Court. In its *Curcio* letter, the Government complained that Clase would run afoul of the lawyer-witness prohibition if Clase tried to "call an attorney for the defense team to perfect impeachment of a [w]itness who denies making a particular statement to defense counsel." ECF No. 66, at 6. And at the *Curcio* hearing before this Court, the Government highlighted that there could be numerous statements that Bettor-1 may recant on, including statements that may not be in the sworn declaration he provided to Clase's attorneys. *See* ECF No. 79-1, *Curcio* Hearing Tr., PageID #: 732 at 18:3–4 ("So I don't know every, the full universe of statements that a witness can be confronted on."). Now, when this issue clearly compels a severance for Mr. Ortiz, the Government suddenly scrambles, and somehow, with a straight face, contends there no possibility Bettor-1 would deny making any particular statement with which defense counsel may confront him, and there is no inconsistency to impeach. The Government's about-face with respect to Bettor-1's statements is an obvious, transparent, self-serving attempt by the Government to avoid severance at all costs.

In any event, even if Bettor-1 admits on cross-examination to each and every prior inconsistent statement he made to Mr. Clase's attorneys, including those not contained in the sworn declaration (as the Government now asserts he will, *see* ECF No. 86, at 12), Mr. Ortiz is still entitled to call Mr. Clase's attorneys as witnesses according to binding Second Circuit law. Denying him this, as the Government recklessly suggests the Court should, will inevitably result in reversible error.

2

In *United States v. Strother*, the Second Circuit reversed a conviction where the district court precluded the defense from introducing extrinsic evidence of a prior inconsistent statement after the defense was permitted to cross-examine a witness about a prior inconsistent statement and the witness acknowledged the inconsistency. 49 F.3d 869 (2d Cir. 1995). As the Second Circuit explained, the statement was nonetheless admissible because "[e]xtrinsic evidence of a prior inconsistent statement is more persuasive to a jury than a witness's acknowledgement of inconsistencies in a prior statement."[1] *Id.* at 876.

All that Rule 613(b) requires before the introduction of extrinsic evidence of a prior inconsistent statement is the opportunity for the witness to explain the statement and the opposing party to examine the witness about it. *See Strother*, 49 F.3d at 874 (*citing* Fed. R. Evid. 613(b)). Thus, even if Bettor-1 admits to making prior inconsistent statements, extrinsic evidence of prior inconsistent statements must be allowed under *Strother*—meaning Mr. Ortiz must be allowed to call Mr. Clase's attorneys as witnesses to elicit that highly exculpatory extrinsic evidence. A different outcome would result in this case being reversed on error, like *Strother*.

The Government's suggested remedies for this problem are absurd and baseless as a matter of law. First, the Government suggests the Court should double down on the already obvious error they are suggesting here and require Mr. Ortiz to proffer evidence or specify his defense theory and be forced to commit to a defense theory in advance of trial. The Government offers no support in law for this unprecedented idea of requiring a defendant to lock in his defense theory. Nor could

---

[1] The government's citation to *United States v. Howard*, 639 F. App'x 686 (2d Cir. 2016), misstates the law in the Second Circuit. *Howard* was a summary order with no precedential effect. And while the Government is correct that in *Howard*, the court rejected the defendant's argument that it was error to prohibit him from introducing extrinsic evidence of a prior inconsistent statement under Rule 613, the circuit court did so only after noting both that the defendant failed to cite *any* legal support for its position, let alone the binding precedent in *Strother*, and did not satisfy the prerequisites set forth in Rule 613.

3

they. Requiring Mr. Ortiz to commit to a defense theory today would clearly encroach on Mr. Ortiz's attorney work product privilege, which "exists to protect mental impressions, opinions, and/or *legal theories concerning litigation*." *Lugosch v. Congel*, 219 F.R.D. 220, 239 (N.D.N.Y. 2003) (emphasis added) (citing *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir. 1989)); *see also United States v. Nobles*, 422 U.S. 225, 236–39 (1975) ("Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital."). Second, the Government suggests "another *Curcio* hearing." ECF No. 86 at 14. But Mr. Ortiz would not waive a conflict that exists between Mr. Clase and Mr. Clase's attorneys, rendering another *Curcio* hearing futile. Third, the Government suggests the Court backpedal and disqualify Mr. Clase's attorneys. Disqualification is not appropriate. This Court has already addressed that issue during a comprehensive hearing and properly found that Mr. Clase was entitled to proceed with his counsel of choice according to his Sixth Amendment rights. *See* Minute Entry (entered Jan. 16, 2026); *see also United States v. Hicks*, 5 F.4th 270, 278–79 (2d Cir. 2021) (affirming lower court's decision to sever codefendants' trials as opposed to the "unpalatable alternative that potentially would have violated [a defendant's] Sixth Amendment right to counsel of his choice"). The only remedy for the problem of Mr. Ortiz calling Mr. Clase's attorneys as witnesses is to sever their trial.

