**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL CLASE DE LA CRUZ,<br><br>Defendant. | Case No. 25-CR-346 (S-1) (KAM) |

**DEFENDANT EMMANUEL CLASE DE LA CRUZ'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SEVERANCE**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT .... 1

II. RELEVANT BACKGROUND .... 2

A. Original Indictment, At-Issue Pitches, and *Brady* Disclosure .... 2

B. Superseding Indictment. .... 5

C. Despite Requests from the Court and Mr. Clase to Provide the Government's Proposal for *Bruton*-izing Mr. Vasquez's Statements, the Government Refused .... 6

III. LAW AND ARGUMENT .... 8

A. The Court Should Sever Mr. Ortiz and Mr. Clase .... 8

B. The Court Should Sever Mr. Vasquez and Mr. Clase. .... 10

1. Mr. Vasquez's Alleged Statements Were Testimonial. .... 11

2. Mr. Vasquez's Alleged Statements Are Hearsay .... 12

a) The alleged falsity of Mr. Vasquez's statement cannot overcome the embedded, prejudicial assertion of truth. .... 13

b) Mr. Vasquez's statements were not in furtherance of the conspiracy as a matter of law. .... 14

3. Admitting Mr. Vasquez's Statement Would Violate *Bruton* .... 16

4. Severance from Mr. Vasquez is the Proper Remedy. .... 17

a) Any redacted version of Mr. Vasquez's statement would directly and improperly implicate Mr. Clase .... 17

b) Severance is the least drastic remedy. .... 19

IV. CONCLUSION .... 20

# TABLE OF AUTHORITIES

## Cases


*Bruton v. United States*, 391 U.S. 123 (1968) ........ 11, 16
*Crawford v. Washington*, 541 U.S. 36 (2004) ........ 12
*Dutton v. Evans*, 400 U.S. 74 (1970) ........ 15
*Fiswick v. United States*, 329 U.S. 211 (1946) ........ 15
*Grunewald v. United States*, 353 U.S. 391 (1957) ........ 15
*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) ........ 11
*Orlando v. Nassau Cty. Dist. Attorney's Office*, 915 F.3d 113 (2d Cir. 2019) 11, 13, 14, 16
*Richardson v. Marsh*, 481 U.S. 200 (1987) ........ 11, 16
*Ryan v. Miller*, 303 F.3d 231 (2d Cir. 2002) ........ 11
*Samia v. United States*, 599 U.S. 635 (2023) ........ 18
*United States v. Alonzo*, 991 F.2d 1422 (8th Cir. 1993) ........ 15
*United States v. Arrington*, 867 F.2d 122 (2d Cir. 1989) ........ 14
*United States v. Banks*, 464 F.3d 184 (2d Cir. 2006) ........ 12
*United States v. Copeland*, 336 F. Supp. 2d 223 (E.D.N.Y. 2004) ........ 9
*United States v. Feyrer*, 333 F.3d 110 (2d Cir. 2003) ........ 8
*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) ........ 10
*United States v. Hicks*, 5 F.4th 270 (2d Cir. 2021) ........ 10
*United States v. Jass*, 569 F.3d 47 (2d Cir. 2009) ........ 17, 18
*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990) ........ 14
*United States v. Payden*, 622 F. Supp. 915 (S.D.N.Y. 1985) ........ 13, 20
*United States v. Reyes*, 18 F.3d 65 (2d Cir. 1994) ........ 13
*United States v. Rivera*, 89 F. Supp. 3d 376 (E.D.N.Y. 2015) ........ 14, 17, 19
*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) ........ 8, 10
*United States v. Schwieger*, 00 Cr. 284 (PKL), 2001 U.S. Dist. LEXIS 7646 (S.D.N.Y. June 11, 2001) ........ 14
*United States v. Taylor*, 745 F.3d 15 (2d Cir. 2014) ........ 17, 18
*United States v. Vargas*, 279 F. App'x 56 (2d Cir. 2008) ........ 15
*United States v. Weeks*, No. 25-22-1, 2025 U.S. Dist. LEXIS 224630 (E.D. Pa. Nov. 14, 2025) ........ 19
*United States v. Williams*, 936 F.2d 698 (2d Cir. 1991) ........ 19
*Zafiro v. United States*, 506 U.S. 534 (1993) ........ 8, 19


## Statutes


18 U.S.C. § 1001 ........ 1, 6


## Rules


Fed. R. Crim. P. 14(a) ........ 1, 8

Fed. R. Evid. 106 ........ 19
Fed. R. Evid. 801(d)(2)(E) ........ 14

**Constitutional Provisions**

U.S. Const. amend. VI ........ 11

Defendant Emmanuel Clase De La Cruz respectfully submits this Memorandum of Law in Support of his Motion to Sever.

