**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 25-CR-346 (KAM) |
| EMMANUEL CLASE DE LA CRUZ, et al., | |
| Defendants. | |

## MOTION TO DISMISS COUNT ONE OF INDICTMENT

Mr. Clase respectfully moves to dismiss Count One of the superseding indictment because it fails to state an offense and improperly federalizes an alleged violation of state law.

## I.      FACTUAL ALLEGATIONS

On February 12, 2026, a federal grand jury in the United States District Court for the Eastern District of New York returned a four-count superseding indictment charging Mr. Clase with one count of wire fraud conspiracy, one count of honest services wire fraud conspiracy, one count of conspiracy to influence sporting contests by bribery, and one count of money laundering conspiracy. Superseding Indictment, ECF No. 80 (hereinafter, the "Indictment"). Both Mr. Clase and his codefendant, Luis Leandro Ortiz Ribera, are Major League Baseball ("MLB") pitchers who play for the Cleveland Guardians. *Id.* ¶ 1. The Indictment generally alleges that, from May 2023 until June 2025, Mr. Clase conspired with Mr. Ortiz, codefendant Robinson Vasquez Germosen, a fourth redacted codefendant, and multiple unnamed bettors (the "Bettors") to provide advance notice to those Bettors of the characteristics of certain pitches so the Bettors could profit from wagers placed on those pitches. *Id.* ¶¶ 1-58.

1

The alleged targets of the scheme were certain licensed gambling companies, which offered sports wagering services related to MLB games and player performance (the "Betting Platforms"). *See id.* ¶¶ 7, 15-17. The Indictment alleges that Mr. Clase and, later, Mr. Ortiz, agreed with the Bettors "to throw specific pitches in certain MLB games." *Id.* ¶ 18. The Bettors then allegedly used this "inside information" to place "fraudulent" and "illegal" bets on Mr. Clase and Mr. Ortiz's pitches on the Betting Platforms. *Id.* According to the Indictment, the wagers were "fraudulent" and "illegal" because the Betting Platforms' "terms of use" prohibited bettors from "wagering in connection with sports contests or individual players' statistical performances if the users had access to any pre-release, confidential information or other information that was not available to all other wagerers, including any information provided by a professional athlete." *Id.* ¶ 15.

The Indictment specifically alleges that Mr. Clase agreed with the Bettors to "throw balls (instead of strikes) and slower 'slider' pitches (rather than faster cut fastball 'cutter' pitches) . . ." *Id.* The Bettors allegedly used "this information to place over a hundred fraudulent Pitch Speed and Ball/HBP straight bets and parlays on [Mr. Clase's] pitches on the Betting Platforms." *Id.* Overall, the indictment alleges that between 2023 and 2025, Mr. Clase agreed to "rig" multiple pitches and "the Bettors won at least $400,000 from the Betting Platforms on pitches thrown by" Mr. Clase. *Id.* ¶¶ 24, 25, 26, 27, 29, 31, 35, 37, 40, 41, 47. The Indictment further alleges that, in or around June 2025, Mr. Ortiz joined the scheme, "agreed to throw balls (instead of strikes) on certain pitches in exchange for bribes or kickbacks," and threw at least two rigged pitches on which the Bettors won at least $60,000 from the Betting Platforms. ¶¶ 48-58.

## II.  LEGAL STANDARD

An indictment must "state[] the essential elements of the charge." *United States v. Runner*, 143 F.4th 146, 156 (2d Cir. 2025); *see also* Fed R. Crim P. 7(c)(1) ("The indictment . . . must be a

plain, concise, and definite written statement of the essential facts constituting the offense charged . . . "). This requirement ensures the defendant is "tried on the evidence presented to the grand jury, "and as an 'important corollary,'" allows the Court to "evaluate whether [the] facts alleged could support conviction." *United States v. Pirro*, 212 F. 3d 86, 92 (2d Cir. 2000) (affirming the district court's dismissal of an indictment that "failed to sufficiently allege the second element of a section 7206(1) violation, namely a material falsehood or an omission that amounted to a material falsehood"); *see also Russell v. United States*, 369 U.S. 749, 760-61 (1962) (holding that an indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments).

