**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL CLASE DE LA CRUZ,<br><br>Defendant. | Case No. 25-CR-346 (S-1) (KAM) |

**DEFENDANT EMMANUEL CLASE DE LA CRUZ'S**
**RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 1

[redacted]

II. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT HEARSAY STATEMENTS OF ALLEGED CO-CONSPIRATORS. ........ 9

III. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT DEFENDANT ROBINSON VASQUEZ GERMOSEN'S PROFFER PROTECTED STATEMENTS ........ 11

IV. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT CERTAIN EVIDENCE AS DIRECT EVIDENCE OR PURSUANT TO RULE 404(b). ........ 14

A. The Government Should Be Precluded from Introducing Evidence that Messrs. Clase and Ortiz Violated MLB Rule 21 or Concealed a Violation of MLB Rule 21 Through the MLBPA. ........ 14

B. The Court Should Preclude Evidence of Mr. Clase's Violations of MLB's Cell Phone Policy. ........ 18

C. Evidence of Mr. Vasquez's Alleged Concealment of His Phone is Inadmissible ........ 20

V. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT UNIDENTIFIED SUMMARY CHARTS PURSUANT TO FEDERAL RULE OF EVIDENCE 1006. ........ 21

VI. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT BETTOR-2'S DECLARATION AS A PRIOR CONSISTENT STATEMENT. ........ 22

VII. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING THE DEFENDANTS' "GOOD ACTS" OR NON-COMMISSION OF OTHER "BAD ACTS." ........ 23

A. Other Pitches Thrown by Mr. Clase Are Relevant and Admissible as Direct and Intrinsic Evidence. ........ 25

B. Even When Analyzed Under Rule 404(b), Other Pitches Thrown by Mr. Clase Are Admissible to Prove Lack of Intent. ........ 28

VIII. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE EVIDENCE OF GOOD CHARACTER UNDER RULE 404(a). ........ 30

IX. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE DEFENDANTS FROM OFFERING THEIR STATEMENTS AND STATEMENTS OF ALLEGED CO-CONSPIRATORS FOR THEIR TRUTH. ........ 32

X. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE DEFENDANTS FROM ADMITTING SWORN WITNESS DECLARATIONS AS DIRECT OR IMPEACHMENT EVIDENCE. ........ 36

A. The Subject Declarations Are Admissible Under Rule 806. ........ 36

B. The Bettor-1 Declaration is Admissible Under Rule 613(b), Even If Bettor-1 Testifies and Admits Making the Statements Contained in His Sworn Declaration. ........ 38

XI. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE THE DEFENDANTS FROM CALLING PABLO J. DAVIS AS A WITNESS. ........ 40

XII. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE IMPEACHMENT OF WITNESSES WITH AGENT-PREPARED REPORTS. ........ 42

XIII. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE CERTAIN EVIDENCE AS IRRELEVANT OR UNFAIRLY PREJUDICIAL. ........ 42

XIV. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR AN ORDER COMPELLING DISCLOSURE OF RULE 26.2(a) MATERIAL FIVE DAYS BEFORE A WITNESS'S TESTIMONY. ........ 45

CONCLUSION ........ 47

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. Ercole*,
763 F.3d 223 (2d Cir. 2014) .................................................... 43
*Arista Records LLC v. Lime Group LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011) .................................................... 34
*Berkovich v. Hicks*,
922 F.2d 1018 (2d Cir. 1991) .................................................... 28
*Bourjaily v. United States*,
483 U.S. 171 (1987) .................................................... 5
*Bruton v. United States*,
391 U.S. 123 (1968) .................................................... 12
*Cameron v. Community Aid for Retarded Children*,
335 F.3d 60 (2d Cir. 2003) .................................................... 33
*Gray v. Maryland*,
523 U.S. 185 (1998) .................................................... 13
*Kozak v. Liberty Mar. Corp.*,
729 F. Supp. 3d 277 (E.D.N.Y. 2024) .................................................... 39
*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d Cir. 2006) .................................................... 10
*S.E.C. v. Treadway*,
438 F. Supp. 2d 218 (S.D.N.Y. 2006) .................................................... 33
*Samia v. United States*,
599 U.S. 635 (2023) .................................................... 13
*Scrimo v. Lee*,
935 F.3d 103 (2d Cir. 2019) .................................................... 32
*Shannon v. United States,*
512 U.S. 573 (1994) .................................................... 43
*United States v. Aguirre-Parra,*
763 F. Supp. 1208 (S.D.N.Y. 1991) .................................................... 9
*United States v. Ali*,
870 F. Supp. 2d 10 (D.D.C. 2012) .................................................... 30
*United States v. Amato*,
No. 03-CR-1382 (NGG), 2006 U.S. Dist. LEXIS 34145 (E.D.N.Y. May 26, 2006) .................................................... 33
*United States v. Arena*,
180 F.3d 380 (2d Cir. 1999) .................................................... 39
*United States v. Balboa*,
No. 12 Cr. 196 (PAC), 2013 U.S. Dist. LEXIS 169095 (S.D.N.Y. Nov. 27, 2013) .................................................... 30
*United States v. Barrow*,
400 F.3d 109 (2d Cir. 2005) .................................................... 12

*United States v. Battaglia*,
No. 05 Cr. 774 (KMW), 2008 U.S. Dist. LEXIS 2829 (S.D.N.Y. Jan. 15, 2008) .................. 32
*United States v. Bradley,*
869 F.2d 121 (2d Cir. 1989) ........................................................................................ 22
*United States v. Brizuela*,
962 F.3d 784 (4th Cir. 2020) ........................................................................................ 26
*United States v. Cadet*,
No. 08-CR-458 (NGG), 2009 U.S. Dist. LEXIS 82957 (E.D.N.Y. Sep. 11, 2009) ................ 20
*United States v. Carboni*,
204 F.3d 39 (2d Cir. 2000) ........................................................................................ 19
*United States v. Chen*,
No. 22-cr-00158-ENV (E.D.N.Y. Oct. 17, 2024), ECF No. 366 ........................................... 46
*United States v. Cotton*,
823 F.3d 430 (8th Cir. 2016) ........................................................................................ 38
*United States v. Cox,*
No. CR-16-08202-001-PCT-ROS, 2018 U.S. Dist. LEXIS 229319 (D. Ariz. May 1, 2018). 19
*United States v. Damti*,
109 F. App'x 454 (2d Cir. 2004) ........................................................................... 28, 29
*United States v. Dawkins*,
999 F.3d 767 (2d Cir. 2021) ........................................................................................ 25
*United States v. DiMaria,*
727 F.2d 265 (2d Cir. 1984) ........................................................................................ 35
*United States v. Dolney*,
No. 04-CR-159 (NGG), 2005 U.S. Dist. LEXIS 45750 (E.D.N.Y. Sep. 1, 2005) .................. 19
*United States v. Doyle*,
No. 16-CR-506 (ALC), 2018 U.S. Dist. LEXIS 66980 (S.D.N.Y. Apr. 19, 2018) ................. 17
*United States v. Dupre*,
462 F.3d 131 (2d Cir. 2006) ........................................................................................ 34
*United States v. Dupree*,
706 F.3d 131 (2d Cir. 2013) ........................................................................................ 33
*United States v. Estes*,
793 F.2d 465 (2d Cir. 1986) ..................................................................................... 2, 4
*United States v. Fey*,
89 F.4th 903 (11th Cir. 2023) ...................................................................................... 21
*United States v. Fox*,
No. 23-CR-227 (NGG), 2025 U.S. Dist. LEXIS 141094 (E.D.N.Y. July 23, 2025) .............. 42
*United States v. Garcia*, 2
91 F.3d 127 (2d Cir. 2002) ..................................................................................... 19, 28
*United States v. Gentile*,
No. 21-CR-54 (RPK) (PK), 2024 U.S. Dist. LEXIS 108215 (E.D.N.Y. June 18, 2024)........ 21
*United States v. Gigante,*
166 F.3d 75 (2d Cir. 1999) .......................................................................................... 9

*United States v. Gonzalez*,
110 F.3d 936 (2d Cir. 1997) ... 25
*United States v. Grant*,
256 F.3d 1146 (11th Cir. 2001) ... 37, 38
*United States v. Harris*,
491 F.3d 440 (D.C. Cir. 2007) ... 32
*United States v. Hayes,*
219 F. App'x 114 (3d Cir. 2007) ... 28, 29
*United States v. Householder*,
645 F. Supp. 3d 844 (S.D. Ohio 2022) ... 43
*United States v. James*,
607 F. Supp. 3d 246 (E.D.N.Y. 2022) ... 23
*United States v. Jass*,
569 F.3d 47 (2d Cir. 2009) ... 12
*United States v. Jayice*,
No. 23 Cr. 251 (AKH), 2025 U.S. Dist. LEXIS 12432 (S.D.N.Y. Jan. 23, 2025) ... 46
*United States v. Jedi*,
339 F. Supp. 3d 19 (D.P.R. 2018) ... 13
*United States v. Johnson*,
469 F. Supp. 3d 193 (S.D.N.Y. 2019) ... 22
*United States v. Johnson*,
513 F.2d 819 (2d Cir. 1975) ... 17
*United States v. Jung*,
473 F.3d 837 (7th Cir. 2007) ... 17
*United States v. Kadir,*
718 F.3d 115 (2d Cir. 2013) ... 35
*United States v. Kaneshiro*,
No. 1:22-cr-00048-TMB-NC, 2024 U.S. Dist. LEXIS 49612 (D. Haw. Mar. 19, 2024) ... 30
*United States v. Lingat*,
No. 21-cr-573 (MKV), 2024 U.S. Dist. LEXIS 42301 (S.D.N.Y. Mar. 11, 2024) ... 12
*United States v. Lopez*,
870 F.3d 573 (7th Cir. 2017) ... 39, 41
*United States v. Lyle*,
919 F.3d 716 (2d Cir. 2019) ... 11
*United States v. McKeon*,
738 F.2d 26 (2d Cir. 1984) ... 16
*United States v. Mendlowitz*,
No. 17 Cr. 248 (VSB), 2019 U.S. Dist. LEXIS 220130 (S.D.N.Y. Dec. 20, 2019) ... 18
*United States v. Mitziga*,
No. 23 CR 242, 2024 U.S. Dist. LEXIS 120952 (N.D. Ill. July 10, 2024) ... 13
*United States v. Paccione,*
949 F.2d 1183 (2d Cir. 1991) ... 31