      **B.**      **Mr. Ortiz's defense strategy would place him in the role of a 'second prosecutor,' justifying severance.**

The Government's response to Mr. Ortiz's antagonistic defense theory is similarly short-sighted. The Government focuses on irrelevant aspects of Mr. Ortiz's motion to sever, accusing Mr. Ortiz of failing to commit to a specific theory and changing his strategy—a pot calling the kettle black, given the Government's misrepresentations to this Court. In doing so, the Government

4

fails to meaningfully engage with Mr. Ortiz's proposed defense theory, which would result in mutually antagonistic defenses for Mr. Ortiz and Mr. Clase.

Preliminarily, the Government improperly focuses on the "noncommittal" nature of Mr. Ortiz's defense. Of course, Mr. Ortiz cannot commit—and need not commit—to a defense theory, especially where the Government has not finalized its case against him. The Government claimed to this Court and defense counsel in December 2025 that discovery was "substantially complete." *See* Minute Entry (Dec. 2, 2025). It was far from complete, and the Government knew it. Since that time, the Government has produced several **terabytes** of evidence in several different productions. And after Mr. Ortiz filed this motion to sever, the Government produced additional evidence, and obtained a superseding indictment, adding additional allegations against Mr. Clase and charging two other individuals. The Government now repeats the same hollow statements as before, suggesting "Rule 16 discovery is 'substantially complete' as to Mr. Clase [] and Mr. Ortiz []." *See* Minute Entry (Feb. 18, 2026). Due to the Government's inability to produce all discovery it possesses against Mr. Ortiz in the three months since he was indicted and its refusal to produce a single report documenting statements by the Government's witnesses (including ones documenting exculpatory statements by those witnesses), Mr. Ortiz cannot "commit" to a specific defense theory.

Along those same lines, the Government's highlighting of the difference between Mr. Ortiz's declination presentation in November 2025 and his motion to sever in February 2026 is disingenuous. Mr. Ortiz's declination presentation was based on the information available to counsel at that time and attempted to explain why bettors—whom Mr. Ortiz never communicated with—placed bets on his pitches. In fact, the federal agent's notes and 302s from the declination presentation ███████████████

5

███████████████████████. *See* attached **Exhibit A** (SENSITIVE_EDNY_018557–89). Moreover, Mr. Ortiz's declination presentation aligns with the antagonist strategy on key issues that the Government does not contest, such as the fact ████████████████████████ ████████████████████████████████████████████.[2] *See id.* at SENSITIVE_EDNY_018575. Since then, through an indictment, several Government productions of voluminous evidence, and a superseding indictment, Mr. Ortiz's counsel has learned of additional evidence against Mr. Clase[3] relating to a conspiracy that Mr. Ortiz knew nothing about. Accordingly, in the face of new information, Mr. Ortiz has reevaluated why bettors, unknown to Mr. Ortiz, may have bet on his pitches. Rather than acknowledge the obvious, the AUSAs' claim artificial bewilderment and threaten obstruction of justice. The Department of Justice should be better than this.

Setting aside the irrelevance and impropriety of the Government's focus on these topics, the Government's response to Mr. Ortiz's mutually antagonistic defense argument is confused. The Government claims that Mr. Ortiz has not shown "that acceptance of one party's defense would tend to preclude the acquittal of [the] other." ECF No. 86, at 16–17 (quoting *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998)). But a plain reading of Mr. Ortiz's alternative defense theory demonstrates that Mr. Ortiz *has* made that showing. Mr. Ortiz has suggested that ████ ████████████████████████████████████████████████████████████████████

---

[2] To the extent the Government suggests counsel for Mr. Ortiz would become witnesses due to this declination meeting, Assistant United States Attorneys Sean Sherman and Eric Silverberg would *also* be witnesses, necessitating their disqualification. But as the Government plainly knows, Mr. Ortiz had his own non-attorney investigator present during the declination meeting who is available to testify.

[3] For example, at the time of the declination, Mr. Ortiz did not know the extent of Mr. Clase's communications with the bettors.

6

whereas Mr. Clase will assert his absolute innocence. ████████████████████

████████████████████████████████████████████████████████████. Mr. Ortiz would not just be arguing he is not guilty. He would be arguing ████████████

████████████████████████████████████████████████████████████. On its face this theory is mutually antagonistic to any defense theory offered by Mr. Clase. The Government's attempts to otherwise characterize Mr. Ortiz's defense fail.