## I. PRELIMINARY STATEMENT

Mr. Clase moves for a severance under Federal Rule of Criminal Procedure 14(a). A joint trial with co-defendants Luis Leandro Ortiz Ribera and Robinson Vasquez Germosen would prejudice all three defendants and violate Mr. Clase's Sixth Amendment right to confront the witnesses against him.

First, for reasons set forth in Mr. Ortiz's briefs in support of his motion to sever, *see* ECF No. 77 & 92, severance is necessary to ensure that Messrs. Clase and Ortiz receive fair trials. Most importantly, Mr. Ortiz's defense is mutually antagonistic to Mr. Clase's claim of innocence, which will position Mr. Ortiz as a "second prosecutor" against Mr. Clase.

Second, severance from Mr. Vasquez is necessary to protect Mr. Clase's Sixth Amendment rights. In its superseding indictment, the government alleges that Mr. Vasquez made materially false statements to agents of the Federal Bureau of Investigation ("FBI"). Contrary to a typical false statement charge under 18 U.S.C. § 1001, the at-issue statement is not a false alibi or other form of obstruction. On the contrary, the at-issue statement is an alleged *admission* by Mr. Vasquez that Mr. Clase provided inside information to Bettors as defined in the superseding indictment, ECF No. 80, on one occasion—the precise conduct the government alleges constituted wire fraud. The government contends, however, that this statement is not *enough* of a confession and alleges that Mr. Vasquez's statement is false because he

knew of *additional* instances where Mr. Clase provided Bettors with inside information. This statement is facially admissible against Mr. Vasquez as a statement by a party-opponent, but a limiting instruction at a joint trial cannot substitute for Mr. Clase's constitutional right to cross-examine his accuser. Nor would any form of redaction or anonymization of the statement cure the constitutional infirmity given the unique circumstances of this case where Mr. Clase is the only person on earth to whom the statement could refer. Despite repeated requests by Mr. Clase, the government has refused to produce a 302 report of Mr. Vasquez's interaction with the FBI, which is discoverable as *Brady* and owed to Mr. Clase no later than March 21, 2026 under the Court's scheduling Orders. Nevertheless, even with the full context of Mr. Vasquez's statement impermissibly left a mystery, the summary provided in the superseding indictment shows that *any* redacted or anonymized statement would remain facially incriminating against Mr. Clase. Accordingly, severance of Mr. Clase and Mr. Vasquez is the proper remedy.

## II. RELEVANT BACKGROUND

### A. Original Indictment, At-Issue Pitches, and *Brady* Disclosure.

On November 5, 2025, the Grand Jury returned a four-count indictment charging Messrs. Clase and Ortiz with (1) conspiracy to commit wire fraud, (2) conspiracy to commit honest services wire fraud, (3) conspiracy to influence sporting contests by bribery, and (4) conspiracy to commit money laundering.[1] *See*

[1] Mr. Clase is innocent, denies all the government's allegations regarding his participation in criminal conspiracies, and looks forward to clearing his name at the trial scheduled for May 4, 2026.

Indictment, ECF No. 1. The indictment alleges that Mr. Clase engaged in a two-year conspiracy with Bettor-1 and others to provide advance information about pitches he intended to throw, allowing the Bettors to win wagers on those pitches.[2] The government identified nine "example" pitches in the indictment and alleged that the Bettors won approximately $173,500 on these pitches, *see id.* ¶¶ 15, 16, 17, 18, 20, 22, 23, 25, 27, but the government further alleged that the Bettors "won at least $400,000" on pitches thrown by Mr. Clase, *see id.* ¶ 29. For his part, the indictment alleged that Mr. Ortiz joined only for the final month of the conspiracy, in June 2025, by throwing two subject pitches. *Id.* ¶¶ 14, 30.