A defendant may challenge an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment may fail to state an offense in two ways. First, an indictment must be dismissed if it "fails to allege the essential facts constituting the offense charged." *Pirro*, 212 F.3d at 91. Second, "a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012). In other words, an indictment is legally insufficient where the alleged conduct does "not constitute an offense." *Id.* at 76.

"The timing of the defendant's objection is important to the level of scrutiny employed; a defendant who objects to the indictment before trial . . . is entitled to a more exacting review of the indictment than one who waits until after trial to object." *Pirro*, 212 F.3d at 92. In carrying out this review, the Court must consider the indictment "as it was actually drawn, not as it might have been drawn." *Id.* And where, as here, a statute "includes generic terms," it is not enough that the indictment repeats those terms; rather, the indictment "must descend to particulars." *Id.* at 93 (quoting *Russell*, 369 U.S. at 765).

## III.    ARGUMENT

### A.    The Wire Fraud Conspiracy Must Be Dismissed Because the Indictment Fails to Allege a Required Material Misstatement or Omission.

The Indictment fails to allege the essential elements of wire fraud. "The essential elements of wire fraud are '(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of . . . wires to further the scheme.'" *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) (quoting *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004). In order "to establish the existence of a scheme to defraud, the Government must prove the *materiality* of a defendant's false statements or misrepresentations." *Calderon*, 944 F.3d at 85; *see also Neder v. United States*, 527 U.S. 1, 24 (1999) (rejecting government's argument that "criminal liability . . . exist[s] so long as the defendant *intended* to deceive the victim" and instead holding that a material falsehood is an element of wire fraud). An indictment sufficiently alleges material misrepresentations when it explains "the nature of these misrepresentations, how those misrepresentations were false and material, and where they were offered." *See United States v. Peraire-Bueno*, No. 24 CR 293, 2025 U.S. Dist. LEXIS 140333, *28 (S.D.N.Y. July 23, 2025) (citing *United States v. Olin Corp.*, 465 F. Supp. 1120, 1132 (W.D.N.Y. 1979)).

The Indictment does not allege that Mr. Clase placed any wagers himself. Instead, it alleges that he provided information to Bettors, who in turn placed wagers based on that information. Indictment ¶ 18. But the Indictment does not identify any specific instance in which any of the Bettors made a misrepresentation. In particular, the Indictment fails to include an allegation explaining what, if anything, the Bettors said to the Betting Platforms about whether they possessed nonpublic information when they placed wagers. (*See e.g.*, *id.* ¶¶ 15, 16, 17, 18, 20, 22, 23, 25, 26, 27, 33, 39.). In fact, the Indictment does not even allege that it was possible for the

4

Bettors to make representations of any kind when placing a wager.[1] Instead, the Indictment alleges that the Betting Platforms required a bettor to agree to terms of use prohibiting "wagering in connection with sports contests or individual players' statistical performances if the users had access to any pre-release, confidential information or other information that was not available to all other wagerers." *Id*. ¶ 15. The Indictment does not say whether or when the Bettors agreed to the relevant terms and conditions, or whether their alleged inside knowledge would have affected the Betting Platforms' decision to accept or pay out a bet even if the Platforms had provided a way to disclose or withhold that information.[2] Because there was no way for the Bettors to make any form of statement at the time they placed a bet, the Bettors were incapable of making a material misstatement, and the Indictment therefore fails to state an offense based on the conduct of the Bettors.[3]

Nor does the Indictment allege a material omission by any Bettor. A material omission only violates the wire fraud statute where "the defendant has a duty to disclose." *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000). A duty to disclose may arise from a fiduciary relationship, *see United States v. Moses,* 109 F.4th 107, 114 (2d Cir. 2024), a regulatory framework, *see United States v. Zemlyansky*, 945 F. Supp. 2d 438, 448 n.3 (S.D.N.Y. 2013), or the defendant's partial disclosure, *see United States v. Kahale,* 789 F. Supp. 2d 359, 379 (E.D.N.Y. 2009). Here, at

---

[1] The Indictment is silent as to statements or omissions made by the Bettors because Mr. Clase anticipates that the evidence at trial will be uncontested that the Betting Platforms' interfaces did not include functionality to allow a bettor to make a statement at the time of placing a wager. Specifically, there will be no evidence that the Betting Platforms offered a text field for a bettor to provide a written message, nor was there even a prepopulated box that a bettor could check to signify that a bet was placed in compliance with any terms or conditions.