*United States v. Perez*,
387 F.3d 201 (2d Cir. 2004) ........ 21
*United States v. Persico,*
645 F.3d 85 (2d Cir. 2011) ........ 35
*United States v. Premises Known as 281 Syosset Woodbury Road*,
71 F.3d 1067 (2d Cir. 1995) ........ 2
*United States v. Pugh*,
945 F.3d 9 (2d Cir. 2019) ........ 3
*United States v. Pujana-Mena*,
949 F.2d 24 (2d Cir. 1991) ........ 31
*United States v. Quinones*,
511 F.3d 289 (2d Cir. 2007) ........ 25
*United States v. Roberts*,
660 F.3d 149 (2d Cir. 2011) ........ 12
*United States v. Rosario*,
111 F.3d 293 (2d Cir. 1997) ........ 37
*United States v. Rosemond*,
841 F.3d 95 (2d Cir. 2016) ........ 12
*United States v. Sager*,
227 F.3d 1138 (9th Cir. 2000) ........ 43
*United States v. Salameh*,
152 F.3d 88 (2d Cir. 1998) ........ 7
*United States v. Saneaux,*
365 F. Supp. 2d 493 (S.D.N.Y. 2005) ........ 11
*United States v. Santos*,
201 F.3d 953 (7th Cir. 2000) ........ 29
*United States v. Shuster*,
67 F. App'x 645 (2d Cir. 2003) ........ 19
*United States v. Sosa-Zarzuela*,
No. 21 Cr. 41 (PAC), 2022 U.S. Dist. LEXIS 205375 (S.D.N.Y. Nov. 10, 2022) ........ 40
*United States v. Strother*,
49 F.3d 869 (2d Cir. 1995) ........ 39
*United States v. Sun*,
No. 24-cr-00346-BMC (E.D.N.Y. Nov. 3, 2025), ECF No. 238 ........ 46
*United States v. Taylor*,
745 F.3d 15 (2d Cir. 2014) ........ 12
*United States v. Tellier*,
83 F.3d 578 (2d Cir. 1996) ........ 5
*United States v. Towne*,
870 F.2d 880 (2d Cir. 1989) ........ 26
*United States v. Tracy*,
12 F.3d 1186 (2d Cir. 1993) ........ 6

*United States v. Tropiano*,
418 F.2d 1069 (2d Cir. 1969) ........ 21
*United States v. Valencia*,
826 F.2d 169 (2d Cir. 1987) ........ 16
*United States v. Watson*,
No. 1:23-cr-00082-EK (E.D.N.Y. Apr. 11, 2024), ECF No. 125 ........ 45
*United States v. Weeks*,
No. 25-22-1, 2025 U.S. Dist. LEXIS 224630 (E.D. Pa. Nov. 14, 2025) ........ 13
*United States v. Westmoreland,*
312 F.3d 302 (7th Cir. 2002) ........ 4
*United States v. Whitehead*,
No. 22 Cr. 692 (LGS), 2024 U.S. Dist. LEXIS 29627 (S.D.N.Y. Feb. 21, 2024) ........ 23
*United States v. Whitfield,*
590 F.3d 325 (5th Cir. 2009) ........ 22
*United States v. Williams*,
756 F. App'x 73 (2d Cir. 2019) ........ 40
*United States v. Williams*,
930 F.3d 44 (2d Cir. 2019) ........ 35
*United States v. Wilson*,
750 F.2d 7 (2d Cir. 1984), *cert denied*, 479 U.S. 839 (1986) ........ 31
*United States v. Wolfenbarger*,
No. 16-CR-00519-LHK-1, 2020 U.S. Dist. LEXIS 22041 (N.D. Cal. Feb. 4, 2020) ........ 19
*United States v. Zayac*,
765 F.3d 112 (2d Cir. 2014) ........ 7
*United States v. Zhong*,
26 F.4th 536 (2d Cir. 2022) ........ 22
*Wade v. Mantello,*
333 F.3d 51 (2d Cir. 2003) ........ 32

**Statutes**

28 U.S.C. § 1746 ........ 40

**Rules**

Fed. R. Crim. P. 26.2(a) ........ 45, 46
Fed. R. Evid. 1006 ........ 21
Fed. R. Evid. 106 ........ 35
Fed. R. Evid. 401 ........ 44
Fed. R. Evid. 403 ........ 7, 9, 30, 39
Fed. R. Evid. 404(a)(2) ........ 31
Fed. R. Evid. 404(b) ........ passim
Fed. R. Evid. 613(b) ........ 36, 39
Fed. R. Evid. 801 advisory committee's note ........ 34
Fed. R. Evid. 801(d)(1)(A) ........ 36

Fed. R. Evid. 801(d)(1)(B) .......... 22
Fed. R. Evid. 801(d)(2) .......... 5
Fed. R. Evid. 801(d)(2)(E) .......... 5, 9, 37
Fed. R. Evid. 803(3) .......... 35
Fed. R. Evid. 806 .......... 36, 38
Fed. R. Evid. 807(a)(1) .......... 36

**Other Authorities**

Ltr. from John Roberts, Chief Justice of the United States Supreme Court, to Mike Johnson, Speaker, United States House of Representatives (Apr. 8, 2026) .......... 36
Mike Vorkunov, *MLB probe, alleged deception to play key role in Clase-Ortiz pitch-rigging trial*, THE ATHLETIC (Sept. 1, 2026) .......... 17

Defendant Emmanuel Clase de la Cruz respectfully submits this Response in Opposition to the United States' Motions *In Limine*, ECF No. 212 ("U.S. MIL").

**PRELIMINARY STATEMENT**

The government's fourteen motions *in limine* are a transparent attempt to stack the deck and to deprive Mr. Clase of his right to a fair trial. The government seeks to introduce irrelevant, inadmissible, and prejudicial evidence against Mr. Clase, while simultaneously impeding his ability to present necessary direct evidence that provides the jury with essential context and refutes the government's central theory of the case. Elsewhere, the government improperly seeks advance approval to admit swathes of evidence without prior disclosure to Mr. Clase or the Court. Mr. Clase has a Constitutional right to a fair trial, and the Court must reject the government's efforts to infringe upon that right. Accordingly, each of the government's motions *in limine* should be denied.

**ARGUMENT**

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

## II. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT HEARSAY STATEMENTS OF ALLEGED CO-CONSPIRATORS.

The government's motion to introduce a host of "co-conspirator" statements pursuant to Rule 801(d)(2)(E) is premature because the government has offered argument, not evidence, of the exception's application. The Court should thus deny the government's motion.

As explained above, before a statement can be admitted under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence: (1) "that a conspiracy existed"; (2) that the conspiracy "included the defendant and the declarant"; and (3) "that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante,* 166 F.3d 75, 82 (2d Cir. 1999). Again, there must be "independent corroborating evidence" of the declarant and defendant's participation in the conspiracy. *See id.* "The proper procedure is to determine the issues surrounding admissibility (the existence of the conspiracy, a particular defendant's role, whether the statements were made in furtherance of the conspiracy) during the trial, and, if necessary, outside the presence of the jury." *United States v. Aguirre-Parra,* 763 F. Supp. 1208, 1217 (S.D.N.Y. 1991).

The government here has offered no proof of any kind regarding the alleged conspiracy. Instead, the government has simply regurgitated certain communications and alleged that some of these communications occurred on or around the same days that bettors successfully wagered on Mr. Clase. For example, the government has described communications that use the term "rooster," alleged that this was a code word to mean fixed pitch, and alleged that these communications correspond to successful wagers on Mr. Clase's pitches. *See* U.S. MIL at 5-7. But the government has failed to lay any sort of foundation for this code. Likewise, the government alleges, without any evidentiary foundation, that "Activo" was a code to mean that bettors should be ready to place wagers on Mr. Clase's pitches. *See id.* at 5. [redacted][6] Given the "paucity of the government's proof" with respect to the statements described in the government's motion *in limine*,

[redacted]

[6] Except for personally identifiable information for non-expert witnesses and materials protected by a valid claim of privilege, the entire record in this case should be unsealed. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (recognizing both a common law and a First Amendment right of public access to judicial documents). In a forthcoming motion related to the government's failure to provide exculpatory information in violation of the Rule 5(f) Order in this case, Mr. Clase intends to ask that the Court enter an order unsealing the entire record and directing the government to propose narrowly tailored redactions solely to remove personal identifying or privileged information. Nevertheless, Mr. Clase acknowledges that the government produced certain materials discussed herein as "Sensitive" under the protective order governing this case, ECF No. 37. Out of an abundance of caution, Mr. Clase has redacted portions of this brief (highlighted in gray) quoting or describing "Sensitive" materials from the public docket.

this Court must not allow the prosecution to introduce co-conspirator hearsay statements until the "government . . . elicit[s] and place[s] before the jury all the evidence it will rely upon to satisfy all prerequisites of admissibility." *See United States v. Saneaux,* 365 F. Supp. 2d 493, 503-04 (S.D.N.Y. 2005). While Mr. Clase cannot otherwise respond to undisclosed information, he reserves the right to challenge the sufficiency of the government's proof should the government seek to meet its currently unfulfilled evidentiary obligations in the future.

## III. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT DEFENDANT ROBINSON VASQUEZ GERMOSEN'S PROFFER PROTECTED STATEMENTS.

In its order granting Mr. Clase's motion to sever Count Five, the Court denied Mr. Clase's request to exclude Mr. Vasquez's proffer statements from the trial of Counts One through Four because the Court was "not convinced that any statement the Government wishes to introduce could not be appropriately redacted in accordance with the Supreme Court's recent guidance in *Samia* and the Second Circuit's precedents." Order at 31-32, ECF No. 208. With the benefit of the government's proposed redactions, the Court must now conclude that the introduction of Mr. Vasquez's proffer statements at trial would violate Mr. Clase's rights under the Confrontation Clause and deny the government's motion *in limine*.