The Government fails to meaningfully engage with Mr. Ortiz's argument when it summarily argues Mr. Ortiz has not shown prejudice. In *Shkreli*, this Court granted severance due to prejudice to the non-antagonistic defendant. 260 F. Supp. 3d at 257. This is because antagonistic "defenses may violate a specific trial right of a defendant by compromising the opportunity to present an individual defense." *United States v. Volpe*, 42 F. Supp. 2d 204, 210 (E.D.N.Y. 1999). This is what would happen to Mr. Ortiz in a joint trial: his opportunity to present an individual defense would be compromised by joining him with Mr. Clase, ████████████████

████████████████████████████████████████████████████████████

████████. Severance is appropriate to alleviate this prejudice.

**C.   The spillover evidence from a joint trial with Mr. Clase would severely prejudice Mr. Ortiz.**

The Government again misses the larger picture in its response to the issue of spillover evidence unfairly prejudicing Mr. Ortiz. Joining Mr. Ortiz in Mr. Clase's trial would amount to "prejudice so substantial as to amount to a miscarriage of justice," due to that spillover evidence. *United States v. Reichberg*, 5 F.4th 233, 243 (2d Cir. 2021) (quoting *United States v. Griffith*, 284 F.3d 338, 351 (2d Cir. 2002)).

The Government focuses on the fact that both Mr. Ortiz and Mr. Clase "are alleged to have joined the same conspiracy and are charged in precisely the same counts." ECF No. 86, at 20. That

7

is immaterial when the alleged conduct, knowledge, and culpability are vastly different. Unlike Mr. Clase's alleged multi-year orchestration of a conspiracy ▮▮▮▮▮▮▮▮▮▮▮▮,[4] Mr. Ortiz is alleged to have thrown two pitches in one month while never communicating with the bettors.[5] A joint trial would mean Mr. Ortiz sitting at the same table with Mr. Clase while the Government spends two weeks presenting evidence that only relates to Mr. Clase's alleged guilt. No instruction to a jury could cure this prejudice. But severance could. Severance is appropriate to result in a fair trial for Mr. Ortiz, where a jury could appropriately evaluate the evidence and lack thereof against him, and him alone.

### D. Mr. Ortiz's and Mr. Clase's disagreement over a speedy trial is an additional reason to grant severance.

As it has done with the previous three arguments, the Government only sees the speedy trial issue in a vacuum and argues it does not "suffice as a standalone basis for severance." ECF No. 86, at 22 (*quoting United States v. Curanovic*, No. 17-CR-404 (KAM), 2017 WL 4402452, at *2 (E.D.N.Y. Oct. 2, 2017)). If Mr. Ortiz had filed a motion to sever based solely on the fact that Mr. Clase wants to preserve his right to a speedy trial, the Government may be right. But Mr. Ortiz did not do that. Mr. Ortiz raised the issue of Mr. Clase's speedy trial right to give additional context to this Court in deciding this motion to sever. Mr. Ortiz understands that it is Mr. Clase, not Mr. Ortiz, who would be prejudiced by Mr. Ortiz seeking a continuance while Mr. Clase seeks a speedy

---

[4] The Government previously stated that it had identified suspect pitches in ▮▮▮▮▮▮. It now says the pitches it will "feature in its case-in-chief will be fewer." ECF No. 86, at 2 n.3.

[5] Even the Government cryptically acknowledges in its response that Bettor-1 never had a single direction communication with Ortiz about gambling, baseball, or anything for that matter. The Government's entire case is built on a twice removed statement about what Clase allegedly told Bettor-1, when Bettor-1 is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

trial. But this Court should have all information possible when deciding this Motion to Sever, including any additional issues which may arise absent a severance.

### III. CONCLUSION

This Court should sever Mr. Clase's and Mr. Ortiz's trials because of the substantial prejudice to Mr. Ortiz absent a severance, arising from the sum of an inability to call Mr. Clase's attorneys as witnesses without a mistrial, a mutually antagonistic defense, and spillover evidence.

Respectfully submitted,

Luis Leandro Ortiz Riberta, Defendant

Date: February 23, 2026

*/s/ Christos N. Georgalis*
Christos N. Georgalis (OH 0079433 *pro hac vice*)
Paul M. Flannery (OH 0091480 *pro hac vice*)
Flannery | Georgalis, LLC
1621 Euclid Avenue, Floor 20
Cleveland, Ohio 44115
(216) 466-0169 (Chris)
(216) 466-0162 (Paul)
chris@flannerygeorgalis.com
paul@flannerygeorgalis.com

Elizabeth Geddes
Corva Law LLP
110 West 40th Street, Suite 1003
New York, New York 10018
liz@corvalaw.com

*Counsel for Defendant Luis Leandro Ortiz Ribera*