Recognizing that Mr. Clase could not effectively prepare for trial without understanding the pitches alleged as criminal, the Court ordered the government to produce evidence regarding additional pitches that will be used at trial. Order at 24, ECF No. 75. [redacted] *See* Sealed Ex. 1, Feb. 5, 2026 Letter from DOJ. In direct violation of the spirit, if not letter, of the Court's orders, the government has since conceded that the

[2] In August 2025, counsel for Mr. Clase participated in an interview with Bettor-1. At the conclusion of the interview, Bettor-1 executed a sworn declaration that completely denied any communications or discussions with Mr. Clase regarding gambling on baseball. On January 15, 2026, the Court held a *Curcio* hearing, during which the Court explained that, at trial, Mr. Clase's current counsel could neither act as witnesses nor put their own credibility at issue through cross-examination questions. *See* Minute Entry (Jan. 16, 2026). In connection with multiple assurances from the government that Bettor-1 will admit to making all statements summarized in his declaration freely and voluntarily, Mr. Clase knowingly and voluntarily chose to proceed with current, chosen counsel of record. *Id.*

list it provided is intentionally overbroad, and it "anticipates that the 'fixed [Clase] pitches' that feature in its case-in-chief will be fewer."[3] U.S. Opp. to Ortiz Mot. to Sever at 2 n.3, ECF No. 86.

[redacted]

[redacted]

[redacted]

[3] On January 16, 2026, the Court "directed [the government] to provide a list of evidence regarding additional pitches within two weeks-January 29, 2026 . . . that it alleges were included in the conspiracy, so Clase de la Cruz may be adequately prepared for trial." Minute Entry (Jan. 16, 20206). The Court reminded the government of this direction in a separate Order entered February 2, 2026, which stated, "[a]t the January 15 conference, the government was directed by the Court to produce evidence regarding additional pitches—including the game, the inning, the pitch, and any video—that will be used at trial by January 29, 2026." Order at 24, ECF No. 75. Based on the government's admission that it has failed to provide a list of pitches it currently believes in good faith were "fixed," or criminal events, Mr. Clase is no closer to understanding what he must defend at trial and he remains forced to prepare defenses to scores of pitches that are seemingly unlikely to be relevant to the government's case. The government's actions highlight a disturbing pattern of gamesmanship in which it has declared to the Court that this case is straightforward, with substantially all relevant information already provided in discovery, when it suits their purposes to do so, only to withhold discoverable information and force the defense to waste highly finite resources preparing for contingencies the government knows, but has not disclosed, are unlikely to occur at trial. As representative examples, despite telling this Court in December that discovery was "substantially complete," *see* Minute Entry (Dec. 2, 2025), the government has since produced several additional *terabytes* of evidence across multiple productions, *see, e.g.*, Minute Entry (Feb. 18, 2026). And despite telling the Court on January 16 that the government understood its *Brady* obligations, [redacted]

[redacted]

**B. Superseding Indictment.**

On February 12, 2026, a grand jury returned a five-count superseding indictment that added two defendants to the conspiracy to commit wire fraud, Mr. Vasquez and another at-large individual whose identity is under seal but independently known to Mr. Clase through the descriptions left unredacted in the publicly available superseding indictment ("Defendant-4"). *See* Superseding Indictment, ECF No. 80. Most relevant here, in Count Five, the superseding

indictment charged Mr. Vasquez with making materially false statements to law enforcement agents, in violation of 18 U.S.C. § 1001(a)(2).

According to the superseding indictment, on or about January 9, 2026, Mr. Vasquez sat for a voluntary interview with the FBI at the United States Attorney's Office for the Eastern District of New York (hereinafter, the "Proffer"). Superseding Indictment ¶ 59, ECF No. 80. While the specific circumstances are again unknown given the government's withholding of critical, discoverable information, the superseding indictment alleges that, during the Proffer, Mr. Vasquez "stated that he was only aware of one instance of the defendant [Mr. Clase] telling someone what pitch he was going to throw ahead of time." *Id.* Mr. Vasquez allegedly "indicated" that this occurred on May 17, 2025, the same day Mr. Vasquez successfully wagered on Mr. Clase and Bettor-1 sent Mr. Vasquez a screenshot of Bettor-1's own successful wager. *Id.* ¶¶ 37, 59.

### C. Despite Requests from the Court and Mr. Clase to Provide the Government's Proposal for *Bruton*-izing Mr. Vasquez's Statements, the Government Refused.

The *Bruton* issue regarding Mr. Vasquez's alleged statements to the government at the Proffer was immediately clear the moment the superseding indictment was unsealed. Accordingly, Mr. Clase promptly flagged the issue for the Court at his arraignment on the superseding indictment on February 18, expressly reserving the right to fully brief the issue, if necessary. *See* Clase Resp. to Ortiz Mot. to Sever and to Continue Trial at 4, ECF No. 84. In response, the government likewise reserved the right to address the issue later, but stated that "in general, *Bruton* does not necessitate severance" and cited two cases where redactions sufficiently concealed

the identification of a co-defendant in a confession. *See* U.S. Opp. to Ortiz Mot. to Sever at 18 n. 15, ECF No. 86.