[2] Once more, Mr. Clase anticipates that the evidence will be uncontested that users of the Betting Platforms were only presented with the terms and conditions at the time the user created an account on a specific Betting Platform. After an account was created, the evidence will be uncontested that there were no affirmative representations required, or even possible, at the time a bettor placed a bet.

[3] To the extent that the Indictment alleges that Mr. Clase conspired to withhold valuable economic information necessary for the Betting Platforms to make discretionary economic decisions—*i.e.* whether to accept or pay out wagers—the Supreme Court has held that such a right-to-control theory is not a valid basis for liability under federal fraud statutes. *See Ciminelli v. United States*, 598 U.S. 306 (2023).

most, the Indictment alleges that the Bettors violated the Betting Platforms' terms and conditions. But it does not allege that those terms created a fiduciary relationship or imposed a criminally enforceable duty to disclose. And because it does not allege that any Bettor made any statement at all, the Indictment certainly does not allege that a duty arose out of a partial disclosure.

The Indictment likewise fails to allege that Mr. Clase personally made any material misstatements or omissions. Once more, the Indictment does not allege that Mr. Clase placed any bets, which in turn means that he made no statements to the Betting Platforms of any kind. At most, the Indictment alleges that Mr. Clase agreed with others to violate the Betting Platforms' terms and conditions. However, the Indictment does not allege that Mr. Clase was aware of those terms, nor does it explain how the terms created any form of duty to disclose—let alone a criminally enforceable one.

In the absence of alleging a material misstatement or omission, the Indictment can only be read to allege that Mr. Clase and the Bettors "conspired" to violate the Betting Platforms' house rules. But courts have repeatedly held that merely failing to follow private rules is not enough to plead a fraudulent omission; a person does not commit fraud by simply "failing to disclose that he or she is not complying with certain rules." *United States v. Hunt*, 2006 U.S. Dist. LEXIS 64887, at *20 (S.D.N.Y. Sep. 6, 2006) (failure to disclose that defendant violated stock exchange rules could not support material omission allegation); *see also United States v. Finnerty*, 533 F.3d 143, 149 (2d Cir. 2008) (affirming judgment of acquittal where theory of prosecution relied in part on "background assumption of compliance" with stock exchange rules); *United States v. Cochran*, 109 F.3d 660, 665-69 (10th Cir. 1997) (reversing wire fraud conviction where government could not point to any statute, regulation, common law, or contractual provision requiring disclosure); *United States v. Chandler*, 388 F.3d 796, 813 (11th Cir. 2004) (reversing conviction for conspiracy

to commit mail fraud when it appeared that the jury convicted based on a finding that the defendant violated the rules of McDonald's Monopoly game promotion). Accordingly, the Court should dismiss Count One of the Indictment charging wire fraud conspiracy.

**B.      The Indictment Attempts to Impermissibly Transform Alleged Violations of State-Regulated Sportsbook Rules into a Federal Wire Fraud Conspiracy.**

The Indictment must also be dismissed because it constitutes an impermissible federalization of alleged violations of state law. The Supreme Court has consistently rejected invitations "to approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress" and warned against the expansive application of the federal wire and mail fraud statutes to regulate conduct traditionally governed by state and local authorities. *Cleveland v. United States*, 531 U.S. 12, 24-25 (2000) (reversing wire fraud conviction and warning that expansive interpretation of the federal fraud statues would "subject to federal mail fraud prosecution a wide range of conduct traditionally regulated by state and local authorities"); *Ciminelli*, 598 U.S. at 312 ("[T]he fraud statutes do not vest a general power in 'the Federal Government . . . to enforce (its view of) integrity in broad swaths of state and local policymaking.'" (quoting *Kelly v. United States*, 590 U.S. 391, 404 (2020)). Accordingly, courts should not read federal fraud statues "to place under federal superintendence a vast array of conduct traditionally policed by the States." *Id*. at 316. Any "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812 (1971).