As an initial matter, the government's request for a pretrial order declaring Mr. Vasquez's statements admissible is premature. Courts in this circuit apply a two-part test for determining whether a proffer waiver has occurred, asking (1) "whether the defendant has offered any evidence or made a factual assertion that would trigger" the waiver and, (2) "whether the proffer statement 'fairly rebut[s]' the fact asserted or evidence offered or elicited." *United States v. Lyle*, 919 F.3d 716, 732 (2d Cir. 2019) (citation omitted).[7] The district court simply "cannot rule until it has the

---

[7] The government suggests that the waiver can be easily triggered during opening statements or by questions on cross-examination, but the Second Circuit has instructed that "[p]articular caution is required when the purported fact is

information necessary to determine whether the waiver has been triggered and whether the proffered statement is factually inconsistent with the fact asserted or evidence elicited at trial." *United States v. Lingat*, No. 21-cr-573 (MKV), 2024 U.S. Dist. LEXIS 42301, at *28 (S.D.N.Y. Mar. 11, 2024) (reserving decisions related to proffer waiver until trial).

In this case, however, the waiver issue is moot because the government's proposed redactions would violate Mr. Clase's rights under the Confrontation Clause. Mr. Clase, the government, and the Court all agree that admitting Mr. Vasquez's proffer statements at trial without any redactions would violate *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny. *See* Order at 31, ECF No. 208. Thus, a redacted version of his proffer statements may only be admitted if the redaction is "adequate to remove the overwhelming probability that a jury will not follow a limiting instruction that precludes its consideration of a redacted confession against a defendant other than the declarant." *United States v. Taylor*, 745 F.3d 15, 28 (2d Cir. 2014) (internal quotation marks omitted). The Second Circuit has "urge[d] district courts, wherever possible, to eliminate completely from a confession any mention of a non-declarant defendant's existence." *United States v. Jass*, 569 F.3d 47, 56 n.5 (2d Cir. 2009). Where that is not possible, "neutral-word substitution" may be permissible only "if the altered statement uses words 'that might actually have been said by a person admitting his own culpability in the charged conspiracy *while shielding the specific identity of his confederate*.'" *Taylor*, 745 F.3d at 28 (quoting *Jass*, 569 F.3d at 62) (emphasis added); *see also Jass*, 569 F.3d at 61 ("[T]he critical inquiry . . . is whether the neutral allusion sufficiently conceals the fact of explicit identification").

---

asserted by counsel rather than through witness testimony or exhibits." *United States v. Roberts*, 660 F.3d 149, 158 (2d Cir. 2011); *see also United States v. Rosemond*, 841 F.3d 95, 112 (2d Cir. 2016) (recognizing that "questions challenging the credibility of a witness do not trigger the waiver provision absent factual assertions contradicting the proffer statement"). And if a factual assertion has been implied, the court is required "to consider carefully what fact, if any, has actually been implied to the jury before deciding whether proffer statements fairly rebut it." *United States v. Barrow*, 400 F.3d 109, 118-19 (2d Cir. 2005).

Here, the government's blanket use of "[PERSON-1]" does not conceal the fact of explicit identification at all; rather, it highlights it. Accordingly, the government's proposal is akin to the "blank space" or "word 'deleted'" that the Supreme Court rejected in *Gray v. Maryland*, 523 U.S. 185, 192 (1998) (holding that redacted confessions "that simply replace a name with . . . obvious indications of alteration" fall within *Bruton* because they "refer[] directly to the 'existence' of the nonconfessing defendant"). The proposal is likewise inconsistent with *Samia v. United States*, where the Supreme Court only approved of a neutral pronoun substitution because it "avoid[ed] any obvious indications of redaction." 599 U.S. 635 (2023).

It is clear that the government cannot redact Mr. Vasquez's alleged confession in a manner that complies with *Bruton*, and the Court should not give the government another bite at the apple. There is only one person on earth who could have provided bettors with advanced information about the pitches that Mr. Clase intended to throw—Mr. Clase. *Cf. United States v. Jedi*, 339 F. Supp. 3d 19, 24 (D.P.R. 2018) (granting severance where co-defendant's "participation in the incriminating acts [was] heavily ingrained" in the confession and redaction was "challenging to the point of impracticality"). Neutral terminology like "the other person" would be completely inadequate, because the contextual statements in Mr. Vasquez's proffer—[redacted]—make it clear that Mr. Vasquez implicated Mr. Clase. *See United States v. Weeks*, No. 25-22-1, 2025 U.S. Dist. LEXIS 224630, at *10 (E.D. Pa. Nov. 14, 2025) ("Once those contextual statements are included, the 'other person' cannot plausibly be anyone but [co-defendant]; the context itself functions as an identification."); *United States v. Mitziga*, No. 23 CR 242, 2024 U.S. Dist. LEXIS 120952, at *9 (N.D. Ill. July 10, 2024) ("The sanitized reference . . . is not a generic reference to 'another guy,' 'someone else,' or 'other people'—it's a specific

reference to a member of the golf club who has property in the south suburbs that's up for assessment."). Protecting Mr. Clase's Sixth Amendment rights requires the exclusion of Mr. Vasquez's proffer statements from the trial of Counts One through Four.[8]

## IV. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT CERTAIN EVIDENCE AS DIRECT EVIDENCE OR PURSUANT TO RULE 404(b).

The government asks the Court to admit *in limine* three categories of evidence: (1) evidence that Messrs. Clase and Ortiz "violated MLB Rule 21, the prohibition on betting on baseball" and "conceal[ed] their violations" from MLB investigators; (2) evidence that Mr. Clase violated MLB's prohibition on using cellular phones during games; and (3) evidence that Mr. Vasquez "conceal[ed] the existence of his primary phone" when arrested by the FBI. U.S. MIL at 37-38. The government contends that these broad categories of evidence are admissible as either "direct evidence of the charged criminal scheme" or admissible under Federal Rule of Evidence 404(b). *Id.* at 37. The Court should deny the government's motion *in limine*.

### A. The Government Should Be Precluded from Introducing Evidence that Messrs. Clase and Ortiz Violated MLB Rule 21 or Concealed a Violation of MLB Rule 21 Through the MLBPA.

Mr. Clase agrees that MLB Rule 21, which penalizes betting on baseball with a permanent ban from the sport, is central to this case. *See* Ex. 5, MLB Rule 21. Specifically, the harsh sanction associated with betting on baseball drastically outweighed the benefits that Mr. Clase allegedly received and explains why he would *never* have engaged in the alleged conspiracy. Accordingly, Mr. Clase does not object to the admission of MLB Rule 21, MLB Rule 21 training materials, or the attendance sheets certifying that Mr. Clase attended MLB Rule 21 training sessions.

[8] Mr. Clase takes no position as to whether the proffer-protected statements may be introduced in the bifurcated portion of the trial. However, Mr. Clase expressly objects to the government's attempt to leverage its decision to charge and try Messrs. Clase and Vasquez together as a basis to trample Mr. Clase's constitutional right to confront his accusers. Mr. Vasquez's alleged statements would absolutely be inadmissible in a trial involving only Mr. Clase if Mr. Vasquez did not testify. The analysis is no different merely because Mr. Vasquez happens to be on trial at the same time.

The government cannot, however, introduce evidence or argument that Mr. Clase (or Mr. Ortiz) *violated* MLB Rule 21. MLB disciplinary processes are governed by a collective bargaining agreement between MLB and the MLBPA. Article XI section C, "Special Procedure with Regard to Certain Disciplinary Action," grants the Commissioner the power to fine or suspend players for conduct on the playing field or in the ballpark. Ex. 6, Excerpts from 2022-2026 Collective Bargaining Agreement, at EDNY_008040. Players disciplined for conduct on the field can only appeal to the Commissioner, and the Commissioner has complete discretion to determine whether there is "just cause for the penalty imposed." *Id.* at EDNY_08044. To date, the Commissioner has not decided that Messrs. Clase or Ortiz violated MLB Rule 21. Indeed, MLB halted its investigation once the government began its criminal investigation. Any indication that MLB already decided the defendant's guilt is false and would cause substantial prejudice.

Even if the government's argument that the defendants "violated" MLB Rule 21 was factually accurate (and it is not), describing how such a violation would be adjudicated by MLB would require a detour into the vastly differing burdens of proof in an MLB proceeding versus a criminal trial. This would risk substantial juror confusion. The Court should not allow the government to introduce evidence or argument that the defendants "violated" MLB Rule 21. Further, the government should not be permitted to reference that MLB placed Messrs. Clase and Ortiz on non-disciplinary leave in July 2025 pending the results of the investigation. The government alleges a conspiracy from May 2023 to June 2025, there have been no factual findings by MLB, and allowing the jury to hear that the defendants were "suspended" or "placed on leave" would only serve to create the impression that their guilt has already been decided. It has not. As evidenced by the "non-disciplinary" nature of his leave, Mr. Clase agreed to a voluntary separation

that expressly does not include an admission or finding of wrongdoing so he could first contest the government's allegations in a proceeding where his liberty is at issue.

The government's request to introduce allegedly "false statements" made to the MLB, U.S. MIL at 39, is even more improper and violates binding Second Circuit precedent. A fact the government conveniently fails to mention is that the statements at issue were made in letters from Hiram M. Arnaud, an attorney with the MLBPA. At the time of Mr. Arnaud's communications with MLB, Mr. Arnaud had an attorney-client relationship with Messrs. Ortiz and Clase, and the defendants' communications with Mr. Arnaud were privileged. The Second Circuit has repeatedly "emphasized that care must be exercised in the criminal context in determining under what circumstances attorney statements may be used against a client." *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987) (citing *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984)). In *Valencia*, the government sought a pretrial ruling that an attorney's allegedly false exculpatory statements were admissible to show the client's consciousness of guilt. *Id.* at 171, 172 n.1. The district court excluded the statements, and the Second Circuit affirmed, finding that "the Government's claim to the statements [was] not strong" because the statements were "not offered to show admission of an element of the offense." *Id.* at 173. Moreover, the Second Circuit reasoned that "[w]eighing against use of the statements are the defendant's interests in retaining the services of his counsel, assuring uninhibited discussions between his counsel and the prosecutor, and avoiding the risk of impairing his privilege against self-incrimination." *Id.* at 173-74.