At the February 18 appearance, the Court asked the government for its proposal for sanitizing Mr. Vasquez's statement. Despite the obvious nature of the *Bruton* issue, which should have caused the government to consider its impact on the trial before including Mr. Vasquez in the same charging instrument as Mr. Clase, the government had, at a minimum, six days to contemplate a solution, but nonetheless refused to respond to the Court's question because it did not want to "shoot from the hip." The next day, counsel for Mr. Clase asked the government for its proposal in writing, and the government responded that it needed yet more time and would respond early the following week.

On February 23, counsel for Mr. Clase again requested the government's proposal in writing and scheduled a meet and confer for February 24 to discuss. Despite counsel's request, the government did not provide its proposal before the meet and confer. Instead, during the meet and confer, the government proposed—for the first time—to bifurcate the trial of Mr. Vasquez's false statement, using the same jury for both trials and only presenting the statement charged as an alleged lie to the jury after it returns a verdict on the four counts involving Mr. Clase. The government insisted, however, that it would only agree to exclude evidence of the statement charged as an alleged lie in Count Five of the superseding indictment and would *not* agree to any Sixth Amendment-protecting treatment of any other alleged statements from Mr. Vasquez that it sought to introduce at the initial trial at this time. Counsel

for Mr. Clase repeatedly asked the government to provide the 302 from the Proffer so counsel could properly evaluate the universe of potential *Bruton* and Confrontation Clause issues and effectively advise Mr. Clase. Despite knowing that its actions would force this motion and that the report is due to Mr. Clase no later than March 21, 2026 and immediately due to Mr. Vasquez as Rule 16, the government repeatedly refused to provide it. Thereafter, counsel for Mr. Vasquez represented that he would not consent to a bifurcated trial, further necessitating this motion.

## III. LAW AND ARGUMENT

Federal Rule of Criminal Procedure 14(a) states, "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." A district court should grant a severance when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Although the Second Circuit has a "preference" for joint trials involving a single alleged conspiracy, *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998), the "risk of prejudice" turns on "the facts of each case," and the evaluation of those facts is "confided to the sound discretion of the trial court," *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003).

### A. The Court Should Sever Mr. Ortiz and Mr. Clase.

Mr. Clase respectfully joins in certain of the arguments of his co-defendant, Mr. Ortiz, and asks the Court to sever his trial from Mr. Clase's.

First, Mr. Ortiz intends to advance a defense theory at trial that is antagonistic to Mr. Clase and will prevent the jury from reaching a reliable judgment about guilt or innocence. Specifically, Mr. Ortiz claims he will argue (falsely) that Mr. Clase either provided information contained in scouting reports to Bettors or convinced Mr. Ortiz to throw a certain pitch while relaying this advance information to Bettors without Mr. Ortiz's knowledge. Ortiz Mem. in Supp. of Mot. to Sever at 12, ECF No. 77-1. Mr. Clase, meanwhile, will argue that he was not involved in *any* conspiracy. Because a jury could not "logically accept both . . . defenses as true," Mr. Ortiz would be acting as a "second prosecutor" of Mr. Clase and the jury could convict Mr. Clase on either the government's theory or Mr. Ortiz's. *See United States v. Copeland*, 336 F. Supp. 2d 223, 224 (E.D.N.Y. 2004). Accordingly, severance is necessary.

Second, Mr. Clase's desire for a speedy trial, beginning on May 4, 2026, further justifies severance. While all defendants have a right to a speedy trial, Mr. Clase's need for prompt justice is heightened by the enormous, and perhaps unprecedented, prejudice he may suffer if his trial is delayed over his objection. Specifically, a delay could imperil Mr. Clase's receipt of the approximately $6.4 million he is contractually owed in 2026 and the tens of millions more he would receive under a new contract reflecting his fair market value as one of baseball's most dominant athletes.

For these and other reasons stated in Mr. Ortiz's motion to sever, the Court should order separate trials of Mr. Clase and Mr. Ortiz.[4]

**B. The Court Should Sever Mr. Vasquez and Mr. Clase.**

The statements that Mr. Vasquez allegedly made during the course of the Proffer with the FBI and members of this trial team were testimonial and amount to an alleged confession. Admitting them against Mr. Clase would violate the Confrontation Clause. Moreover, because it is impossible to sanitize the statements

---

[4] In addition, while Mr. Clase has knowingly and voluntarily waived any potential attorney-as-witness issues arising out of counsel's interviews of witnesses, Mr. Ortiz has not and will not. *See* Ortiz Mem. in Supp. of Mot. to Sever at 5, ECF No. 77-1. Mr. Ortiz argues that, even if Bettor-1 admits at trial to each and every prior inconsistent statement made to Mr. Clase's attorneys, he may still have the right to call Mr. Clase's attorneys to illustrate for the jury how the context for that statement impacts his credibility. *See* Ortiz Mot. to Strike at 4, ECF No. 96.