Despite these repeated warnings, the government here attempts to transform alleged violations of state-regulated sportsbook rules into a federal wire fraud conspiracy, upsetting the "coherent federal policy" governing sports wagering. *See Murphy v. Nat'l Collegiate Athl. Ass'n*, 584 U.S. 453, 484 (2018). Under that policy, the federal government "respect[s] the policy choices of the people of each State on the controversial issue of gambling." *Id.*

7

In fact, state gambling regulations specifically address the alleged conduct at issue in the Indictment. New York, for example, has developed an expansive regulatory scheme aimed at maintaining the integrity of sports wagering. The New York Gaming Commission defines the term "prohibited sports pool participant" to include, among others, "any individual placing a sports wager as an agent or proxy" and "any person with access to material, non-public confidential information about a sports event that is the subject of such wagering." 9 N.Y.C.R.R. § 5329.1(i)(1), (4) (defining terms applicable to brick-and-mortar sports wagering); *see also* 9 N.Y.C.R.R. § 5330.1(b)(11)(i), (iv) (applying same definitions to "prohibited sports bettor[s]" precluded from mobile sports wagering). The regulations further state that sports wagering licensees "shall not knowingly accept any sports wager from any prohibited sports pool participant," and that any such wager "shall be deemed void." 9 N.Y.C.R.R. § 5329.19; 9 N.Y.C.R.R. § 5330.19.

Not only does state law establish regulations for sports wagering, it also guides enforcement. State regulators monitor sports wagering activities and conduct investigations into suspected violations. *See e.g.*, N.Y. Racing, Pari-Mutuel Wagering & Breeding Law ("PML") § 104(4), (6), (9). Moreover, if a sportsbook or bettor has violated the rules, state regulators can impose civil penalties, and, if necessary, refer suspected criminal activity to state law enforcement for investigation. *See e.g.*, N.Y. PML § 1367(12)(a). Accordingly, state regulators and law enforcement agencies can—and do—police the conduct alleged in the Indictment. The states' comprehensive regulatory and enforcement regimes reflect the federal policy that states are "free to act on [their] own" in regulating sports wagering. *Murphy*, 584 U.S. at 486.

Here, the Indictment seeks to disrupt this carefully crafted state-federal balance by making a federal felony out of sports-wagering conduct "traditionally policed by the States." *Ciminelli*, 598 U.S. at 316 (quoting *Cleveland*, 531 U.S. at 27). Rather than respecting "the policy choices of

8

the people of each State on the controversial issue of gambling," the government employs a sweeping interpretation of the federal wire fraud statute to enforce its "view of[] integrity" in sports wagering. *United States v. Chastain*, 145 F.4th 282, 296 (2d Cir. 2025) (quoting *Ciminelli*, 598 U.S. at 312); *see also* Indictment ¶ 1 (the charged scheme violated the government's view of integrity in sports wagering because it "misled the public, and betrayed America's pastime"). But as the Supreme Court and Second Circuit have recognized, that is not a valid basis for federal criminal prosecution. *See e.g.*, *Kelly*, 590 U.S. at 399 (recognizing, in honest-service context, "that federal fraud law leaves much public corruption to the States . . . to rectify"); *Chastain*, 145 F.4th at 296 (federal wire fraud statute cannot be read to criminalize conduct that "merely depart[s] from traditional notions of fundamental honesty and fair play"). Because Count One of the Indictment intrudes upon subject matter expressly left to the states, it must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Clase respectfully requests that the Court grant his motion to dismiss Count One of the Indictment.

Respectfully submitted,

*Michael Ferrara*

Michael Ferrara (*pro hac vice*)
Lindsay K. Gerdes (NY Bar No. 4581690)
Michael Bronson (*pro hac vice*)
Riley Able (*pro hac vice*)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd., Suite 200
Columbus, OH 4325
(614) 628-6975
michael.ferarra@dinsmore.com

***Counsel for Emmanuel Clase***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2026, the foregoing document was filed in this matter under seal using the Court's electronic filing system, and that a copy was served on all counsel of record via email.

*Michael Ferrara*
Michael Ferrara (*pro hac vice*)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd., Suite 200
Columbus, OH 4325
(614) 628-6975
michael.ferarra@dinsmore.com

***Counsel for Emmanuel Clase***