*Valencia* controls the analysis and the Court should exclude the letters from Mr. Arnaud to the MLB and their attachments. The statements from Mr. Arnaud to MLB are not an element of any offense. Rather, the statements occurred *after* the alleged conspiracy ended. The only possible relevance of this evidence is to show consciousness of guilt, which the Second Circuit has

recognized is only "circumstantial evidence" and is "insufficient proof on which to convict." *United States v. Johnson*, 513 F.2d 819, 824 (2d Cir. 1975). Admitting Mr. Arnaud's letters would cause a mini-trial over the privileged investigation that MLBPA conducted, specifically how Mr. Arnaud conducted the investigation and the content of attorney-client privileged communications. *See United States v. Doyle*, No. 16-CR-506 (ALC), 2018 U.S. Dist. LEXIS 66980, at *63 (S.D.N.Y. Apr. 19, 2018) (excluding attorney statements that would "unavoidably result in a mini-trial about the adequacy of defense counsel's representation, the truth or falsity of his statements, and the merits of the legal arguments he put forward"). Moreover, admitting such tangentially relevant attorney statements would mean that "defendants will be chilled from sharing information with their attorneys, defense attorneys will be deterred from vigorous advocacy, and the attorney-client relationship will be impaired." *United States v. Jung*, 473 F.3d 837, 842 (7th Cir. 2007).

[redacted]

---

[redacted]

[redacted]

### B. The Court Should Preclude Evidence of Mr. Clase's Violations of MLB's Cell Phone Policy.

Evidence of Mr. Clase's alleged violations of MLB's cell phone policy is inadmissible for several reasons. First, while the government does not make clear what types of evidence it seeks to introduce about Mr. Clase's alleged violations, the materials produced through Rule 16 discovery about these alleged violations are rank hearsay. Regarding the alleged violation on April 24, 2024, the government produced a single email stating that "During the bottom of the 1st inning, Emmanuel Clase was observed using his phone in the home clubhouse." Ex. 7, Apr. 26, 2024 Email re: CLE – Violation of Regulations. And for the alleged violation on June 23, 2024, the government produced a letter that Mr. Clase was "observed using [his] cellphone in the home clubhouse during the bottom of the fifth inning of [his] Club's game against the Toronto Blue Jays." Ex. 8, June 24, 2024 Ltr. re: Violation of Major League Baseball Regulation 1-2. Simply put, the government fails to offer any evidence of how these materials, including the second level of hearsay embedded in each regarding the actual observation of Mr. Clase on his phone, qualify under any of the hearsay exceptions. *See United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 U.S. Dist. LEXIS 220130, at *30 (S.D.N.Y. Dec. 20, 2019) ("The proponent of a hearsay statement bears the burden of demonstrating its admissibility."); *see also United States v. Shuster*, 67 F. App'x 645, 647 (2d

Cir. 2003) (affirming district court's exclusion of documents that contained "a double hearsay problem in that her knowledge was based on statements made to her by others").

Second, the alleged violations are not "inextricably intertwined" with the charged conduct as the government contends. *See* U.S. MIL at 44-45. The government concedes that Mr. Clase "did not throw a fixed pitch on either violation date." *Id.* at 44. But, according to the government, because Mr. Clase's "use of a phone during games was critical in facilitating the charged crimes," the evidence is admissible. *Id.* In *United States v. Carboni*, the court considered the fact that the false inventory entries "occurred at about the same time" as other false statements to be a main factor in finding the events "intertwined." 204 F.3d 39, 44 (2d Cir. 2000). Here, by contrast, the government has only identified two instances where Mr. Clase allegedly used his phone during a game in furtherance of the conspiracy, and both occurred *over nine months after* the alleged June 2024 violation. This temporal gap requires application of Rule 404(b), not the "inextricably intertwined" doctrine. *See United States v. Cox,* No. CR-16-08202-001-PCT-ROS, 2018 U.S. Dist. LEXIS 229319, at *2 (D. Ariz. May 1, 2018) (finding that communications that "occurred several months before" the charged conduct were not "inextricably intertwined"); *United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2020 U.S. Dist. LEXIS 22041, at *3-4 (N.D. Cal. Feb. 4, 2020) (finding that a "four-to-five month gap" was "too temporally distant" and that the government could prove its case without evidence of the prior acts); *United States v. Dolney*, No. 04-CR-159 (NGG), 2005 U.S. Dist. LEXIS 45750, at *5 (E.D.N.Y. Sep. 1, 2005) (holding that a two-year gap did not satisfy the requirement that intertwined acts be "contemporaneous").

Finally, the evidence is not admissible under Rule 404(b). In the Second Circuit, Rule 404(b) does not give the government "carte blanche" to offer "any prior act of the defendant in the same category of crime." *United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002). Rather,

"[w]ithout a connection between the two acts, the prior act is not relevant or probative and is inadmissible." *Id.* Here, the government contends that Mr. Clase's prior use of his phone during games is admissible "to establish his ready access to his phone during games, opportunity, plan, and absence of mistake." U.S. MIL at 45. But access to a cell phone in April and June 2024 says nothing about access to a cell phone in April and May 2025, leaving the jury to be confused as to the import of the evidence. Instead, the government's footnote admission is telling. Specifically, the government admits that it "seeks to admit these instances as evidence of Clase's disregard for MLB rules." *Id.* at 40. In other words, the government seeks to admit the violations of MLB's cell phone policy to show that Mr. Clase has a *propensity* for breaking MLB rules. This is precisely the type of inference that Rule 404(b) prohibits, and the Court must exclude the prior cell phone violations. *See United States v. Cadet*, No. 08-CR-458 (NGG), 2009 U.S. Dist. LEXIS 82957, at *5 (E.D.N.Y. Sep. 11, 2009) (excluding personal tax history in a prosecution for helping others file fraudulent tax returns because the evidence was only relevant to show that defendant had "a propensity to disregard tax law").

### C. Evidence of Mr. Vasquez's Alleged Concealment of His Phone is Inadmissible.

The government incorrectly contends that Mr. Vasquez's "attempt to conceal his phone from law enforcement when he was arrested is direct evidence of his participation in the charged conspiracies" and "necessary to complete the story of the crime." U.S. MIL at 45-46. But neither Mr. Vasquez nor any of his alleged co-conspirators are charged with a conspiracy to obstruct justice. Rather, the defendants are charged with a conspiracy to commit wire fraud that, according to the indictment, ended *months before* Mr. Vasquez's arrest. While Mr. Vasquez is charged with making specific false statements to the FBI, that count will be tried in a bifurcated portion of the trial, and any evidence needed to complete that story must be constrained to the bifurcated portion.

At most, Mr. Vasquez's alleged concealment of his "primary" cell phone is evidence of consciousness of guilt. But evidence of a party's consciousness of guilt is only relevant if "reasonable inferences can be drawn from it and if the evidence is probative of guilt." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004). Directing law enforcement to one phone, then directing them to a second, is in no way probative of guilt. If the Court disagrees, however, the jury must be instructed that the evidence is only admissible against Mr. Vasquez. *See United States v. Tropiano*, 418 F.2d 1069, 1080 (2d Cir. 1969) (affirming use of "false exculpatory statements" at trial where "[p]rior to the admission of this testimony and again in its charge to the jury, the court was careful to instruct the jury that this testimony must be limited only to the charge against [the co-defendant who made the statements]"); *see also United States v. Fey*, 89 F.4th 903, 913 (11th Cir. 2023) (affirming use of consciousness of guilt evidence where district court instructed the jury that it could not consider the evidence as evidence of co-defendant's guilt or consciousness of guilt).

## V. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT UNIDENTIFIED SUMMARY CHARTS PURSUANT TO FEDERAL RULE OF EVIDENCE 1006.

The government seeks a pretrial ruling allowing it to admit undisclosed summaries of "relevant financial transfers from peer-to-peer payment platforms to co-conspirators' bank accounts" under Federal Rule of Evidence 1006. U.S. MIL at 47. Mr. Clase agrees with the general principle that voluminous bank records may be appropriately summarized and admitted into evidence via Rule 1006. *See, e.g.*, *United States v. Gentile*, No. 21-CR-54 (RPK) (PK), 2024 U.S. Dist. LEXIS 108215, at *3 (E.D.N.Y. June 18, 2024). But a pretrial ruling of admissibility, without disclosure of the summary itself or even which specific records will be summarized is wholly

inappropriate.[10] *See United States v. Johnson*, 469 F. Supp. 3d 193, 227 (S.D.N.Y. 2019) ("While the introduction of such summary charts may be proper, the Court cannot rule on the admissibility of summary charts and related witness testimony until the charts have been produced to the Court and defense counsel, and the nature of the underlying evidence has been made clear."). Indeed, any charts that are merely "pedagogical devices" that organize evidence for the jury are not admissible evidence. *See United States v. Bradley,* 869 F.2d 121, 123 (2d Cir. 1989); *see also United States v. Whitfield,* 590 F.3d 325, 364 (5th Cir. 2009) (cautioning against allowing parties to use Rule 1006 summaries to repeat their entire case to the jury). Accordingly, the Court should defer ruling on any summary charts until the underlying charts have been produced and the defense has been given ample time to verify the voluminous underlying information.

## VI. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT BETTOR-2'S DECLARATION AS A PRIOR CONSISTENT STATEMENT.

The government seeks to admit a declaration that Bettor-2 provided to MLB investigators as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B). U.S. MIL at 52. [redacted]

[10] The government's request for a sight-unseen ruling of admissibility is even more problematic due to the government's potentially related failure to sufficiently disclose the opinions and methodologies of its proposed expert witness, Professor Daniel Taylor. Mr. Clase continues to preserve his ability to object to the government's proffered expert testimony and summary exhibits if the government sufficiently discloses them and will seek to preclude any "illegitimate and impermissible substitution of expert opinion for factual evidence." *See United States v. Zhong*, 26 F.4th 536, 555-66 (2d Cir. 2022) (vacating the defendant's conviction, in part, because the district court allowed the government's expert to improperly "interpret the government's evidence and give prejudicial testimony that was largely irrelevant").

[redacted] In any event, until Bettor-2 actually testifies at trial and the Court is in position to determine whether and how his credibility is attacked, it is "premature to admit a prior consistent statement." *See United States v. Whitehead*, No. 22 Cr. 692 (LGS), 2024 U.S. Dist. LEXIS 29627, at *2 (S.D.N.Y. Feb. 21, 2024); *see also United States v. James*, 607 F. Supp. 3d 246, 265 (E.D.N.Y. 2022) (reserving ruling on admission of prior consistent statement until after witness testified and was cross-examined by defense counsel).

## VII. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING THE DEFENDANTS' "GOOD ACTS" OR NON-COMMISSION OF OTHER "BAD ACTS."