While Mr. Clase does not adopt Mr. Ortiz's legal or factual analysis on this topic, Mr. Clase cites Mr. Ortiz's argument here because the government's response, which suggests that disqualification of Mr. Clase's counsel is the appropriate remedy to address this issue, is another disturbing example of the government's win at all cost approach to this case. *See* U.S. Opp. to Ortiz Mot. to Sever at 15, ECF No. 86. *See United States v. Hicks*, 5 F.4th 270, 278-79 (2d Cir. 2021) (affirming severance as opposed to the "unpalatable alternative that potentially would have violated [a defendant's] Sixth Amendment right to counsel of his choice"). The forced removal of Mr. Clase's counsel would violate his Sixth Amendment right to the counsel of his choice and constitute reversible error. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (holding that "erroneous deprivation of the right to counsel of choice . . . unquestionably qualifies as 'structural error'"). A mere "preference" for joint trials in a single alleged conspiracy, *Salameh*, 152 F.3d at 115, is not a mandate, nor can it justify an outcome that infringes on a defendant's Sixth Amendment right to counsel of choice. The Court should reject the government's invitation to proceed down a path toward reversible error.

Moreover, the government has provided every assurance to the Court that extrinsic witnesses will not be needed because Bettor 1 will testify that he freely and voluntarily made all the exculpatory statements summarized in his declaration. *See* U.S. Opp. to Ortiz Mot. to Sever at 5, 13, ECF No. 86. But even in the event of an unexpected denial from Bettor 1 at a joint trial of Messrs. Clase and Ortiz, all statements made by Bettor 1 were witnessed by a certified Spanish-English interpreter who is *not* counsel of record in this matter. The interpreter—referred to by the government misleadingly as "Clase Attorney-1" in its opposition to Mr. Ortiz's motion to sever—could testify as to the prior inconsistent statements made by Bettor-1, as well as the circumstances of the declaration. In the event that the government continues its pattern of gamesmanship and escalates its unwarranted and unjustified threats to actually move for disqualification, Mr. Clase reserves the right to fully respond to the government's unsupportable positions and fully brief the issue.

in accordance with *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, severance is the only remedy.

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." *Ryan v. Miller*, 303 F.3d 231, 247 (2d Cir. 2002). "[A] defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a non-testifying defendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (citing *Bruton*, 391 U.S. at 135-36). The Confrontation Clause only applies, however, to "testimonial hearsay." *Orlando v. Nassau Cty. Dist. Attorney's Office*, 915 F.3d 113, 121 (2d Cir. 2019).

1. <u>Mr. Vasquez's Alleged Statements Were Testimonial.</u>

"[T]he Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as . . . confessions" and a testimonial statement is one "made for the purpose of establishing or proving some fact . . . made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009) (internal quotations and citations omitted). "[I]nterrogations by law enforcement officers fall

squarely within" the definition of testimonial statements. *Crawford v. Washington*, 541 U.S. 36, 53 (2004).

Here, Mr. Vasquez's Proffer statements to the FBI and trial team were testimonial. The interview was conducted over six months after the government began its investigation and the alleged conspiracy ended, over two months after the unsealing of the indictment against Messrs. Clase and Ortiz, and one month after Mr. Vasquez's arrest on a criminal complaint. The purpose of the interview was clearly to gather evidence that would prove the alleged criminal conduct. Accordingly, the statements made by Mr. Vasquez at the Proffer were "testimonial" under *Crawford*. *Cf. United States v. Banks*, 464 F.3d 184, 189 (2d Cir. 2006) ("The Government does not dispute that the pleas, allocutions, and *post-arrest statement made at a proffer session* constitute 'testimonial statements' of the sort barred by *Crawford*. We assume without deciding that this characterization is correct." (emphasis added)).