Contrary to the government's arguments otherwise, evidence pertaining to pitches thrown by Mr. Clase that the government does not allege were fixed is relevant direct evidence that is admissible at trial. Since the beginning of its case against Mr. Clase, the government has alleged a sweeping conspiracy and continuing offense limited only by time. *See, e.g.*, Superseding Indictment ¶ 61, ECF No. 80 (alleging a conspiracy to commit wire fraud from May 2023 to June 2025). To that end, the government has been clear that it intends to introduce evidence at trial regarding pitches not named in the indictment.[11] Astoundingly, the government argues that Mr.

[11] [redacted]

Clase may not introduce his own evidence of pitches not named in the indictment. The government's extraordinary attempt to declare itself the sole arbiter of what separates a sporting act from a crime usurps the jury's role as factfinder and cannot be reconciled with its independent obligation to ensure due process.[12] The jury cannot fairly decide whether a given pitch was a criminal act unless it can consider the totality of the circumstances under which the pitch was thrown, an analysis that necessarily includes comparison with other pitches thrown in similar situations that the government has not unilaterally declared to be criminal.

The government argues that "the only possible purpose" Mr. Clase would have for introducing evidence of pitches thrown for legitimate, baseball-strategy reasons "would be to try

[12] The government's attempt to preclude evidence of pitches that do not fit its theory is especially egregious because the government still has not definitively identified which pitches it will claim at trial were criminal acts. [redacted] In light of that *Brady* violation, and as will be fully addressed in the forthcoming motion related to the government's discovery misconduct, the Court should order the government to disclose, definitively and immediately, which pitches it alleges were fixed, along with the methodology and good-faith basis supporting its ability to prove each allegation beyond a reasonable doubt, which necessarily requires the immediate and ongoing disclosure of any contrary information provided by the government's witnesses.

As pertinent to this response, the government's motion to exclude pitches that deprive the jury of necessary context is not a legitimate evidentiary request. It is a demand that no one—not the Court, and not the defendants whose liberty and careers are at stake—be permitted to know in advance which pitches the government will label as crimes, how the government made that determination, or why every other pitch ever thrown in baseball history must be off limits to the defense. That position is incompatible with due process, eviscerates Mr. Clase's ability to adequately prepare for and defend himself at trial, and cannot be tolerated.

to prove propensity—that is, an argument by the defense that if the defendants threw pitches on some occasions that were not fixed . . . then on other occasions they would not have done so." U.S. MIL at 55. Counsel for Mr. Clase understand that a propensity-based argument is inappropriate and agree that they will not argue that the absence of fixed-pitches during certain games is evidence that Mr. Clase acted in conformity with those prior good acts on other occasions.[13] Instead, Mr. Clase solely seeks to use evidence of pitches that the government does not allege were thrown in furtherance of the conspiracy as direct, intrinsic evidence to negate the conspiracy charges by demonstrating to the jury that the government asks them to draw impermissible inferences on whether any pitch provides evidence that Mr. Clase knowingly and intentionally intended to commit a crime. Accordingly, the Court should deny the government's motion *in limine*.

### A. Other Pitches Thrown by Mr. Clase Are Relevant and Admissible as Direct and Intrinsic Evidence.

Evidence pertaining to other pitches thrown by Mr. Clase is intrinsic, direct evidence that is allowable at trial. As the government correctly acknowledged in its own motion, evidence of uncharged activity is admissible, "without reference to Rule 404(b), when it . . . provides the jury with background for the events alleged in the indictment, or if it arose out of the same transaction or series of transactions as the charged offense." U.S. MIL at 41 (citing *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997)). The evidence may also be admitted if the conduct is "inextricably intertwined with the evidence regarding the charged offense" because, in such circumstances, the evidence "is necessary to 'complete the story of the crime on trial.'" *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (quoting *United States v. Towne*, 870 F.2d

[13] *Cf. United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) (affirming exclusion of evidence that a sports agent charged with paying bribes to basketball coaches did not pay bribes to other, more influential, coaches).

880, 886 (2d Cir. 1989)). As recognized by the Fourth Circuit, this requires a "case-by-case, fact-based" analysis. *United States v. Brizuela*, 962 F.3d 784, 794 (4th Cir. 2020) (collecting law).

Evidence of Mr. Clase's other pitches is inextricably intertwined with evidence of the conspiracy charged and necessary to complete the story. At trial, the jury will be tasked with deciding if certain (as yet, unidentified) pitches were thrown for legitimate, baseball-strategy reasons or in furtherance of a scheme to defraud betting companies. The only possible way for the jury to make this determination is by understanding the full picture, and other pitches thrown to the same hitter or in the same game situation are crucial to this process.

In isolation, any single pitch in the dirt can be painted as nefarious. For example, the government alleges that, on June 3, 2023, Mr. Clase threw a pitch in the dirt to Ryan Jeffers in furtherance of the conspiracy. *See* Superseding Indictment ¶ 25, ECF No. 80. Jeffers is one of the best hitting catchers in baseball, and, in 2023, was in the middle of his breakout season. Specifically, in May 2023, Jeffers had career highs for exit velocity and launch angle, statistics that indicate how hard and far a hitter is hitting the baseball. Accordingly, at this time, all pitchers in MLB, including Mr. Clase, threw a higher percentage of low pitches to Jeffers to avoid giving him the chance to hit the ball. Evidence of other pitches thrown to Jeffers are important and necessary context for Mr. Clase's legitimate baseball strategy of attacking the hitter. Furthermore, Professor Scott Powers will testify that a pitch in the dirt—the end-result of a pitch that misses the pitcher's perceived target by more than two standard deviations—is expected to occur every 20 pitches.[14] Accordingly, evidence of additional pitches is necessary to explain how a well-informed bettor could have accurately predicted the way Mr. Clase would pitch to Jeffers. And this analysis only deals with pitches that are visually questionable to an uninformed viewer. Many of the pitches

---

[14] For context, MLB pitchers collectively throw more than 700,000 pitches per season. MLB, *Statcast*, https://www.mlb.com/glossary/statcast (last visited Sept. 9, 2026).

the government included in its subject-to-change list of pitches that it may claim at trial were crimes were strikes that visually appear to be examples of Mr. Clase successfully executing his craft at the outermost limit of human capability. If the Court prevents Mr. Clase from presenting evidence of pitches thrown in similar situations to those alleged as crimes, the jury will have, at best, an incomplete view of the specific pitches at issue and, at worst, an intentionally misleading recitation of what occurs during a normal MLB game.

Moreover, Mr. Clase must be allowed to present evidence of uncharged pitches to attack the credibility of government witnesses. [redacted] Mr. Clase must also be allowed to present evidence of high-dollar wagers made by Bettor-1 (and others) that lost.[15] Any loss experienced by Bettor-1 is wholly inconsistent with the allegation that Mr. Clase engaged in a conspiracy over three baseball seasons to defraud betting companies. Barring this evidence would improperly insulate Bettor-1 from attacks on his credibility and violate due process.

For the above reasons, Mr. Clase must be allowed to present direct evidence and testimony related to other pitches thrown that the government does not allege were in furtherance of the conspiracy. Any other evidentiary ruling would prevent Mr. Clase from adequately defending himself.

---

[redacted]

### B. Even When Analyzed Under Rule 404(b), Other Pitches Thrown by Mr. Clase Are Admissible to Prove Lack of Intent.

Even under the government's legally infirm claim that Rule 404(b) governs the admissibility of direct evidence that refutes the existence of the alleged conspiracy, its motion fails and Mr. Clase's other pitches remain admissible.

Rule 404(b) provides, "Evidence of any other . . . act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of the other act is admissible, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see also United States v. Hayes,* 219 F. App'x 114, 116 (3d Cir. 2007) ("As is true with bad act evidence, evidence of good acts is also admissible for a proper purpose such as motive, intent, absence of mistake, etc."). The Second Circuit takes an "inclusionary approach" to other acts evidence, and the district court has "broad discretion in decisions relating to extrinsic acts." *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (internal quotations and citations omitted). Accordingly, this Court may admit evidence of other acts if the evidence is "relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). "The more similar the act or state of mind is to the charged crime, the more relevant it becomes." *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000); *see also Garcia*, 291 F.3d at 137 (requiring "a similarity or some connection between the prior and current acts").

The government contends that "[e]vidence of past 'good acts' by a defendant is generally not probative unless a defendant is alleged to have 'always' or 'continuously' committed 'bad acts.'" U.S. MIL at 54 (quoting *United States v. Damti*, 109 F. App'x 454, 455-56 (2d Cir. 2004)).

But the government deceptively omits the end of the *Damti* quote, which recognizes that "good acts" are probative "where the evidence of 'good acts' would undermine the underlying theory of a criminal prosecution." *Damti*, 109 F. App'x at 456 (citing *United States v. Santos*, 201 F.3d 953, 962 (7th Cir. 2000)). For example, in *Santos*, the government accused a City Treasurer of extorting campaign contributions from government contractors by denying government business to low bidders who refused to contribute. *Santos*, 201 F.3d at 962. The district court refused to admit evidence "that some of the recalcitrant contractors were not cut off and that nonextorted low bidders didn't always get the office's business" on the grounds that this was improper "good acts" evidence because "the government was not contending that *every* transaction by the City Treasurer's office during the period covered by the indictment was corrupt." *Id.* The Seventh Circuit reversed, finding that the evidence was admissible to cast doubt on the government's theory that contractors were cut off "*because* they had refused to 'belly up.'" *Id.*

Mr. Clase's other pitches are relevant to issues other than character—namely, his intent, preparation, and plans to conduct himself in a manner to get MLB hitters out—and are admissible. Specifically, the government's theory is that Mr. Clase threw pitches at certain speeds and in certain locations *because* his alleged co-conspirators placed bets on the pitches. Every pitch that Mr. Clase threw at those speeds and in those locations for which the alleged co-conspirators did *not* place bets—including, but not limited to, as his first pitch of an appearance or to the same hitter as an allegedly fixed pitch—casts doubt on the government's theory. *See Santos*, 201 F.3d at 962. "The issue here is not [Mr. Clase's] good character. Rather, it is his conduct." *Hayes*, 219 F. App'x at 117 (holding that evidence of the defendant conducting himself in a manner that was consistent with company policy "and inconsistent with a conspiracy to fabricate test results, was clearly relevant to the charges he had to defend against"). Similarly, every pitch that Mr. Clase threw

where his alleged co-conspirators *lost* money would cause the jury to question the government's proposed motive and instead believe that Mr. Clase was motivated to throw competitive pitches and get batters out. *See United States v. Balboa*, No. 12 Cr. 196 (PAC), 2013 U.S. Dist. LEXIS 169095, at *8 (S.D.N.Y. Nov. 27, 2013) (reasoning that evidence of defendant marking down securities would be relevant and admissible if defendant established relationship to charged scheme). In short, Mr. Clase's other pitches are relevant to rebutting the government's theory of the case and establishing that Mr. Clase lacked criminal intent. *See United States v. Kaneshiro*, No. 1:22-cr-00048-TMB-NC, 2024 U.S. Dist. LEXIS 49612, at *15 (D. Haw. Mar. 19, 2024) (finding that specific evidence of other, uncharged campaign contributions were admissible to show that defendant made donations for civic, not illicit, purposes); *United States v. Ali*, 870 F. Supp. 2d 10, 22 (D.D.C. 2012) (denying government's motion *in limine* where other act evidence was admissible to negate the government's showing of intent).