2. Mr. Vasquez's Alleged Statements Are Hearsay.

Mr. Vasquez's alleged statements at the Proffer are inadmissible against Mr. Clase because they are hearsay. Mr. Vasquez allegedly told the FBI and trial team he was aware of one instance of Mr. Clase telling someone what pitch he intended to throw—May 17, 2025. Superseding Indictment ¶ 59, ECF No. 80. While false in reality, this statement's "truth" is entirely consistent with the government's theory of the case—indeed, the government has expressly alleged that on May 17, 2025, Mr. Clase told Bettor-1 what pitch he intended to throw. *See id.* ¶ 37, ECF No. 80. Accordingly, the statement is inadmissible against Mr. Clase and cannot be

introduced at a joint trial. *See United States v. Payden*, 622 F. Supp. 915, 922 (S.D.N.Y. 1985) (excluding out-of-court statement implicating co-defendant in criminal activity because instructing the jury to consider the statement against the declarant but not the co-defendant would lead to "an absurd result").

The government offers two bases for why Mr. Vasquez's statements are not hearsay. First, the government contends that because it alleges Mr. Vasquez's statements were false, the statements will not be admitted for their truth. Second, the government contends that Mr. Vasquez's statements were in furtherance of a conspiracy. Neither argument is correct under the law.

*a) The alleged falsity of Mr. Vasquez's statement cannot overcome the embedded, prejudicial assertion of truth.*

Even though the government alleges that Mr. Vasquez's statement was partially false, the statement includes a direct accusation of criminal activity against Mr. Clase, which the jury would necessarily use for its truth. The Second Circuit has held that even if the government can articulate a non-hearsay purpose for admitting an accomplice's out-of-court statement, a jury cannot disregard the truth of a statement that "expressly inculpate[s]" an alleged co-conspirator, "even with a limiting instruction." *Orlando*, 915 F.3d at 122. Moreover, "the mere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice." *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994); *see also United States v. Schwieger*, 00 Cr. 284 (PKL), 2001 U.S. Dist. LEXIS 7646,

at *9 (S.D.N.Y. June 11, 2001) ("[H]earsay testimony that directly implicates the defendant . . . is highly prejudicial to the defendant and therefore inadmissible").

Here, Mr. Vasquez's alleged statement is a confession that expressly inculpates Mr. Clase, and asking the jury to consider it only against Mr. Vasquez would constitute reversible error. *See Orlando*, 915 F.3d at 127 (holding that the Confrontation Clause violation was not "harmless" because the improperly admitted testimony had a "powerful effect" on the jury). Holding otherwise would mean the government could always bring in out-of-court statements, no matter how inculpatory or prejudicial, simply by unilaterally alleging that some part of the statement was false. This would eviscerate the Confrontation Clause.

*b) Mr. Vasquez's statements were not in furtherance of the conspiracy as a matter of law.*

The government incorrectly contends that Mr. Vasquez's alleged statements to the FBI during the Proffer qualify as nonhearsay statements in furtherance of a conspiracy under Rule 801(d)(2)(E). Mr. Vasquez's statements were not made until January 2026, over six months after the conspiracy alleged by the government ended in June 2025 per the indictment. Superseding Indictment ¶¶ 59-61, ECF No. 80; *see United States v. Arrington*, 867 F.2d 122, 130 (2d Cir. 1989) ("Generally, a statement is not made in the course of a conspiracy when it is made after the main objective of the conspiracy has been accomplished.").

Nor did Mr. Vasquez's alleged statements "promote[] or facilitate[] the carrying out of a criminal activity." *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990). At most, Mr. Vasquez's statements constitute *post hoc* denials of a

conspiracy to commit wire fraud, honest services fraud, and money laundering. It is blackletter law that such denials are *not* in furtherance of a conspiracy. *See Dutton v. Evans*, 400 U.S. 74, 81 (1970) (finding it "settled" that statements made "during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise" are not "in furtherance of the conspiracy"); *Grunewald v. United States*, 353 U.S. 391, 401-02 (1957) ("[A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment."). In fact, by allegedly *confessing* knowledge of at least one criminal act by Mr. Clase, Mr. Vasquez's conduct would have frustrated any (non-existent) conspiracy. *See Fiswick v. United States*, 329 U.S. 211, 217 (1946) ("[C]onfession or admission by one co-conspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise."); *United States v. Vargas*, 279 F. App'x 56, 61 (2d Cir. 2008) ("Because the statements of the witnesses were made to law enforcement agents, they were not 'in furtherance of the conspiracy' and, thus, were inadmissible hearsay."); *see also United States v. Alonzo*, 991 F.2d 1422, 1426 (8th Cir. 1993) (holding that statements that "implicate[]" co-conspirators and "assist[] the agents in ending the criminal enterprise" are not in furtherance of the conspiracy). Accordingly, Mr. Vasquez's statements cannot be admitted under Rule 801(d)(2)(E).