Moreover, the probative nature of Mr. Clase's other pitches is not substantially outweighed by any (non-existent) risk of unfair prejudice. *See* Fed. R. Evid. 403. The government has not articulated any prejudice it will face by admitting evidence of other pitches, let alone unfair prejudice. Mr. Clase also does not intend to inundate the Court or the jury with needlessly cumulative evidence of the thousands of pitches that Mr. Clase threw from 2023 to 2025. Accordingly, the Court should deny the government's motion to preclude evidence of any pitch other than those the government alleges were fixed.

## VIII. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE EVIDENCE OF GOOD CHARACTER UNDER RULE 404(a).

The government seeks to broadly ban Mr. Clase from offering "evidence or argument concerning the defendants' personal and family backgrounds, including the defendants' involvement in charitable or other 'good acts,' winning awards, lack of criminal history, or any

other similar personal factors." U.S. MIL at 55. The government's attempt to cast Mr. Clase as an empty vessel with no background and whose only conduct over three years was to throw fixed pitches must be rejected.

"The admissibility of character evidence rests in the sound discretion of the trial judge." *United States v. Paccione,* 949 F.2d 1183, 1201 (2d Cir. 1991). Accordingly, this Court has discretion to exclude character evidence that is unduly prejudicial or "evidence of specific acts intended to demonstrate character traits not at issue." *Id.* (quoting *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984), *cert denied*, 479 U.S. 839 (1986)). But the blanket ban sought by the government lacks support. While character evidence is never admissible to prove propensity, a defendant in a criminal trial "may offer evidence of the defendant's pertinent trait." Fed. R. Evid. 404(a)(2). As the Second Circuit has explained, this exception has its basis in fairness rather than logic: "[T]he defendant who, with the considerable forces of the government arrayed against him and who may have little more than his good name to defend himself, should not be precluded from presenting even such minimally probative evidence." *United States v. Pujana-Mena*, 949 F.2d 24, 30 (2d Cir. 1991) (explaining that three witnesses were allowed to testify that defendant was honest and law-abiding person).

The three cases cited by the government highlight the correct standard and in no way support the broad prohibition sought by the government. In *Paccione*, the trial court excluded irrelevant evidence that would have improperly played on the jury's sympathy—namely, that the defendant's son had cerebral palsy. 949 F.2d at 1201. But the court "properly allowed [the defendant's] four character witnesses to testify to their opinions that [the defendant] was a forthright man of honesty whose integrity was beyond reproach." *Id.* Likewise, in *United States v. Harris*, while the D.C. Circuit affirmed exclusion testimony that was solely designed to place the

defendant in a sympathetic light, the court allowed character evidence related to -truthfulness. 491 F.3d 440, 447-48 (D.C. Cir. 2007). And in *United States v. Battaglia*, the trial court excluded irrelevant evidence about the defendant's family, but allowed other background evidence explaining that the defendant was "a good and honest union president." No. 05 Cr. 774 (KMW), 2008 U.S. Dist. LEXIS 2829, at *8 (S.D.N.Y. Jan. 15, 2008).

Here, Mr. Clase's "background," "awards," and "other similar personal factors" are highly relevant. For example, Mr. Clase's upbringing in the Dominican Republic is relevant to understanding his relationship to legal rooster fighting and his relationships with other alleged co-conspirators. Mr. Clase's performance as an All Star closer for the Cleveland Guardians before and during the alleged conspiracy is relevant to understanding the betting public's interest in Mr. Clase, his future earning potential, and his lack of motive. For these reasons, the Court should reject the blanket ban sought by the government.

## IX. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE DEFENDANTS FROM OFFERING THEIR STATEMENTS AND STATEMENTS OF ALLEGED CO-CONSPIRATORS FOR THEIR TRUTH.

The government's broad request to preclude Mr. Clase from admitting any and all "statements or portions of statements made by any of the defendants, their agents or co-conspirators," U.S. MIL at 57, would deprive Mr. Clase of his constitutional right "to present a complete defense," *see Scrimo v. Lee*, 935 F.3d 103, 112 (2d Cir. 2019). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Morel*, 751 F. Supp. 2d 423, 428 (E.D.N.Y. 2010) (Matsumoto, J.). For that reason, a blanket determination that all out-of-court statements "constitute hearsay not subject to any exception," U.S. MIL at 57, would be improper, overbroad, and premature. *See Wade v. Mantello,* 333 F.3d 51, 58 (2d Cir. 2003) ("The Constitution protects a criminal defendant from the arbitrary exclusion of material evidence[.]").

Importantly, the Government has not identified any specific statements that it seeks to preclude. Courts in this Circuit routinely deny similar motions as premature. *See, e.g.*, *S.E.C. v. Treadway*, 438 F. Supp. 2d 218, 225 (S.D.N.Y. 2006) (denying motion in limine to exclude hearsay testimony as "premature" and finding "[t]here is no need at this time for this issue to be resolved through a preemptive motion in limine"); *United States v. Amato*, No. 03-CR-1382 (NGG), 2006 U.S. Dist. LEXIS 34145, at *19 (E.D.N.Y. May 26, 2006) (finding hearsay objections "premature" because the court was "not aware of the precise evidence sought to be admitted, or the theories of admissibility"). Even still, the one category of communications described by the government—evidence about betting on rooster fights—is admissible under several exceptions to the rule against hearsay.

First, out-of-court statements are not hearsay when offered to prove the extent of a declarant's knowledge. *See Cameron v. Community Aid for Retarded Children*, 335 F.3d 60, 65-66 (2d Cir. 2003) (holding that complaints received by executive director about employee's performance were not hearsay because complaints were used to show director's knowledge instead of for their truth). Here, the WhatsApp communications involving Mr. Clase overwhelmingly show a deep knowledge of Dominican rooster fighting in general and his own rooster fighting operation. These communications are relevant to show Mr. Clase's knowledge of rooster fights on certain dates (including dates on which allegedly fixed pitches occurred), which therefore offers the foundation for why Mr. Clase would text alleged co-conspirators about roosters.

Second, the law is clear that "a statement offered to show its effect on the listener is not hearsay." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). If, for example, Mr. Clase received information about an upcoming rooster fight, that information may have prompted Mr. Clase to text Bettor-1 or others about a certain "gallo," the earlier message is admissible to show

its effect on Mr. Clase. Similarly, "[o]ut-of-court statements are not hearsay if offered to show the context within which parties were acting, or to show a party's motive or intent for behavior." *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 420-21 (S.D.N.Y. 2011). There are text messages involving Mr. Clase and alleged co-conspirators that unequivocally describe real roosters that are close in time to text messages where Mr. Clase allegedly provided inside information using the term "gallo." The former are necessary and admissible context for the latter. *See United States v. Dupre*, 462 F.3d 131, 136-137 (2d Cir. 2006) (finding that email messages sent by third parties to defendants were admissible to provide context for email messages sent by defendants in response). By excluding these messages, the Court would be striking at the very heart of Mr. Clase's defense—that, to Mr. Clase, the word rooster means rooster.

Third, WhatsApp communications between Mr. Clase and alleged co-conspirators are not offered for their truth "[i]f the significance of an offered statement lies solely in the fact that it was made." Fed. R. Evid. 801 advisory committee's note. Communications between, for example, Mr. Clase and Bettor-1 using the term "gallo" that are plainly about real roosters and rooster fights are relevant to negate the government's allegation that Mr. Clase used "gallo" as a code to defraud betting companies and avoid detection. The government's attempt to exclude this evidence must be read as an intentional effort to mislead the jury because—in the recently disclosed *Brady* information that the government withheld for at minimum six months, and at times, close to one year—[redacted]

Fourth, a "'statement of the declarant's then-existing state of mind (such as motive, intent, or plan)' is exempted from the hearsay rule." *United States v. Kadir,* 718 F.3d 115, 124 (2d Cir. 2013) (quoting Fed. R. Evid. 803(3)). WhatsApp communications showing an intent to wager on rooster fights, an intent to transfer money for rooster fights, or an intent to provide information about upcoming rooster fights are all relevant because they show that Mr. Clase merely possessed the intent to wager on rooster fights—not baseball. *See United States v. Persico,* 645 F.3d 85, 100 (2d Cir. 2011) ("[A] declarant's statement of his intent 'may be introduced to prove that the declarant thereafter acted in accordance with the stated intent.'"). The government has the burden of proving Mr. Clase's fraudulent intent, and the Court's exclusion of evidence that falls under Rule 803(3) would be grounds for reversal. *See, e.g.*, *United States v. DiMaria,* 727 F.2d 265, 270-72 (2d Cir. 1984) (reversing conviction where defendant's statement offered to prove lack of criminal intent was improperly excluded).

Finally, as recognized by the government, *see* U.S. MIL at 59, if the government introduces part of a written or recorded statement, Federal Rule of Evidence 106 allows Mr. Clase to "require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 expressly allows the adverse party to introduce the statement "over a hearsay objection." *Id.*; *see also United States v. Williams*, 930 F.3d 44, 60 (2d Cir. 2019) ("[W]hen the omitted portion of a statement is *properly* introduced to correct a misleading impression or place in context that portion already admitted, it is *for this very reason* admissible for a valid, *nonhearsay* purpose: to explain and ensure the fair understanding of the evidence that has already been introduced." (emphasis in original)). Here, where alleged coded text messages are side-by-side with pictures and videos of real roosters in the Dominican Republic, the jury must be allowed to consider the latter.

The above avenues of admissibility are not exhaustive. Mr. Clase must have the opportunity to introduce his own statements and statements of his alleged co-conspirators under recognized exceptions to the rule against hearsay. The Court should therefore deny the government's premature and unsupportable motion.