3. Admitting Mr. Vasquez's Statement Would Violate *Bruton*.

When an accusatory statement is admissible at a joint trial against one defendant but not another, a limiting instruction may be sufficient to eliminate constitutional concerns. *See Richardson*, 481 U.S. at 206. In *Bruton*, however, the Court held that "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant," are admitted at a joint trial, courts "cannot accept limiting instructions as an adequate substitute for [the defendant's] constitutional right of cross-examination." 391 U.S. at 135-37. In this scenario, "the risk that the jury will not, or cannot, follow instructions are so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135; *see also Orlando*, 915 F.3d at 122 ("*Bruton* plainly instructs that the jury could not be presumed to disregard [the relevant] statement for its truth, even with a limiting instruction.").

Here, Mr. Vasquez's alleged statements to prosecutors directly implicate Mr. Clase in the crimes alleged in the Superseding Indictment. Mr. Vasquez allegedly conceded that on May 17, 2025, Mr. Clase provided Bettors with advance information about the pitch that he intended to throw. Superseding Indictment ¶¶ 59, 69, ECF No. 80. The government has argued that Mr. Vasquez's statement is not a true "confession" under *Bruton*. What the government really means is Mr. Vasquez's statement was not *enough* of a confession. But that is not the *Bruton* standard. The standard is whether a co-defendant's statement implicates the other in the charged criminal activity, period. Mr. Vasquez's statement does just that. Indeed, according to the superseding indictment, several of the Bettors, including Mr. Vasquez, won

approximately $27,000 by allegedly using inside information from Mr. Clase to bet that a pitch thrown by Mr. Clase on May 17, 2025, would be a ball and slower than 97.95 MPH. Superseding Indictment ¶ 37. It is an absolute certainty that the government will argue that even a single act of Mr. Clase providing information to Bettors to defraud gambling outlets is sufficient to sustain a conviction. Accordingly, allowing the jury to know about Mr. Vasquez's accusatory finger regarding any aspect of the alleged criminal conduct would violate *Bruton*.

4. Severance from Mr. Vasquez is the Proper Remedy.

When faced with a *Bruton* problem, courts in the Second Circuit have three options: "(1) sever the trial; (2) carefully redact the confession to eliminate references to co-defendants; or (3) exclude the confession at the joint trial." *United States v. Rivera*, 89 F. Supp. 3d 376, 398 (E.D.N.Y. 2015) (citing *United States v. Jass*, 569 F.3d 47, 56 n.5 (2d Cir. 2009)). Here, severance is the appropriate remedy to avoid an incurable Confrontation Clause violation.

*a) Any redacted version of Mr. Vasquez's statement would directly and improperly implicate Mr. Clase.*

"When the confession of one defendant implicates his co-defendants, *Bruton* demands 'a redaction and substitution adequate to remove the "overwhelming probability" that a jury will not follow a limiting instruction that precludes its consideration of a redacted confession against a defendant other than the declarant.'" *United States v. Taylor*, 745 F.3d 15, 28 (2d Cir. 2014) (quoting *Jass*, 569 F.3d at 60). The Second Circuit has "urge[d] district courts, wherever possible, to eliminate completely from a confession any mention of a non-declarant defendant's existence."

*Jass*, 569 F.3d at 56 n.5. Where that is not possible, "neutral-word substitution" may be permissible "if the altered statement uses words 'that might actually have been said by a person admitting his own culpability in the charged conspiracy while shielding the specific identity of his confederate.'" *Taylor*, 745 F.3d at 28 (quoting *Jass*, 569 F.3d at 62); *see also Jass*, 569 F.3d at 61 ("[T]he critical inquiry . . . is whether the neutral allusion sufficiently conceals the fact of explicit identification"). But where the redacted confession "directly implicate[s]" the co-defendant, admitting the statement violates *Bruton*. *See Samia v. United States*, 599 U.S. 635, 653 (2023).