## X. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE DEFENDANTS FROM ADMITTING SWORN WITNESS DECLARATIONS AS DIRECT OR IMPEACHMENT EVIDENCE.

The government contends that the sworn, exculpatory declarations of Bettor-1, Clase Associate-1, and Defendant-4 (the "Subject Declarations") "constitute impermissible hearsay evidence" and are inadmissible as prior inconsistent statements for impeachment purposes. Mr. Clase agrees that, under the current version of Rule 801, the declarations are not admissible for their truth.[16] Nevertheless, the Subject Declarations are admissible as impeachment material under Rule 806 and 613(b), irrespective of whether the witnesses testify and/or admit making all statements contained in the Subject Declarations.

### A. The Subject Declarations Are Admissible Under Rule 806.

Under Rule 806, when a co-conspirator statement "has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806. The

[16] It appears that, on December 1, 2026, that will change. Under the current version of Rule 801(d)(1)(A), a declarant-witness's prior inconsistent statement is only admissible for its truth if "given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Fed. R. Evid. 801(d)(1)(A). Earlier this year, however, Chief Justice Roberts transmitted to Congress a Proposed Amendment to Rule 801(d)(1)(A) removing this requirement. *See* Ltr. from John Roberts, Chief Justice of the United States Supreme Court, to Mike Johnson, Speaker, United States House of Representatives (Apr. 8, 2026), *available at* https://www.supremecourt.gov/orders/courtorders/frev26_da3i.pdf (last visited Sept. 11, 2026). Barring action from Congress, on December 1, all prior inconsistent statements will be admissible for their truth, regardless of where the statement was made, so long as the declarant testifies and is subject to cross-examination. This Court already has discretion under Federal Rule of Evidence 807 to admit any out-of-court statement for its truth if the statement "is supported by sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). Because the government anticipates that Bettor-1 will testify at trial, and the Advisory Committee and Supreme Court have concluded that cross-examination about the prior inconsistent statement provides the necessary trustworthiness, the Court can admit Bettor-1's declaration for its truth.

Rule "makes an otherwise hearsay statement admissible when the declarant (co-conspirator) has not taken the stand, but his statements have nevertheless come into evidence as a statement in furtherance of the conspiracy." *United States v. Rosario*, 111 F.3d 293, 296 (2d Cir. 1997). When the government uses "co-conspirator statements to help establish the existence of a conspiracy," statements in an affidavit that are "inconsistent with the existence of any conspiracy at all" are necessarily "inconsistent" with co-conspirator statements and admissible under Rule 806. *United States v. Grant*, 256 F.3d 1146, 1154-55 (11th Cir. 2001) (reversing conviction due to district court's exclusion of exculpatory affidavit from alleged co-conspirator).

If alleged co-conspirator statements from Bettor-1, Clase Associate-1, and Defendant-4 are admitted into evidence under Rule 801(d)(2)(E), the Subject Declarations are admissible under Rule 806. The government has expressly stated that it "intends to admit WhatsApp communications and other statements by co-conspirators that were exchanged between and among themselves and the defendants" under Rule 801(d)(2)(E). U.S. MIL at 23. Indeed, the government's motions *in limine* argue that specific statements made by Bettor-1, Clase Associate-1, and Defendant-4 are admissible under this exception. *See, e.g.*, *id.* at 24 (arguing that Defendant-4 forwarded a screenshot to Bettor-1 on June 4, 2023 in furtherance of the conspiracy); *id.* at 24-25 (asserting that Bettor-1 shared information on a group call with other bettors on June 4, 2023); *id.* at 10 (alleging that Bettor-1 and Clase Associate-1 "exchanged messages and voice memos about Bettor-1 transferring money to individuals in the Dominican Republic" on June 16, 2025). The Subject Declarations, meanwhile, deny the existence of *any* conspiracy involving Mr. Clase to rig pitches. [redacted]

[redacted] If Bettor-1, Clase Associate-1, and Defendant-4 were to deliver the alleged co-conspirator statements "as contemporaneous in-court statements," the Subject Declarations would be squarely admissible for impeachment purposes. *See Grant*, 256 F.3d at 1154. Accordingly, the statements are admissible for impeachment purposes under Rule 806, and any prejudice to the government cannot outweigh the probative value of the statements. *See id.*; *see also United States v. Cotton*, 823 F.3d 430, 436 (8th Cir. 2016) (explaining that the "propriety of admitting" an affidavit of an alleged co-conspirator denying the defendant's involvement in the alleged conspiracy was "not in controversy").

### B. The Bettor-1 Declaration is Admissible Under Rule 613(b), Even If Bettor-1 Testifies and Admits Making the Statements Contained in His Sworn Declaration.

The government inappropriately seeks a pre-trial ruling excluding Bettor-1's declaration based solely on its assurance that it "anticipates that Bettor-1 will testify on direct examination that he knowingly signed a false declaration." U.S. MIL at 60. According to the government, Bettor-1's admission will defeat any "inconsistency" between the statements and render the declaration itself "more cumulative than probative." *Id.* The Court should reject the government's argument for two reasons.

First, any ruling precluding admission of Bettor-1's declaration would be premature.[17] Bettor-1 has not testified, and the Court can neither judge the existence of any inconsistencies nor conduct a Rule 403 balancing test until he does. *See Kozak v. Liberty Mar. Corp.*, 729 F. Supp. 3d 277, 290 (E.D.N.Y. 2024) (reserving decision on admissibility of extrinsic evidence until witness testifies).

Second, even assuming Bettor-1 admits to every statement in his declaration, the declaration itself is admissible. In *United States v. Strother*, the Second Circuit reversed a conviction where the district court precluded the defense from introducing a written, prior inconsistent statement into evidence. 49 F.3d 869, 876 (2d Cir. 1995). The Second Circuit reached this conclusion despite the defense being permitted to cross-examine the witness *and* the witness acknowledging the inconsistency. *Id.* As the Second Circuit explained, the written statement was admissible because "[e]xtrinsic evidence of a prior inconsistent statement is more persuasive to a jury than a witness's acknowledgement of inconsistencies in a prior statement." *Id.*; *see also United States v. Lopez*, 870 F.3d 573, 582 (7th Cir. 2017) ("[E]ven when a witness admits to making a prior inconsistent statement, Federal Rule of Evidence 613(b) should be read broadly to allow a party 'to introduce extrinsic evidence to emphasize the fact that the witness made the prior statement[.]'"). The government's reliance on *United States v. Arena*, 180 F.3d 380 (2d Cir. 1999), is misplaced. In *Arena*, the prior inconsistent statement was *oral*, the witness testified that she made the statement, and the defense desired to call a *second* witness to testify about that same oral statement. *Id.* at 400. *Strother*, not *Arena*, controls the admission of prior inconsistent statements that are recorded and easily provided to the jury. *See United States v. Williams*, 756 F. App'x 73,

---

[redacted]

74 (2d Cir. 2019) (explaining that, in light of *Strother*, the government withdrew its objection to playing prior inconsistent video statements for the jury "in the interest of caution and justice"); *United States v. Sosa-Zarzuela*, No. 21 Cr. 41 (PAC), 2022 U.S. Dist. LEXIS 205375, at *2 (S.D.N.Y. Nov. 10, 2022) (relying on *Strother* and denying motion to exclude extrinsic evidence of government witness's prior inconsistent statements).

The need to place Bettor-1's prior written statement before the jury is even stronger because he signed it under penalty of perjury. That sworn execution provides additional indicia of reliability under 28 U.S.C. § 1746 and bears directly on the jury's assessment of Bettor-1's credibility and bias. If the jury is to evaluate whether Bettor-1 is telling the truth under penalty of perjury at trial, it must also be permitted to know that he previously gave inconsistent statements under the same threat of perjury before the trial. And if, as the government now contends, Bettor-1 lied in his declaration, the government's decision not to prosecute him for that alleged perjury is itself a benefit conferred on Bettor-1. The jury is entitled to consider that benefit when weighing his bias and credibility.

## XI. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE THE DEFENDANTS FROM CALLING PABLO J. DAVIS AS A WITNESS.

The Court should deny the government's request to preclude testimony from "Attorney-1" as premature.[18] As explained above, Bettor-1 has not yet testified. If Bettor-1 admits to making the statements contained in his declaration and the declaration is admitted into evidence, Mr. Davis's testimony may be unnecessary. If, however, Bettor-1 denies making certain statements, Mr. Davis's

[18] The identity of Attorney-1 is known to this Court and the public as Pablo J. Davis, the attorney employed by Dinsmore & Shohl LLP who served as a witness and interpreter for all interactions between Mr. Clase's attorneys and Spanish-speaking witnesses. The Court previously instructed the government that its "continued emphasis on Mr. Davis being not only an 'interpreter' but one of Mr. Clase's counsel is misplaced." Order at 17, ECF No. 208. For clarity and transparency, Mr. Clase refers to Mr. Davis by name throughout.

testimony may be needed to perfect the impeachment. *Lopez*, 870 F.3d at 582 (holding that the district court erred in denying request to call a witness to highlight inconsistency in statements). Moreover, Mr. Davis's testimony may be needed to authenticate the declarations of Clase Associate-1 and Defendant-4 prior to their admission under Rule 806. Accordingly, the Court should defer any ruling on the admissibility of Mr. Davis's testimony until trial.

More troubling, however, is the government's pre-trial request for what it dubs a "perilous" but "fair cross-examination." U.S. MIL at 61-62. To the extent the government is implying that Mr. Davis's testimony could trigger disqualification, this Court has squarely rejected that argument. *See* Order at 16-17, ECF No. 208 ("Here, Mr. Clase's counsel and Mr. Davis possess no information with respect to the allegedly obstructive acts that is prejudicial to Mr. Clase or against his interests, so imputation of any conflict to disqualify Dinsmore at large is inappropriate."); *id.* at 20-21 (finding "no evidence" that circumstances giving rise to the unsworn witness rule are implicated by Mr. Davis's testimony). The government's repeated references to Mr. Davis being "paid by Mr. Clase," U.S. MIL at 62, are also misleading and highly prejudicial. Mr. Davis is an employee of the law firm engaged by Mr. Clase. Mr. Davis has performed translation services for Dinsmore as part of the firm's representation of Mr. Clase, but he has not been and will not be "paid" by Mr. Clase. Allowing this line of inquiry would create the false impression that Mr. Clase is paying Mr. Davis for favorable testimony. Likewise, the substantial likelihood of juror confusion caused by the government's desire to question Mr. Davis on his "duty of zealous advocacy" substantially outweighs the low probative value of the answer. *See* U.S. MIL at 62. The government clearly wishes to create the impression that Mr. Davis is willing to lie for his client. The question is as offensive as it is baseless, and the Court should not allow it. Finally, the Court should prevent the government from inquiring into Mr. Davis's role in preparing the Pre-Charge Presentation and

Mr. Clase's role in trial preparations. Both lines of inquiry would be beyond the scope of any direct examination and would constitute an improper wading into topics protected by the attorney-client privilege and attorney work product doctrines—all to no effect because the Court has already ruled that such privileged and work-product information does not support any finding of wrongdoing by Mr. Clase.