Here, any redacted version of Mr. Vasquez's statement would directly and irrefutably implicate Mr. Clase. This is not a murder for hire case like *Samia* or an abuse case like *Jass*, where any random person could have committed the alleged crime and replacing the name in a confession with references to some "other person" sufficiently masked the co-defendant's identity. *See Samia*, 599 U.S. at 653; *Jass*, 569 F.3d at 59. Rather, there is only one person on earth who could have provided Bettors with advance information about the pitches that Mr. Clase intended to throw—Mr. Clase.[5] Nor is this a case where the jury would only be able to connect the redacted confession to Mr. Clase through other evidence. *Cf. United States v. Williams*, 936

[5] Any assertion by the government that the fatal *Bruton* defects could be overcome through the anonymization of Mr. Clase's identity to allow Mr. Vasquez's alleged statements to apply to any Major League Baseball player generally, but not Mr. Clase specifically, is preposterous. There will be zero evidence at trial regarding the alleged participation of *any* Major League Baseball pitcher in the conspiracy from May 2023 to May 2025 other than Mr. Clase, much less a pitcher with whom Mr. Vasquez had contact. Moreover, removing the date from the allegation so that the government's false accusation derived from Mr. Vasquez's alleged confession could apply to both Messrs. Clase or Ortiz makes the *Bruton* problems worse, not better, by trampling two defendants' constitutional rights instead of just one.

F.2d 698, 699 (2d Cir. 1991) ("The fact that other evidence identifies the defendant as the coperpetrator mentioned in the codefendant's confession does not affect its admissibility so long as the confession, viewed in isolation, does not implicate the defendant."). The superseding indictment expressly alleges that Mr. Vasquez himself connected Mr. Clase's purported provision of inside information to a screenshot of a winning wager he received from Bettor-1. Superseding Indictment ¶ 59, ECF No. 80. All the information that the jury would need to connect Mr. Vasquez's confession to Mr. Clase would be contained in the four corners of the confession that government seeks to introduce as its evidence to establish the false statement count against Mr. Vasquez.

Moreover, because the government has charged Mr. Vasquez's statement as a crime in and of itself, Mr. Vasquez will necessarily need to probe a testifying agent about the statement. Federal Rule of Evidence 106 would require admitting the full statement into evidence. At that point, redacting the statement to avoid *all* references to Mr. Clase would distort Mr. Vasquez's narrative, while leaving *some* references to Mr. Clase would make it obvious to the jury that Mr. Vasquez inculpated Mr. Clase in the alleged scheme. For this reason, redaction is inappropriate. *See United States v. Weeks*, No. 25-22-1, 2025 U.S. Dist. LEXIS 224630, at *15 (E.D. Pa. Nov. 14, 2025).

*b) Severance is the least drastic remedy.*

Mr. Vasquez's statements cannot be redacted to avoid direct identification of Mr. Clase, which leaves the Court with two options: severance or exclusion. *Rivera*, 89 F. Supp. 3d at 398. Here, severance resolves all concerns and is "less drastic" than exclusion. *Cf. Zafiro*, 506 U.S. at 539.

While excluding Mr. Vasquez's statements would certainly protect Mr. Clase's rights under the Confrontation Clause, this remedy would leave the government without evidence that is admissible against Mr. Vasquez and require dismissal of Count Five. *See Payden*, 622 F. Supp. at 922 (recognizing that, although excluding confession likely meant granting a Rule 29 motion, "[t]he government should have used more foresight" and "either brought Mr. Grant to trial on a separate indictment or sought a severance prior to the commencement of trial").[6]

Severance, however, guarantees that the government can pursue whatever case it pleases against Mr. Vasquez, while Mr. Clase can proceed to trial knowing that *Crawford* will bar the use of Mr. Vasquez's statement against him.

## IV. CONCLUSION

For these reasons, Mr. Clase respectfully requests that the Court sever his case from Mr. Ortiz and Mr. Vasquez.

Respectfully submitted,

/s/ *J. Riley Able*
J. Riley Able (*pro hac vice*)
Michael Ferrara (*pro hac vice*)
Lindsay Gerdes (NY Bar No. 4581690)
Michael Bronson (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
riley.able@dinsmore.com

***Counsel for Emmanuel Clase***

[6] While Mr. Clase has no objection to the Court's suppression of Mr. Vasquez's statement, he is not advocating for that outcome because severance is the appropriate relief. However, Mr. Clase certainly objects to any non-severance outcome that will prejudice Mr. Clase and reward the government's lack of foresight by bringing a constitutionally infirm joint indictment.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2026, the foregoing document was filed in this matter using the Court's electronic filing system. Notice of this filing will be sent to all represented parties via the Court's electronic filing system.

Respectfully submitted,

/s/ *J. Riley Able*
J. Riley Able (*pro hac vice*)
Michael Ferrara (*pro hac vice*)
Lindsay Gerdes (NY Bar No. 4581690)
Michael Bronson (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
riley.able@dinsmore.com

***Counsel for Emmanuel Clase***