## XII. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE IMPEACHMENT OF WITNESSES WITH AGENT-PREPARED REPORTS.

Mr. Clase agrees that FBI 302 reports are statements of the law enforcement officers who authored them, not the witnesses interviewed. *See* U.S. MIL at 63. Mr. Clase's counsel understand the Rules of Evidence governing impeachment and, if necessary, will call the relevant law enforcement agents as witnesses to complete impeachment. *See United States v. Fox*, No. 23-CR-227 (NGG), 2025 U.S. Dist. LEXIS 141094, at *76 (E.D.N.Y. July 23, 2025) (denying motion to preclude use of FBI 302 reports for impeachment purposes where there was no "live controversy regarding this issue" ).

## XIII. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PRECLUDE CERTAIN EVIDENCE AS IRRELEVANT OR UNFAIRLY PREJUDICIAL.

The government asks the Court to preclude evidence and argument that "urge nullification, put the government on trial, or otherwise seek to impugn or put at issue the government's conduct or motive in its prosecution of this matter." U.S. MIL at 64. Mr. Clase does not intend to argue for nullification, nor does he intend to argue that the government's motivation for charging Mr. Clase and his co-defendants is relevant to the jury's determination. Specifically, Mr. Clase agrees that the government's novel interpretation of the wire fraud statute, the government's subjective charging decisions, and the sentence that the Court could impose if Mr. Clase is convicted are not appropriate matters for the jury to consider. *See, e.g.*, *Shannon v. United States,* 512 U.S. 573, 579

(1994) (instructing that a jury should "reach its verdict without regard to what sentence might be imposed").

Nevertheless, the government's motion is overbroad. Restricting all evidence and argument regarding the "government's conduct" would improperly foreclose legitimate argument and cross-examination regarding the government's flawed investigation and conclusions. *See Alvarez v. Ercole*, 763 F.3d 223, 232 (2d Cir. 2014) (finding a Sixth Amendment violation where trial court restricted cross-examination into flaws of police investigation). Investigative choices and selective omission of contrary evidence bear on the bias and credibility of law enforcement witnesses, and the jury is entitled to weigh these issues when deciding if the government has met its burden of proof. *See, e.g.*, *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (holding that the district court committed plain error and abused its discretion "by informing the jury that it could not consider possible defects in [government] investigation"). There is a clear distinction between attacks on the subjective motivations of prosecutors and the credibility of the government's investigation—Mr. Clase does not seek to introduce the former, but the latter must be allowed. *See United States v. Householder*, 645 F. Supp. 3d 844, 851 (S.D. Ohio 2022) (holding that "[d]efendants' proposed arguments" to "challenge the reliability of the investigation" "do not amount to selective prosecution" and "is generally permissible").

Similarly, while Mr. Clase will not seek to introduce evidence of the criminal/immigration sanctions for wire fraud, honest services fraud, sports bribery, and money laundering convictions, granting the government's motion would also prohibit evidence of MLB's sanctions for betting on

baseball.[19] According to the government, MLB Rule 21 "is necessary to telling the story of this case." U.S. MIL at 42. Mr. Clase agrees. The relevant provision states, in full, "Any player, umpire, or Club or League official or employee, who shall bet any sum whatsoever upon any baseball game in connection with which the bettor has a duty to perform, *shall be declared permanently ineligible*." Ex. 5 at EDNY_007975. (emphasis added). As an initial matter, the prohibition and the punishment are the same clause, such that omitting the punishment would render the provision meaningless. Indeed, the very training materials that the government intends to put into evidence to show Mr. Clase's knowledge, *see* U.S. MIL at 38, expressly reference the sanction. *See, e.g.*, Ex. 15, 2025 MLB Security Presentation at 3 ("Tucupita Marcano was permanently banned for betting on baseball games that his team was involved in."). More crucially, however, the punishment for a Rule 21 violation bears directly on Mr. Clase's state of mind. At the time of his suspension, Mr. Clase was due to make over $26 million over the next three seasons, and any free agent contract after that would be worth tens of millions more. The Rule 21 punishment—and Mr. Clase's knowledge of it—is highly relevant because it makes it *less* likely that Mr. Clase would knowingly join the alleged conspiracy. *See* Fed. R. Evid. 401. Counsel for Mr. Clase will not argue to the jury directly or by implication that it should consider MLB's punishment during its deliberations, and any potential prejudice can be cured by instructing the jury their decision should not be influenced by the possibility of a Rule 21 sanction.

---

[19] To be clear, Mr. Clase must be permitted to confront the government's cooperating witnesses with the full scope of the consequences they faced absent government assistance, and the benefits the government conferred upon them. [redacted]

## XIV. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR AN ORDER COMPELLING DISCLOSURE OF RULE 26.2(a) MATERIAL FIVE DAYS BEFORE A WITNESS'S TESTIMONY.

Alongside its motions *in limine*, the government seeks an order from the Court compelling disclosure of materials pursuant to Rule 26.2(a) "no later than five days before a witness testifies." U.S. MIL at 68. The government contends that courts in this Circuit "routinely order defendants to abide by their Rule 26.2 obligations" and that such an order is necessary here to "avoid any unfair advantage." *Id.*

The Court should deny the government's request for two reasons.[20] First, the three cases cited by the government to support the "routine[]" nature of these orders are inapposite. In *United States v. Watson*, the parties "conferred and agreed upon the mutual, simultaneous exchange of now-existing material" pursuant to Rule 26.2 and "agreed to produce any future Rule 26.2 material on a rolling basis." No. 1:23-cr-00082-EK (E.D.N.Y. Apr. 11, 2024), ECF No. 125. Here, the government failed to meet and confer with Mr. Clase's counsel regarding Rule 26.2 materials, and the government's self-described "initial" disclosure of § 3500 material neither identifies the witnesses that will testify nor the subject matter of their proposed testimony. In *United States v. Lopez*, Judge Chen merely stated during trial that she "approve[d]" of the manner in which defense counsel were providing Rule 26.2 materials and that the government would receive them "before witnesses take the stand." U.S. MIL Ex. F at 5872:21-5873:5. The same is true here—Mr. Clase's counsel understand their Rule 26.2 obligations and will ensure the government receives the materials to which it is entitled before any defense witness takes the stand. And, in *United States*

[20] The Court should also consider the government's gamesmanship in withholding *Brady* information and otherwise improperly seeking to frustrate Mr. Clase's trial preparations—including through its near unprecedented, and ultimately meritless, months-long attempt to strip Mr. Clase of his counsel of choice and the privileges protecting the legal advice they provided—when weighing the equities of whether to force Mr. Clase to reveal information about his trial strategies earlier than he is required to do so. This government team has routinely demonstrated that it cannot be trusted to conform to ethical and DOJ norms. The Court should reject the government's naked attempt to shift the burden of proof by allowing it to tailor its case to rebut Mr. Clase's defenses before they are presented.

*v. Javice*, the order compelling disclosure was only necessary because the defendant failed to comply with an earlier scheduling order regarding reciprocal discovery. No. 23 Cr. 251 (AKH), 2025 U.S. Dist. LEXIS 12432, at *4 (S.D.N.Y. Jan. 23, 2025). Here, again, Mr. Clase's counsel understand their obligations. Indeed, ten days ago, Mr. Clase produced nearly 400 GB of materials received pursuant to Rule 17 subpoenas. Accordingly, because defense counsel have represented that they will comply with Rule 26.2(a), "[c]ounsel for the Government must trust counsel for the defense." *United States v. Sun*, No. 24-cr-00346-BMC (E.D.N.Y. Nov. 3, 2025), ECF No. 238 (denying motion to compel disclosure of Rule 26.2 materials five days before a witness testifies).

Second, demanding disclosure of Rule 26.2(a) materials five days before a witness testifies is simply unworkable. The government cites *United States v. Chen* to argue that a five-day disclosure deadline is "consistent with schedules set by other judges in this District." U.S. MIL at 68. It is not. In *Chen*, Judge Vitaliano ordered disclosure of Rule 26.2 materials "no later than *two days* before the witness testifies." No. 22-cr-00158-ENV (E.D.N.Y. Oct. 17, 2024), ECF No. 366 (emphasis added). And, as explained above, in *Sun* the Court refused to order disclosure by a date certain after the defense represented it would comply with Rule 26.2. *United States v. Sun*, No. 24-cr-00346-BMC (E.D.N.Y. Nov. 3, 2025), ECF No. 238. In practice, a five-day disclosure deadline would mean counsel for Mr. Clase would need to disclose witness statements long before the government had even closed its case-in-chief. The government, not Mr. Clase, bears the burden of proof, and Mr. Clase has no obligation to call witnesses to testify. Thus, it may not be clear to the defense which witnesses, if any, will testify until the government has presented a complete picture of its case against Mr. Clase. Counsel for Mr. Clase will comply with Rule 26.2 and provide witness statements to the government as promptly as possible before the witness takes the stand.

## CONCLUSION

For these reasons, Mr. Clase respectfully requests that the Court deny the government's motions *in limine*.

Respectfully submitted,

/s/ *J. Riley Able*
J. Riley Able (*pro hac vice*)
Lindsay K. Gerdes (NY Bar No. 4581690)
Michael J. Ferrara (*pro hac vice*)
Michael J. Bronson (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
riley.able@dinsmore.com

***Counsel for Emmanuel Clase***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, the foregoing document was filed in this matter using the Court's electronic filing system, and that an unredacted copy was served on all counsel of record via email.

/s/ *J. Riley Able*
J. Riley Able (*pro hac vice*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
riley.able@dinsmore.com

***Counsel for Emmanuel Clase***